F5DHAIRC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GEORGE AIRDAY,

                Plaintiff,

           v.                              14 CV 8065

THE CITY OF NEW YORK, KEITH
SCHWAM, and DAVID M. FRANKEL,

                Defendants.

------------------------------x
                                           New York, N.Y.
                                           May 13, 2015
                                           12:00 p.m.
Before:

                    HON. ROBERT W. SWEET,

                                           District Judge

                         APPEARANCES

LAW OFFICE OF NATHANIEL B. SMITH
     Attorney for Plaintiff
BY:  NATHANIEL B. SMITH

OFFICE OF CORPORATION COUNSEL, NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants
BY:  DON HANH NGUYEN
```

1                    (Case called)

2           THE COURT:  Airday.

3           MR. SMITH:  Your Honor, Smith for the plaintiff.  This
4    is the City's motion.

5           THE COURT:  Oh, yes.  And what happened?

6           MR. SMITH:  This is the marshal who, after 30 years,
7    was terminated; his position was terminated.  The City's made a
8    motion to dismiss on *Garcetti* grounds and failure to state a
9    claim for procedural and substantive due process.  I think I
10   can let the City articulate what their grounds are.

11          THE COURT:  Okay.  I'll hear from them.

12          MR. NGUYEN:  Good morning, your Honor.  My name is Don
13   Nguyen.  I'm appearing for the Offices of Corporation Counsel
14   on behalf of the defendants City of New York, Keith Schwam, and
15   David M. Frankel.  The City is moving pursuant to Federal Rule
16   of Civil Procedure 12(b) to dismiss the complaint for failure
17   to state a claim and failure to plausibly state their claims.

18          Plaintiff in this action has set forth numerous causes
19   of action, primarily of which are a First Amendment retaliation
20   claim, a procedural due process claim, a substantive due
21   process claim, and equal protection claim.  Your Honor,
22   Mr. Airday was a city marshal since 1984.  Pursuant to state
23   law, city marshals are subject to a five-year appointment, at
24   which time they are subject to reappointment at the discretion
25   of the mayor as well as the City Marshal Commission.

             In 2011, 2012, during Mr. Airday's tenure as a city
marshal, he was arrested on two different charges: first one
being a domestic violence charge, the other one being criminal
possession of a firearm.  Immediately thereafter, and pursuant
to the lawful powers vested in the Department of Investigation,
charges were brought against Mr. Airday with -- the first and
second departments of the appellate division of the State of
New York to temporarily suspend Mr. Airday.  Thereafter, after
a criminal trial, Mr. Airday was found not guilty of the
charges.  Mr. Airday stipulated to dismissing the charges with
the Department of Investigation, because the Department of
Investigation had brought separate charges of their own because
Mr. Airday failed to cooperate in the Department of
Investigation's investigation of his conduct.
             In December of 2013, after Mr. Airday's tenure was up,
after his five years was up, he was not reappointed.  And as
such, Mr. Airday believes that he was not reappointed due to
unlawful reasons.
             For a large majority of the time Mr. Airday was a city
marshal, he was involved in a Scofflaw Program on behalf of the
Department of Finance and Department of Investigation, which
was essentially a program to recoup outstanding fines and
judgments from debtors who had debts with the City of New York,
parking tickets, parking fines, things of that nature.
             Mr. Airday, for a large part of that time, focused a

1    lot of his business on the Scofflaw Program where he contracted
2    with towing companies to tow the cars of Scofflaw so that he
3    could recoup payment on behalf of DOF.
4             In 2010 the City of New York started to transition to
5    what is called the Paylock program which, instead of using
6    towing companies to tow the vehicles of Scofflaws, started
7    putting boots on the cars of Scofflaws in order to recoup
8    payment.  Admittedly, Mr. Airday admits that this directly
9    impacted his business and directly impacted the way that he was
10   doing his business as a city marshal.  He alleges in his
11   complaint that he raised various complaints with other city
12   marshals, officials at DOI -- and, again, officials at DOI had
13   direct supervisory responsibility over city marshals -- and to
14   a group called the City Marshal Association, which appears to
15   be some type of -- not going to say union, but some type of
16   association of city marshals, of which Mr. Airday was a part.
17            The City of New York, your Honor, and the defendants
18   move to dismiss the complaint because plaintiff has failed to
19   state a First Amendment claim.  Specifically, Mr. Airday has
20   not stated a plausible claim that he was speaking as a citizen
21   as opposed to pursuant to his official duty as a city marshal.
22   As such, defendants believe that complaint should be dismissed
23   with regards to the First Amendment retaliation claim.
24            In opposition to the defendants' meeting their burden
25   in filing their papers, Mr. Smith cites to numerous cases, one

1    of them being *Lane v. Frank*s, which is a recent Supreme Court
2    decision, as well as other decisions where he implies that
3    *Garcetti*, which is the case that is really at issue in this
4    case, is no longer applicable to the facts at hand, primarily
5    because Mr. Airday's claiming he was an independent contractor
6    and not directly employed by the City of New York.  As set
7    forth in our moving papers, your Honor, that simply is a
8    distinction without any type of legal significance.  Mr. Airday
9    is still subject to the requirements of *Garcetti*.  He's still
10   required under the threshold question to prove -- I'm sorry, to
11   plead that he was speaking pursuant to his official duties, and
12   he's unable to do that due to the very specific allegations of
13   his complaint.
14           With regards to the substantive due process claim,
15   your Honor, the defendants believe they're entitled to
16   dismissal of that claim -- I'm sorry, with respect to the
17   procedural due process claim, because Mr. Airday has stated no
18   identifiable and protectable property interest in the position
19   of city marshal.  Pursuant to statute, the city marshal is only
20   entitled to a five-year appointment.  That five-year
21   appointment ran, and the City of New York lawfully chose not to
22   reappoint him.  The same would also be true with regards to the
23   substantive due process claim, your Honor, because at the
24   outset, again, Mr. Airday has not identified an identifiable
25   protectable property interest.

1          With regards to the equal protection claim, your
2     Honor, plaintiff has failed to plead a case that he may sustain
3     and proceed with because he's essentially proceeding on class
4     of one theory under his equal protection claim.  *Engquist*, as
5     well as a couple cases thereafter, have barred class of one
6     theories of liabilities against a municipality even in
7     instances involving a contractor.  As such, your Honor,
8     defendants believe that the complaint should be dismissed in
9     its entirety.  Thank you.
10          MR. SMITH:  I'll just be brief, your Honor.  There's a
11    few key facts that, I think, as I was rereading the briefs, I
12    just want to emphasize.  One is that Mr. Airday started
13    investigating this booting program in 2010-2011 and identified
14    a host of issues that I've outlined in the complaint about this
15    proposal to basically take a private company and do a public
16    function, including, you know, is this a legal contract?
17    Can -- does it comply with various statutory requirements?  And
18    after his investigation of this contract, this private, no-bid
19    contract, he then disseminated to all the people in this
20    marshals association his findings and what his conclusions
21    were.  And so I think that's a key distinction that really
22    doesn't come clearly out in the papers that I just read, you
23    know, in preparing for today, because --
24          THE COURT:  You're saying that made it a citizen's
25    communication?

MR. SMITH:  Well, as we all know, there's now --
there's a focus on not just how were the words being spoken,
but what was the context in which things were being said.  And
if he's sitting at a table with a bunch of city marshals at an
organization, like a quasi union or an association of similarly
situated people, trying to marshal opposition to this new
program, that is a kind of association-type speech that I think
is protected.

I also think that that really, in my view, removes the
kind of *Garcetti* analysis from the question, because the way I
read *Garcetti*, and a lot of the cases that come from that, is
that you can't take a garden variety kind of dispute between an
employee and an employer in a close kind of supervisory
connection and, when the employee says that's not right or I'm
not doing that, all of a sudden has a First Amendment
protection, because then the Supreme Court would become a kind
of super human resources-type situation where every time an
employee, or an independent contractor who's closely being
monitored, they would have a First Amendment claim for any kind
of adverse action taken as a result of that speech.  And so the
courts have said we're not extending the First Amendment that
far.

But this is really -- and that's why I think that this
key fact really separates *Garcetti* and that line of analysis,
because what happened here is that Airday starts doing this

F5DHAIRC

1  analysis about what's wrong with this booting program, this
2  private booting program, gets together with all of his other
3  colleagues in this association, and just at the time when the
4  association members are starting to gather force -- and I've
5  alleged this in the complaint -- he is attacked.  He gets into
6  a domestic violence allegation with his girlfriend; he's
7  arrested.  And the day after he's arrested on the second
8  charge, without any investigation at all, the City terminates
9  or, actually, orders him to cease all operations.  They don't
10 do any investigation.  This is while his five-year term is
11 still in effect.
12         And then, the same day, the Department of Finance,
13 which is overseeing this booting program, terminates his -- his
14 role in the Scofflaw Program.  He, Mr. Airday, and maybe 15 or
15 20 other city marshals almost exclusively did the Scofflaw.  So
16 as a result of Schwam's order that he stop operations based on
17 an arrest, just an allegation, and based on Commissioner
18 Frankel's order that he no longer be part of the Scofflaw
19 Program as of, effectively, January of 2012, Mr. Airday was put
20 out of business.  Ultimately, two years later, at the end of --
21 in December of 2013, they then say, Oh, we're not going to
22 renew your five-year term.  But, again, this is another key
23 fact.
24         So he's effectively shut down by January 2012.  The
25 city council said that upon his arrest, they immediately sought

1    a suspension. Respectfully, that's slightly -- it's a little
2    bit quicker than that. They waited six months. In the
3    interim, he's arrested; he's suspended; he's removed from the
4    Scofflaw Program. All that happens in January of 2012. The
5    next month, the City signs the final contract with Paylock for
6    the booting program. And there would have been -- had there
7    been any opposition or request, there would have been a public
8    hearing in March or April, in the ordinary course, but we
9    believe that because Airday got slapped badly, all the other
10   marshals withdrew their -- their inclination to oppose the
11   booting program as it was proposed. And this no-bid contract,
12   which violated competitive bidding requirements, went through
13   without any opposition.
14            Airday would have spoken at a public hearing. In
15   fact, when there was a tussle in front of the city council a
16   decade earlier between the sheriffs and the marshals over
17   jurisdiction, he had done that. That's not in the pleadings,
18   by the way, but it's true. So there's some factual context
19   that I think is important for the Court to have, and those are
20   some key elements. One is I don't think that this is a, kind
21   of like, *Garcetti* issue for the reason I've already said.
22            And then the other thing I want to just stress to the
23   Court is that the City says he doesn't have a property interest
24   in the badge, if you will. And they glide over the fact that
25   for the first -- during the term, he clearly did have a

1  property interest.  And so they don't really address that.
2  What they address is after the five-year term expired, they
3  say, well, now we have a unilateral right to do what we want
4  with you because your term is expired; therefore, no property
5  interest.
6      Even on that issue, though, I think there's some key
7  facts that the Court ought to keep in mind when deciding
8  whether or not there is a protected interest in this, and these
9  are the facts.  Airday and many of the other marshals had been
10 operating on this five-year renewal or reappointment or
11 holdover process.  He had been doing it for 30 years.  He had
12 built up a substantial business, many, many employees, large
13 revenues, you know, hundreds of thousands of dollars,
14 employees, office, the whole nine yards.  And this was based on
15 an understanding that you would continue to operate your
16 business, not just him, but everybody else.  And so for 30
17 years, he had established this business.  And I've seen no
18 case -- there are cases which say if you're a public officer
19 and you're appointed for a term and after that term has
20 expired, you're terminated, you don't have a protected property
21 interest, that's true.  But I think this case is very, very
22 different because of the long-standing nature of the
23 arrangement.  And it's not just Mr. Airday's subjective
24 expectations and hopes that he'll be continued in this office;
25 this was an established practice that all the marshals were

1    regularly getting these renewals.  And so I think that is a key
2    distinction.
3            I've pointed out some old Supreme Court decisions that
4    deal with the question about whether or not somebody has
5    protected property interest, and the focus really is on whether
6    or not -- if there's a course and conduct of the parties that
7    creates an objectively reasonable expectation, then you can
8    have a property interest in a terminable right to be a
9    tenured -- a non-tenured professor, I think that's the *Perry*
10   case that I'm referring to.
11           So those are the two issues that I think the Court
12   ought to at least think about before rendering a decision.
13           THE COURT:  Thank you.
14           MR. NGUYEN:  Your Honor, if I may just address a few
15   of the points that Mr. Smith brought up in his opposition.  The
16   thing that is -- I'm going to deal with the last argument that
17   was made by Mr. Smith, which had to do with the property
18   interest and the identifiable property interest for the
19   purposes of due process.  What is different about *Perry*,
20   *Perry v. Sindermann,* which is what Mr. Smith primarily relies
21   upon in opposing our motion, is that in that case there was a
22   mutual understanding between, I believe in that case, the
23   university as well as Mr. Perry --
24           THE COURT:  Well, in effect, he alleges that that
25   exists here.

1          MR. NGUYEN: Well, I don't believe that he actually
2     alleges that. The way that it's pled here and the way the
3     facts actually play out, this was purely a unilateral
4     expectation on his part. The fact that Mr. Airday would have
5     been reappointed on one, two, or three prior occasions does not
6     add to the analysis that the --
7          THE COURT: Well, counsel just said it was a universal
8     practice for all the marshals. Is that alleged?
9          MR. NGUYEN: I don't believe it is, your Honor, but
10    even if it was, one of the cases that we cite to in our -- both
11    in our moving brief as well as our reply brief was *Hawkins v.*
12    *Steingut*, which is a Second Circuit case, 1987, even if the
13    workers' compensation board, which was the employer in that
14    case, customarily reappointed its referees, no cognizable
15    property right would be created when the controlling state law
16    provides for a fixed term of employment, which is exactly what
17    we have here in this case. Under the New York City -- I'm
18    sorry, the New York Civil Court Act, we have a fixed term set
19    up by statute, which is five years; and, as such, there is no
20    cognizable property right, whatever Mr. Airday's expectation
21    and his colleague's expectations might have been.
22         Now, one of the bigger issues that I see with regards
23    to the arguments that were made in opposition to our motion to
24    dismiss the First Amendment claim is that Mr. Smith is now
25    appearing to bring up all types of facts that are not even

within the four corners of the complaint, which the defendants -- proves the very point which we're trying to make, which is he's not plausibly pled his First Amendment claim.

Even that being said, your Honor, a lot of the things that Mr. Smith brought up, respectfully, Mr. Smith, were really red herrings. The fact that there was some type of fight outside of a public hearing, that Mr. Airday would have shown up at a public hearing, that's neither here nor there with regard to whether Mr. Airday was speaking pursuant to his official duties. When he's speaking to the marshals association, the other city marshals, or even DOI, which, again, has direct responsibility over the city marshal program, he's speaking of how he's doing his job. And, specifically, as pled in the complaint paragraph 36, who would be in charge under the proposal, who would be responsible for supervising Paylock, what fees would be charged to the vehicle owners, what would be the city marshal's law enforcement and administrative roles, these are all specific duties of the city marshals program.

The other thing that I think Mr. Smith was trying to get at, wasn't exactly clear, was whether there was a civilian analogue. We don't believe there was a civilian analogue. A couple of the more recent cases that have come before the Court have focused really the law on this. And to say there's some type of civil analogue, to the very specific facts of the case,

F5DHAIRC

1   we don't believe is true.
2           Again, your Honor, with regards to the facts that are
3   not brought up that are not within the four corners of the
4   complaint, the defendants believe they have absolutely no
5   bearing on whether Mr. Smith has plausibly pled his claims.  As
6   such, those facts are not in the record and do not preclude
7   dismissal of the complaint.
8           THE COURT:  Thank you.  I'll reserve decision.
9           MR. SMITH:  Thank you, your Honor.
10          MR. NGUYEN:  Thank you, your Honor.
11          (Adjourned)