UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

GEORGE AIRDAY,

               Plaintiff,              14 Civ. 8065

   -against-                        OPINION

THE CITY OF NEW YORK, KEITH SCHWAM, and
DAVID M. FRANKEL,

               Defendants.

-------------------------------------------X

A P P E A R A N C E S:

        **Attorneys for Plaintiff**

        LAW OFFICE OF NATHANIEL B. SMITH
        111 Broadway, Suite 1305
        New York, NY 10006
        By:  Nathaniel B. Smith, Esq.


        **Attorneys for Defendants**

        ZACHARY W. CARTER, ESQ.
        Corporation Counsel of the City of New York
        100 Church Street, Room 2-122
        New York, NY 10007
        By:  Don H. Nguyen, Esq.

**Sweet, D.J.**

Defendants the City of New York ("the City"), Keith Schwam ("Schwam") and David Frankel ("Frankel") (collectively, the "Defendants") have moved pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the Complaint of plaintiff George Airday ("Airday" or the "Plaintiff") alleging violations of 42 U.S.C. §§ 1983 and 1988, and the First, Fifth and Fourteenth Amendments of the United States Constitution. Plaintiff's claims arise out of the denial of renewal of his five-year term as New York City Marshall in alleged retaliation for his criticism of a parking violation enforcement program called the "Paylock Booting Program."  Plaintiff alleges: (1) retaliation against him in violation of his First Amendment rights; (2) violation of his procedural and substantive due process rights; and (3) violation of his rights to equal protection.  Based on the conclusions set forth below the motion is granted in part and denied in part.

**Prior Proceedings**

The Plaintiff filed his Complaint containing the following allegations.  Airday was a City Marshal for 29 years

1

from January 1984 through December 2013.  See Compl. ¶¶ 11-17.
A City Marshal is a public officer who operates his or her own
business enforcing judgments and collecting fees upon execution
of those judgments on behalf of judgment-creditors, who are his
clients or customers.  As a City Marshal, Airday satisfactorily
performed his duties over the course of his career, and his
five-year term of office was regularly renewed, consistent with
the established practice of renewing the terms of the other City
Marshals.  Id. ¶¶ 11-15.

In 2010, Mayor Bloomberg and his Administration
decided to take steps to "privatize" the City's system for
collecting unpaid parking tickets by replacing City Marshals
with a private company known as "Paylock."  Id. ¶¶ 20-25.  Under
this program, which was to be run by the New York City
Department of Finance ("DOF") under the authority of Frankel, as
DOF Commissioner, City Marshals would no longer enforce
judgments by towing scofflaw vehicles.  Id. ¶ 25.  Instead,
private employees of a private company would affix a metal
"boot" to a wheel of the scofflaw vehicle, and the owner would
have to pay Paylock by credit card in order to release the boot.
Id.  The Paylock proposal was a significant threat to the
established operations of at least twenty City Marshals,

including Airday, who focused significant portions of their
operations on the DOF's existing Scofflaw Program.  See id. ¶
22.  As a result, Airday and other City Marshals began
investigating the propriety of the Paylock proposal, including
the legality of a private and non-public no-bid contract as
potentially violative of applicable competitive biddings laws.
Id. ¶¶ 24, 32.

After reviewing the Paylock proposal at the office of
DOF, Airday identified several serious issues, including: (a)
how Paylock was chosen by the City and whether a no-bid contract
was appropriate and legal; (b) who would be in charge under the
proposal for tracking fines paid to Paylock; (c) who would be
responsible for supervising Paylock; (d) what fees would be
charged to the vehicle owners; (e) what would be the City
Marshal's law enforcement and administrative roles, if any, in
the booting process; (f) what would Paylock's fee be under the
proposed system; (g) whether a vehicle could be legally "un-
booted" upon payment of the outstanding fines and judgments and
left operational on City streets where the vehicle's
registration status had expired and the vehicle could not under
law be parked or operated on public streets; and (h) whether it

3

was appropriate to omit or disregard necessary and legal
guidelines from the Paylock booting program.  Id. ¶ 36.


Airday disseminated his criticisms of the Paylock
program to other City Marshals and to the Marshal's Association
of the City of New York, Inc. (the "Marshal's Association").
Id. ¶ 37.  The Marshal's Association is a not-for-profit
corporation organized under the laws of New York for the benefit
of City Marshals.  See id.  Airday also shared his criticisms
with New York City's Department of Investigations ("DOI"), which
had oversight responsibility for City Marshals and was
supervised by Schwam.  Id. ¶¶ 30, 37.


Schwam and Frankel purportedly punished Airday for
voicing his criticism of Paylock, thereby sending a message to
the other City Marshals not to oppose the Paylock proposal or
expose any issues pertaining to it.  Id. ¶ 38.  On January 18,
2012, Airday was arrested for possession of a gun in violation
of a protective order issued against him arising from what
Airday contends was a false allegation of domestic violence by
his former girlfriend.  Id. ¶ 39.  The next day, Schwam, in his
capacity as DOF Director of the Marshal's Bureau, wrote Airday a
letter demanding that he resign as a City Marshal and purporting

to unilaterally suspend Airday as a City Marshal.  Id. ¶¶ 40-47.
That same day, Frankel, acting as the DOI Commissioner, removed
Airday from the DOF Scofflaw Program, thereby damaging and
disrupting his business operations.  Id. ¶ 47.

According to Airday, both Schwam and Frankel took
these actions against Airday without a factual basis for
believing that the criminal allegations against him were true
and despite the fact that several other City Marshals have been
accused of far more serious misconduct and were not similarly
disciplined.  Id. ¶¶ 46, 48.

The Paylock contract was signed by Frankel's office in
February of 2012 in violation of the competitive bidding laws.
Id. ¶¶ 51-52.  Airday contends that the other City Marshals who
were part of the Marshal's Association and directly affected by
the Paylock program ceased their opposition the Paylock program.
Id.  Absent any opposition or a request for public debate on the
issue, a public hearing before the City Council was dispensed
with and the Paylock program entered into effect.  Id. ¶¶ 53-55.

Six months after learning of the criminal charges
against Airday, Schwam successfully petitioned the First and

Second Departments to temporarily suspend Airday.  Id. ¶ 59.  As
a result, Airday was required to shut down his office entirely
and terminate his employees.  Id. ¶ 60.  While other City
Marshals had engaged in more serious misconduct, Airday was
singled out for the harshest retribution because of his
outspoken opposition to the Paylock program.  Id. ¶¶ 46, 48, 59,
67.

Although Airday was fully exonerated later that year
of the criminal charges against him, Schwam and Frankel
maintained the DOF ban against him, the DOI's investigation into
Airday's conduct, and disciplinary charges against him.  Id. ¶¶
61-67.  In mid-2013, Airday agreed in good faith to settle those
charges and was restored to office on June 5, 2013, but Schwam
unilaterally inform Airday six months later that his term
expired, that he would not be held over, and that he was no
longer a City Marshal.  Id. ¶ 68-71.

Schwam's actions were was taken shortly before Mayor
Bloomberg was scheduled to leave office and Schwam was slated to
leave his position at DOI to join a private Bloomberg company.
Id. ¶ 76.  Had Schwam not acted, Airday would have remained in
office as a holdover City Marshal in accordance with the long-

established practice of continuing the offices of City Marshals after the expiration of their five-year terms of office.  Id. ¶¶ 11-15.

**The Applicable Standard**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556).  In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

**The First Amendment Retaliation Claim is Dismissed**

To establish a violation of First Amendment speech rights, Plaintiff must establish that: (1) the speech at issue was protected; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected speech and the adverse employment action. Pearson v. Bd. of Educ., 499 F.Supp.2d 575, 588 (S.D.N.Y. 2007). Because Plaintiff is a public servant and an officer of the Civil Court of New York City, see Article 16 of the New York City Civil Court Act, §§ 1601, et seq., to establish that his speech was protected, he must demonstrate that his statements were made "as a citizen [speaking] upon matters of public concern, [and not] as an employee upon matters only of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983). First, the Court must determine whether Plaintiff was speaking "as a citizen," or whether he was acting pursuant to his official job duties.

8

Garcetti v. Ceballos, 547 U.S. 410, 420-22 (2006); see also
Sousa v. Roque, 578 F.3d 164, 168 (2d Cir. 2009).  Whether the
employee spoke solely as an employee and not as a citizen is
also largely a question of law for the court.  Connick, 461 U.S.
at 148 n.7.  If Plaintiff was acting pursuant to his official
duties, then he was not speaking as a citizen and his speech is
not entitled to First Amendment protection.  See Garcetti, 547
U.S. at 421.  If, on the other hand, he was speaking as a
citizen, then "[w]hether [his] speech addresses a matter of
public concern must be determined by the content, form, and
context of a given statement, as revealed by the whole record."
Connick, 461 U.S. at 147-48.

     The inquiry into whether a public employee spoke
pursuant to her official duties is both objective and "a
practical one."  Weintraub v. Bd. of Educ., 593 F.3d 196, 202
(2d Cir. 2010) (citing Garcetti, 547 U.S. at 424).  The Circuit
held that "under the First Amendment, speech can be 'pursuant
to' a public employee's official job duties even though it is
not required by, or included in, the employee's job description,
or in response to a request by the employer."  Id. at 203.
Although no single factor is dispositive, courts consider
several factors when attempting to determine if a public

employee spoke pursuant to his official duties, including: (1)
the plaintiff's job description; (2) the persons to whom the
speech was directed; (3) whether the speech resulted from
special knowledge gained through the plaintiff's employment; (4)
whether the speech occurs in the workplace; and (5) whether the
speech concerns the subject matter of the employee's job.
Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 506
(E.D.N.Y. 2011).

    In the instant matter, each of the factors that courts
regularly consider in determining whether public employees spoke
as citizens or, rather, pursuant to their official job duties,
weighs in favor of a finding that Plaintiff spoke pursuant to
his job duties and not as a citizen.

    First, the speech in which Plaintiff purportedly
engaged falls squarely within his job description as a City
Marshal and concerned the subject matter of his job.  Plaintiff
was actively involved in the City's Scofflaw Program and admitted
that his job duties entailed the "enforce[ment] [of] parking and
related fines and judgments against vehicles and their owners
. . . by towing vehicles, enforcing and collecting on the unpaid
fines and judgments and otherwise taking responsibility for the

care, custody and control of the vehicles." See Compl. ¶ 21.
Notably, all of the inquiries Plaintiff allegedly made concerned
the Paylock Booting Program's implementation, operation, and the
effect the Program would have on the manner in which he
performed his duties.  Plaintiff's alleged inquiries concerning
how the Paylock Booting Program was selected, who would be in
charge of tracking fines, who would supervise Paylock, what fees
would be charged to vehicle owners, what the City Marshals' new
role would be under the program, what Paylock's fee would be,
and the circumstances under which a vehicle could be unbooted,
all fell within the scope of his job duties, and concerned the
subject matter of his job.  See Weintraub, 489 F. Supp. at 221
("[P]ublic employees who convey complaints or grievances about a
matter pertaining to their official duties to their supervisors
do so in their capacities as employees rather than citizens,
even when the subject matter of their speech touches upon a
matter of public concern, and that such speech is not protected
by the First Amendment.").


        Second, the Plaintiff failed to allege the person or
persons to whom he directed his speech.  Compl. ¶¶ 32-36.
Plaintiff has alleged in his Complaint that "after reviewing the
document in the office of the DOF, [he] disseminated his

                              11

analysis and criticisms of the proposed Paylock [B]ooting
[P]rogram." Id. ¶ 35. Plaintiff has not alleged the individual
or individuals to whom he conveyed his alleged "criticisms."
Id. ¶ 36. Plaintiff maintains that, throughout the remainder of
2011, he and other City Marshals continued to be outspoken about
the Paylock Booting Program, and shared their critical views
with other City Marshals, the Marshals' Association of the City
of New York, Inc. and with DOI. See id. at ¶ 37. However,
there are no allegations that Airday's speech was made to the
public at large, to the media, to elected officials, or even to
officials within DOF or DOI such as Frankel or Schwam. Airday's
complaints about the Paylock Booting Program were not expressed
to anyone beyond his own colleagues, the Marshals' Association,
and unidentified individuals at DOI. These allegations support
a conclusion that Airday engaged in speech as a public servant
pursuant to his job duties, not as a citizen.

Third, Airday's inquiries resulted from knowledge
which he acquired through the performance of his duties as a
City Marshal. The impending changes and all of his inquiries
related to the impact the implementation of the program on his
previous job duties were uniquely applicable to a City Marshal
in the Scofflaw Program. See Frisenda, 775 F. Supp. 2d at 507

("[T]aken together, all of these undisputed facts paint a clear picture of an employee speaking out about his views regarding how best to perform his job duties, rather than of someone attempting to make a 'contribution[] to the civic discourse.'") (quoting Garcetti, 547 U.S. at 422).

In addition, there is no "civilian analog" to his speech.  The Garcetti Court noted that speech by a public employee retains some possibility of First Amendment protection when it "is the kind of activity engaged in by citizens who do not work for the government," 547 U.S. at 423, "namely 'mak[ing] a public statement, discuss[ing] politics with a coworker, writ[ing] a letter to newspapers or legislators, or otherwise speak[ing] as a citizen.'"  Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Spiegla v. Hull, 481 F.3d 961, 967 (7th Cir. 2007)).  Here, Plaintiff's speech was allegedly conveyed exclusively to other City Marshals and unnamed individuals at DOF and DOI, and the Complaint does not allege that he directed his speech to the public at large, the media, elected officials, or even the individually named Defendants.

Since Airday's speech concerning the implementation of the Paylock Booting Program was made in his role as a public

13

servant, and pursuant to his official job duties, the Court need

not reach the issue of whether his speech, as pled in the

Complaint, related to a matter of public concern. Weintraub,

593 F.3d at 201 (explaining that, as "Weintraub's speech was not

protected by the First Amendment . . . there is no cause for us

to address whether it related to a 'matter of public concern'")

(citing Garcetti, 547 U.S. at 421 (finding "the controlling

factor" to be whether the employee-speech at issue was pursuant

to official duties and declining to examine whether it related

to an issue of public concern)); Frisenda, 775 F. Supp. 2d at

504 n.11 (explaining that "this Court need not address the

'matter of public concern' requirement in the instant case as it

. . . because the undisputed facts demonstrate as a matter of

law that plaintiff was not speaking as a citizen, but rather as

an employee pursuant to his official duties, in connection with

that speech").  The Complaint fails to plead facts that could

demonstrate a plausible claim that he engaged in protected

speech.


        In his opposition, the Plaintiff has noted a

distinction between independent contractor and public employee

for the purposes of First Amendment analysis. See Pl.'s Mem. in

Opp'n 12-13 ("[Plaintiff] was not a City employee and therefore

14

all the reasons for limiting the scope of a governmental

employee's protected speech in the workplace do not apply.").

Even assuming that Airday could be deemed an independent

contractor, rather than a government employee, he is not

relieved of his obligation to state a First Amendment claim that

is consistent with Garcetti.  A plaintiff must, in any event,

plausibly plead that he was speaking as a citizen upon matters

of public concern instead of as an employee or contractor

pursuant to his or her official duties.  See Garcetti, 547 U.S.

at 421; Pickering v. Bd. of Educ., 391 U.S. 563 (1968); Connick

v. Myers, 461 U.S. 138 (1983).  Indeed, the same First Amendment

analytical framework applies to both employees and independent

contractors.  See Lakner v. Lantz, 547 Fed. Appx. 13, at *6 (2d

Cir. 2013); Fahs Construction Group Inc. v. Gray, 725 F.3d 289

(2d Cir. 2013) (plaintiff's claims were not akin to speech by a

citizen upon matters of public concern, but rather were speech

made by an employee or contractor upon matters only of personal

interest).  In Lakner, the Second Circuit addressed, and

rejected, the argument that an independent contractor is

entitled to some different level of First Amendment protection

not afforded to a "traditional" government employee, finding

that:

> [T]he fact that Lakner's prior relationship with
> DOC was as an independent contractor rather than

15

> as an employee does not alter the [First
> Amendment] analysis.
>
> Although there are various differences between
> employees and independent contractors, these
> differences "can be accommodated by applying
> [the] existing framework for government employee
> cases to independent contractors.

See Lakner, 547 Fed. Appx. at *6.  Thus, Plaintiff in the

instant case cannot distinguish Garcetti based on Plaintiff's

alleged status as an independent contractor.


Courts have applied Garcetti in the government

contractor context.  See, e.g., Fergus v. New York City Health

and Hosp. Corp., 11 Civ. 2419 (WHP), 2011 WL 5007000, at *9

(S.D.N.Y. October 14, 2011); see also Castro v. County of

Nassau, 739 F. Supp. 2d 153, 178-80, n.18 (E.D.N.Y. 2010) (It is

well settled that, even though he was a contract employee, the

standards for public employees also apply to individuals who

work as contractors for government agencies.); Ansell v.

D'Alesio, 485 F. Supp. 2d 80, 84-85 (D. Conn. 2007) (same);

Decotis v. Whittemore, 635 F.3d 22, 30-35, and 36 n.16 (1st Cir.

2011).


Thus, the First Amendment analysis remains the same

for independent contractors.  Plaintiff must plausibly plead

16

that he spoke as "a citizen upon matters of public concern [rather than] as an employee or contractor upon matters of personal interest." See Fahs Construction Group Inc., 11 Civ. 2419, at *18 (WHP) (S.D.N.Y. 2012), aff'd 725 F.3d 289 (2d Cir. 2013); Weintraub v. Bd. of Educ., 489 F. Supp. 2d 209, 221 (E.D.N.Y. 2006) aff'd, 593 F.3d 196 (2d Cir. 2010).  Otherwise, as is the case here, the First Amendment does not protect that speech.

Plaintiff's purported speech is not the "kind of activity engaged in by citizens who do not work for the government." See Garcetti, 547 U.S. at 423.  The Complaint's allegations establish that (1) plaintiff's speech fell within his job description and concerned the subject matter of his job; (2) plaintiff's speech was communicated within the confines of his employment, colleagues, and workplace; (3) plaintiff's speech resulted from knowledge obtained through his employment; and (4) there was no civilian analogue to the purported speech. Consequently, the First Amendment claim is dismissed.

**The Procedural Due Process Claim Survives in Part**

17

The Complaint alleges a procedural due process claim with respect to both his 2012 suspension and the Defendants' failure to renew his office in 2013 premised on a protected property or, alternatively, on liberty interest with.  Compl. ¶ 84-86; Pl.'s Mem. in Opp'n 18.  In addressing the suspension, Defendants note that it was the Appellate Divisions of the First and Second Department of the New York State Supreme Court, rather than the Defendants, that suspended Airday.  See Def.'s Mem. in Supp't 17 citing Compl. ¶ 56.  Airday, analogizing to malicious prosecution claims under § 1983, responds that Schwan is responsible for "present[ing] bogus charges to a judicial body" and that the causal link between Schwan's actions and Airday's damage is therefore unbroken.  Pl's Mem. in Opp'n 17 (citing Cameron v. City of New York, 598 F. 3d 50, 63-64 (2d Cir. 2010).  Plaintiff's analogy is unpersuasive in that it selects one feature of the malicious prosecution doctrine and applies it to the instant, distinguishable, due process claim. Were this a malicious prosecution claim, the Plaintiff would need to plead that the disciplinary charges were false, brought without probable cause, and that the matter was terminated in Airday's favor.  See, e.g., Cameron, 598 F. 3d at 63.  Instead, the Plaintiff here avers that he paid a $7,500 fine and entered a stipulation in order to conclude the pending charges.  Compl.

¶ 68.  Moreover, the Complaint does not establish the
Plaintiff's property or liberty interest with respect to the
suspension.  Public employees must be able to point to state
law, a collective bargaining agreement, or some other regulation
creates that a property interest for the purposes of a due
process claim.  See, e.g., Ciambriello v. Cnty. of Nassau, 292
F.3d 307, 314, 316 (2d Cir. 2002) (in order to have a cognizable
property or liberty interest in a specific rank or position, a
public employee must but only where the employee has a state
law, collective bargaining agreement provision, or some other
specific guarantee protecting him against demotion).  Here, the
Complaint does not reference a regulation, policy, agreement or
law that would entitle Airday to a hearing prior to the
Defendants' decision to pursue suspension proceedings with the
Appellate Divisions.  See Compl. ¶ 59 (only describing Schwam's
suspension request as "an abuse of his power and position under
state law.").  The Plaintiff's briefing in opposition to the
instant motion focused on the property and liberty interests
associated with Airday's termination, rather than with his
suspension.  See, e.g., Pl.'s Mem. in Opp'n 18-19 (contending
that an implied in fact contract existed which obligated
Defendants to renew Airday's office).  In the absence of a valid

property or liberty interest, Airday's claim with respect to the suspension is dismissed.

Conversely, the procedural due process claim with respect to the Defendants' refusal to renew his office in 2013 survives on a property interest theory.  The Complaint alleges the Defendants' decision to not reappoint Airday ran contrary to "established policies and practices regarding the re-appointment of City Marshalls," which the Plaintiff characterizes as a   See Compl. ¶ 71.  To be sure, City Marshals are statutorily subject to five year terms, N.Y.C. Civil Court Act § 1601, and "mutual understandings and customs could not create a property interest ... when they are contrary to the express provisions of regulations and statutes."  Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980); see also Hawkins v. Steingut, 829 F.2d 317, 322 (2d Cir. 1987); Schwartz v. Mayor's Committee on the Judiciary, 816 F.2d 54 (2d Cir. 1987).  Here, however, the Plaintiff alleges that the Defendants' refusal to renew his office ran "contrary to established policies and practices regarding the re-appointment of City Marshals."  Compl. ¶ 71.  These allegations are sufficient to demonstrate an issue of fact with respect to whether the parties shared a mutual understanding of renewal of the position following expiration.

20

Finally, the liberty interest theory is inapplicable here.  Though the Plaintiff contends that "Airday's liberty interest in his chose profession were also violated by the . . . termination," Pl.'s Mem. in Opp'n 19, "a decision not to reemploy, standing alone, does not deprive an employee of liberty." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)) (internal quotations omitted).  Rather, a plaintiff must allege aggravating circumstances, such as "when the state fires an employee and publicly charges that she acted dishonestly or immorally," Donato, 96 F.3d at 630, or effectively forecloses an employee's ability to "take advantage of other employment opportunities." Roth, 408 U.S. at 573; see also Kartseva v. Dep't of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (holding that a liberty interest may be implicated where government refusal to rehire "formally or automatically excludes" the plaintiff from other government opportunities or broadly inhibits the plaintiff from working in a chosen profession).  The Complaint does not contain such aggravating circumstances.  Cf. id. (where the basis for the plaintiff's discharge was the government's warning that "several significant counterintelligence concerns raised during

21

the conduct of background investigations and pre-employment
screening conducted on [the plaintiff] by other U.S. Government
agencies," which the DC Circuit held may constitute the
requisite aggravating circumstances).

In sum, the procedural due process claim, based on
either a property or a liberty interest theory, fails with
respect to the suspension.  Conversely, Plaintiff's procedural
due process claim survives with respect to Defendants' decision
to not renew his office in 2013.

**The Substantive Due Process Claim is Dismissed**

Airday asserts that his suspension and termination
also constituted violations of his substantive due process
rights.  Compl. ¶¶ 87-90.  However, "where another provision of
the Constitution provides an explicit textual source of
constitutional protection, a court must assess a plaintiff's
claims under that explicit provision and not the more
generalized notion of "substantive due process." Kia P. v.
McIntyre, 235 F.3d 749, 757-58 (2d Cir. 2000) (citing Conn v.
Gabbert, 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399
(1999)) (internal quotations omitted); see also Arteta v. Cnty.

of Orange, 141 F. App'x 3, 8 (2d Cir. 2005).  Here, "what would

serve to raise defendant's actions beyond the wrongful to the

unconscionable and shocking are facts which, if proven, would

constitute, in themselves, specific constitutional violations."

Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).  Specifically,

Defendants' conduct with respect to Airday's post would

constitute an equal protection, procedural due process, or first

amendment violation.  Consequently, the substantive due process

claim does not survive independently of those causes of action.


**The Equal Protection Claim is Dismissed**


            Airday has not alleged that he was singled out because

of his race or gender or any other protected characteristic or

suspect classification.  Consequently, he has failed to allege

membership in a protected class, and can only bring an equal

protection claim under two theories: selective enforcement or

'class of one.'  See Best v. New York City Dep't of Correction,

14 F. Supp. 3d 341, 351 (S.D.N.Y. 2014); Rankel v. Town of

Somers, 999 F.Supp.2d 527, 544 (S.D.N.Y. 2014).  Both selective

enforcement and class of one theories require a showing that

Plaintiff was treated differently from other similarly-situated

individuals.  Id.

Plaintiff has failed to allege that he was treated differently from similarly situated individuals.  The Complaint does not contain any allegations concerning the conduct of these other City Marshals that he considers to be more serious than his own.  The absence of any allegations from which one could compare Plaintiff to these "other" unidentified City Marshals, requires dismissal of the equal protection claim.

Plaintiff's class of one theory fails on several other grounds.  The Supreme Court has held that there is no cause of action for a "class of one" in the government employee context. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605 (2008). Courts within this Circuit also bar "class of one" equal protection claims brought by government contractors.  Seymour's Boatyard, Inc. v. Town of Huntington, 08 Civ. 3248, 2009 WL 1514610 (E.D.N.Y. June 1, 2009); JAV Auto Center, Inc. v. Behrens, 05 Civ. 6503, 2008 WL 9392107, at *5 (S.D.N.Y. Oct. 8, 2008) ("If Plaintiffs were independent contractors providing services to the Authority, Engquist would plainly apply, because public agencies have the same need for flexibility and discretion in dealing with their contractors as they do with their employees.").  Moreover, "[i]n order to succeed on a

24

'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)) overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008); accord Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 697 (S.D.N.Y. 2011) ("An extremely high level of similarity is required in the 'class of one' context because plaintiffs asserting those claims are attempting to prove that the government's treatment was arbitrary and irrational."). Since Plaintiff has failed to adequately identify the comparable individuals, his claim also fails to identify the extremely high level of similarly required.

Finally, to the extent that Airday claims he was singled out because of his speech, that conduct is a part of his dismissed First Amendment claim and cannot suffice as a basis for the equal protection claim. See Mental Disability Law Clinic v. Hogan, 519 Fed. App'x 714 (2d Cir. 2013).

**Conclusion**

Based on the conclusions set forth above, the motion to dismiss with respect to the first amendment and equal protection claims is granted, and the motion is denied with respect to the procedural due process claim.  Leave to replead within 20 days is granted.

It is so ordered.

New York, NY
September 15, 2015

ROBERT W. SWEET
U.S.D.J.