# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

GEORGE AIRDAY,

14-cv-

Plaintiff,

-against-

**JUDGE SWEET**

**COMPLAINT**

THE CITY OF NEW YORK, KEITH
SCHWAM, and DAVID M. FRANKEL.

**JURY TRIAL DEMANDED**

Defendants.

--------------------------------------------------------X

14 CV 8065

RECEIVED
OCT 07 2014
U.S.D.C. S.D. N.Y.

Plaintiff, George Airday, by and through the undersigned counsel, hereby

alleges and states as his Complaint the following:

## PARTIES

1. Plaintiff, George Airday ("Airday"), is an individual with a residence in the

State of New York.

2. Defendant, the City of New York (the "City"), is a municipal corporation

organized and existing under the laws of the State of New York.

3. Defendant, Keith Schwam ("Schwam"), is an individual with a residence in

the State of New York, and at all relevant times, Schwam was the Director of the

Marshal's Bureau at the New York City Department of Investigations ("DOI").

4. Defendant, David M. Frankel ("Frankel"), is an individual with a residence in

the State of New York, and at all times, Frankel was the Commissioner of the New

York City Department of Finance ("DOF").

5. Both Schwam and Frankel are sued in their official and individual capacities.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under and pursuant to 28 U.S.C. §1331 and §1343 (federal justice and civil rights) and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because this action is brought pursuant to 42 U.S.C. §§1983 and §1988 and the First, Fifth, and Fourteenth Amendments to the United States Constitution as well as the laws of the State of New York.

7. Venue is proper in the district pursuant to 28 U.S.C. §1391(1) because the claims arose in the Southern District of New York.

## BACKGROUND

8. Airday was appointed by the Mayor of the City of New York, Edward I. Koch, as a City Marshal on January 24, 1984 and at all relevant times satisfactorily performed his duties as a City Marshal.

9. City Marshals are appointed by the Mayor pursuant to Section 1601 of the New York City Civil Court Act for five-year terms, and it is part of the practice and policy of the City to regularly reappointed City Marshals to successive five-year terms and/or to hold them over after their terms of office have expired.

10. City Marshals are empowered, among other things, to enforce money judgments entered by the New York City Civil Court against judgment debtors and their property.

2

11. Over the past thirty-five years, there have been about fifty active City Marshals, including Airday, and generally, as a matter of policy and practice, they have continued their duties as City Marshals after the expiration of the remaining portion of their five-year terms of appointment as "holdovers" or until their reappointment.

12. As with other City Marshals, since his initial appointment in 1984, Airday has been either regularly reappointed to the position as City Marshal or has been "held over" as a City Marshal pending his reappointment.

13. Airday's initial term was scheduled to expire on December 20, 1988, and after that date he acted as a "holdover" until December 17, 1993, when he received a retroactive re-appointment that was stated to expire on December 20, 1998.

14. For the next eight years, Airday held office as a holdover again, along with all other City Marshal, whose terms also expired during that eight-year period.

15. On January 22, 2009, Airday received a re-appointment from Mayor Bloomberg with a stated December 20, 2013 expiration date.

16. Airday had a reasonable expectation that his office as City Marshal would continue after December 20, 2013 as a "holdover" or by a reappointment, and as such had a property interest in that office protected by the due process of law provisions of the United States Constitution.

17. Over the period from 1984 through 2012 Airday maintained an office as a

3

City Marshal at various locations in New York City, including 16 Court Street, Brooklyn, NY; 401 Broadway, New York, NY; 110 West 40th Street, New York, NY; and 5720 Mosholu Avenue, Bronx, NY 10471.

18. In the course of the operations of his offices as a City Marshal, Airday made substantial investments in time, office expenses, staff and other expenses associated with the duties of a City Marshal.

19. For the period from 2002 through 2010, Airday had, among other things, total office expenses as a City Marshal ranging from about $351,000 to $511,000 in expenses, including, average computer expenses of about $65,000 a year; average payroll expenses for four to five employees of about $125,000 a year; and average rent and related office expenses of about $50,000 a year.

## THE SCOFFLAW AND PAYLOCK PROGRAMS

20. At the times relevant to this action, several City Marshals, including Airday, were actively involved in the New York City's Scofflaw Program.

21. Under the City's Scofflaw Program, City Marshals, working closely with the New York City Department of Finance ("DOF"), would enforce parking and related fines and judgments against vehicles and their owners where the total fines and judgments exceeded a threshold amount (which was $350 as of 2001) by towing vehicles, enforcing and collecting on the unpaid fines and judgments and otherwise taking responsibility for the care, custody and control of the vehicles.

4

22.  For at least 20 years, numerous City Marshals, including Airday, focused their offices duties mainly on the Scofflaw Program, devoting substantive time and expense to fulfilling their duties under the Scofflaw Program.

23.  Over time, these City Marshals, including Airday, specialized their operations to tailor them specifically to the City's Scofflaw Program and devoted significant resources to the Scofflaw Program.

24.  Upon information and belief, in about 2010, Mayor Bloomberg decided to assign the administration of the Scofflaw Program to a private corporation with close political ties to the Bloomberg Administration through a private, non-public, no-bid contract in violation of the competitive bidding requirements of state and local law.

25.  The private corporation, IPT, LLC, which is known under the name "Paylock," proposed to the Bloomberg Administration a parking violation enforcement program whereby a vehicle associated with a certain number of unpaid summons or a lapsed New York State registration would no longer be inventoried and towed by a licensed tow company under contract with a City Marshal, but instead, would have a metal boot affixed to one of the vehicle's wheels, immobilizing it while parked on a City street as a means for forcing payment of unpaid fines and judgments (hereafter the "Paylock booting program").

26.  Through its direct lobbying efforts with the Bloomberg Administration, in 2010 Paylock secured, with little public disclosure or the approval of the City

5

Council, the authorization of the Bloomberg Administration and the DOF to conduct a pilot program for its booting system.

27.  Thereafter, in about 2010 the City and the Bloomberg Administration established a policy and a practice of requiring City agencies, City employees, including DOF and DOI and City Marshals, to provide unqualified and unquestioned support for its private, no-bid arrangement with Paylock.

28.  As a result of political pressure from the City and from the Bloomberg Administration, DOF and Defendant Frankel, who, as DOF Commissioner, had oversight and control over the City's Scofflaw Program, and DOI and Defendant Schwam, who as Director of the Marshal's Bureau, had oversight over City Marshals, began enforcing and implementing the City's policy and practice of promoting the Paylock booting program by, among other things, conducting and finalizing negotiations with Paylock without soliciting or obtaining bids from other contractors, as required for City contracts, and punishing and discouraging those who spoke out against the Paylock program or raised questions about its legality.

29.  At all relevant times, Defendant Frankel was DOF's Commissioner with oversight and control of the Scofflaw Program, as well as control over Airday's participation in the Scofflaw Program, and oversight and control over the Paylock booting program.

30.  At all relevant times, Defendant Schwam was the Director of the Marshal's

6

Bureau at the Department of Investigations with direct supervisory oversight over City Marshals, including Airday.

31. At all relevant times, Frankel and Schwam knew of, endorsed, and enforced the policy and practices of the Bloomberg Administration regarding the Paylock booting program.

32. In 2010 and 2011, several of the City Marshals, including Airday, who were actively involved in the City's Scofflaw Program, including Airday, started making inquires, questioning the appropriateness and the legality of the Paylock booting program.

33. In about March of 2011, Airday went to the public offices of the DOF to review a proposed operating procedure document for the Paylock booting program.

34. DOF refused to permit Airday to make a photocopy of the document in violation of established practice, policy and law.

35. After reviewing the document in the office of the DOF, Airday disseminated his analysis and criticisms of the proposed Paylock booting program.

36. Among other things, Airday questioned and requested further information about: (a) how Paylock was chosen by the City and whether a no-bid contract was appropriate and legal; (b) who would be in charge under the proposal for tracking fines paid to Paylock; (c) who would be responsible for supervising Paylock; (d) what fees would be charged to the vehicle owners; (e) what would be the City

7

Marshal's law enforcement and administrative roles, if any, in the booting process; (f) what would be Paylock's fee be under the proposed system; (g) whether a vehicle could be legally "un-booted" upon payment of the outstanding fines and judgments and left operational on City streets where the vehicle's registration status had expired and the vehicle cannot under law be parked or operated on public streets; and (h) whether it was appropriate to omit or disregard necessary and legal guidelines from the Paylock booting program.

37. Over the course of 2011, Airday and the other City Marshals continued to organize and to be outspoken in their opposition to the Paylock booting program, contending to other City Marshals, to the Marshals' Association of the City of New York, Inc. (the "Marshals' Association"), and to DOI that the booting program was unlawful, improper and unfair to the public and to vehicle owners.

38. Upon information and belief, Schwam, Frankel, and the City set out to silence and punish Airday's opposition to the Paylock booting program and to use their conduct against Airday as a message to other City Marshals not to oppose the Paylock booting program or expose any issues pertaining to it.

## *THE PRETEXT*

39. On December 21, 2011 and January 18, 2012, Airday was arrested as a result of an alleged domestic incident with his girlfriend. Among other things, Airday was accused falsely of assaulting and threatening his girlfriend on December 21, 2011

8

and of criminal possession of a handgun on January 18, 2012.

40. Upon information and belief, about December 21, 2011 or shortly thereafter, Schwam learned of the December 21, 2011 assault arrest.

41. Upon information and belief, on January 18, 2012 or shortly thereafter, Schwam learned of the January 18, 2012 gun possession arrest.

42. The day that Schwam learned of the January 18, 2012 arrest, Schwam decided to use that arrest against Airday as a pretext for the purpose of silencing, inhibiting, and punishing Airday for his criticism of the Paylock booting program.

43. On about January 19, 2012, Schwam wrote a letter to Airday, demanding that Airday, who had been a City Marshal for the past 28 years, immediately resign as City Marshal based on the criminal allegations against Airday, without giving Airday any notice or opportunity to be heard and without conducting any investigation into the validity of the allegations against Airday.

44. Schwam had no factual basis for his purported conclusion that Airday was responsible for any of the allegations made against him and, in violation of established DOI rules and procedures, Schwam failed to conduct any type of investigation into the allegations against Airday before demanding his resignation on January 19, 2012.

45. At that same time, Schwam purported to order, under his purported authority under law, that Airday immediately suspend performance of his duties as a City

9

Marshal, other than to wind down his pending matters, in violation of Airday's rights to notice and an opportunity to defend himself.

46. As of January 2012, other City Marshals had been accused of, and even found responsible for, far more serious kinds of conduct, but neither Schwam nor DOI did, under those circumstances, seek the removal or resignation of any of those other City Marshals or otherwise treat similar types of allegations in the same way that Schwam and DOI treated the allegations against Airday.

47. On about January 19, 2012, the day after Schwam learned of Airday's January 18, 2012 arrest, the DOF, acting at the direction of Frankel, in coordination with Schwam, and without providing notice or opportunity to be heard, removed Airday from the Scofflaw Program, thereby causing Airday substantive damages to, and disruption of, his City Marshal operations.

48. Upon information and belief, other City Marshals had been accused of similar or more serious charges, and DOF and Frankel did not treat those City Marshals in the same manner by terminating or suspending their involvement in the Scofflaw Program.

49. Upon information and belief, the DOF made the decision to remove Airday from the Scofflaw Program in furtherance of the City's policy and practice regarding the Paylock booting program, after discussions with Schwam where Schwam requested that the DOF terminate Airday's involvement in the Scofflaw Program.

10

50. Airday refused to resign; refused to cease exercising his right to free speech, expression, and association; and continued to assert his rights to defend himself.

51. On or about February 27, 2012, DOF on behalf of the City, and Paylock signed a five year contract awarding Paylock an exclusive right to use the Paylock booting program in the City of New York.

52. Upon information and belief, the Paylock contract was entered into in violation of the competitive bidding process mandated by state and local law.

53. Upon information and belief, a public hearing on the Paylock contract would have been required in the event that any individual requested the opportunity to speak at any such public hearing.

54. Upon information and belief, no public hearing was conducted on the Paylock contract because of the City's unlawful policy and practice regarding the Paylock booting program and silencing any dissent.

55. Upon information and belief, during the course of 2012, the Marshals' Association and several of its individual members withdrew their opposition to the Paylock booting program because of the City's policies and practices regarding the Paylock booting program.

56. About four months after Schwam and Frankel sought unsuccessfully to force Airday to resign and in furtherance of their unlawful design, on June 1, 2012, Schwam served Airday with formal disciplinary charges against Airday, seeking

11

from the First and Second Department of the Appellate Division his immediate suspension and ultimate removal from his office as a City Marshal.

57. There was no emergency or other pressing legitimate need or justification for an immediate, pre-hearing, suspension of Airday.

58. Although Schwam knew of the criminal charges against Airday as of January 19, 2014, Schwam did not commence disciplinary proceedings against Airday until May 30, 2012.

59. Based on Schwam's application, which was an abuse of his power and position under state law, the Appellate Divisions issued a Joint Administration Order, dated June 11, 2012, granting Schwam's request and temporarily suspending Airday from office, pending further order before, in advance of any hearing on the merits of Schwam's charges.

60. As a result of the suspension, Airday was required to lay off his employees and to shut down his City Marshal office, causing him significant financial damages and emotional distress.

61. On October 17, 2012, Airday was absolved of criminal liability when a jury found him not guilty of the assault charges pressed by his former girlfriend.

62. Thereafter, the District Attorney dismissed the remaining gun possession charges against Airday.

63. Although all criminal charges were completely resolved in Airday's favor,

12

Schwam and the City refused to drop all their disciplinary charges against Airday and Frankel continued his ban on Airday's involvement in the Scofflaw Program.

64.  Acting under color of state law, Schwam continued to assert that Airday should be subject to discipline for failing to "cooperate fully" in DOI's investigation of Airday for failing to produce immediately upon Schwam's demand documents relating to the various charges against Airday before formal charges by DOI had been filed against him, even though Airday was a defendant in a criminal action with a Fifth Amendment right to be free from self-incrimination.

65.  DOI and Schwam had previously demanded in late January of 2012 that Airday produce with one-day's notice various documents relating to the then-pending gun possession charge against him.

66.  In response, Airday asserted that the forced production of documents relating to pending criminal charges implicated Airday's rights as a criminal defendant because he was a defendant in a pending criminal case and the criminal proceeding ought to take precedence over any administration proceedings.

67.  Although other City Marshals had, during Schwam's tenure, engaged in alleged conduct far more egregious than Airday's alleged failure to "cooperate fully," Schwam again misused and abused his power and position under state law and continued his retaliatory prosecution of Airday because of Airday's criticism of the Paylock booting program and because of the likelihood that such criticism would

13

continue as the Paylock booting program moved closer to being fully implemented by the City.

68.  On May 20, 2013, Airday and DOI entered into a stipulation providing for what was represented to be a "final disposition" of the pending administrative charge against Airday relating to his alleged failure to cooperate "fully" with DOI's investigation.  In exchange for paying a stipulated $7,500 fine, all pending charges were dropped, and DOI purported to state its agreement in good faith to seek Airday's reinstatement as a City Marshal.

69.  On June 5, 2013 and June 6, 2013, respectively, the Appellate Divisions for the Second Department and the First Department executed a Joint Administration Order, reinstating Airday as City Marshal and vacating their prior suspension of him from office.

70.  Thereafter, Airday re-opened his office as a City Marshal, hired employees and began the process of rebuilding his operations, which had been substantially damaged by the Defendants' conduct.

71.  About six months later, however, in bad faith and without any notice and contrary to established policies and practices regarding the re-appointment of City Marshals, on December 23, 2013, Schwam unilaterally sent Airday a letter stating that Airday's term of office expired on December 20, 2013, that Airday's "successor has been appointed to that office" and that Airday's "service as a City Marshal has

14

ended."

72. At no time either before or after December 23, 2013 did Schwam or the City provide Airday with any notice or any opportunity to be heard on the termination of his office and authorization to act as a City Marshal.

73. Upon information and belief, the decision to terminated Airday's office and "appoint a successor" was conducted maliciously and in bad faith, for the purpose of punishing Airday for exercising his right of speech and association, for exercising his rights to defend himself and for exercising his right to be free from self-incrimination.

74. Schwam unilaterally terminated Airday as a City Marshal for the purpose of deterring Airday and others from further opposition to the Paylock booting program.

75. The action to terminate Airday's office was an action based on an improper, invalid and unlawful delegation of authority to Schwan and/or DOI and as a result such action is invalid and Airday is entitled to a declaratory judgment that such action was invalid and that he is entitled to reinstatement.

76. The following month, Schwam left DOI and immediately began working for one of former Mayor Bloomberg's private companies.

77. As a result of the illegal conduct by Schwam, Frankel, and the City, Airday has suffered emotional distress and has been financially damaged.

78. At all relevant times, Frankel and Schwam were acting under color of state

15

law.

79. At all relevant times, Airday's statements and expressive conduct critical of the Paylock booting program constituted speech on a matter of public concern.

80. At all relevant times, Airday had a valid and protected property interest in his position, office and authorization to act as a City Marshal.

### FIRST CLAIM FOR RELIEF
(First Amendment Retaliation)

81. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

82. Schwam, Frankel, and the City are liable to Airday for violating of his rights under the First, Fifth, and Fourteenth Amendments to freedom of speech, expression and association by retaliating against him, by investigating him, by bringing administrative charges against him, by terminating his involvement in the Scofflaw Program, by maintaining and by pursuing disciplinary charges against him, and by terminating his office as City Marshal.

83. As a result, Airday has suffered damages in an amount to be established at trial and is entitled to reinstatement to his office.

### SECOND CLAIM FOR RELIEF
(Procedural Due Process)

84. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

16

85. The City and Schwam violated Airday's rights to procedural due process by suspending him in 2012 without any opportunity to be heard and by terminating his office in 2013 without providing him with any notice or any opportunity to be heard.

86. As a result, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

## THIRD CLAIM FOR RELIEF
(Substantive Due Process)

87. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

88. Schwam and the City violated Airday's rights to substantive due process by suspending his office and by terminating Airday's property interest in his position, office and authorization to act as a City Marshal in an unauthorized and unlawful manner inconsistent with any legitimate governmental purpose or interest.

89. Given Airday's long-term tenure as a City Marshal, the deprivation of Airday's rights under the circumstances is shockingly inconsistent with basic notions of fairness and ordered liberty.

90. As a result of the Defendants' conduct, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

## FOURTH CLAIM FOR RELIEF
(Equal Protestation: Selective Enforcement)

91. Airday repeats and realleges each of the foregoing allegations as if set forth

17

herein at length.

92. Defendants, Schwam, Frankel, and the City, treated Airday more harshly than they treated others who were similarly situated to Airday.

93. Defendants, Schwam, Frankel, and the City, selectively enforced their rules, regulations, requirement and other conditions against Airday.

94. Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, based their conduct on impermissible considerations in that they so acted with the intent to inhibit and punish Airday for exercising his constitutional rights to speech, affiliation, association, due process, and his right to defend himself and be free from self-incrimination.

95. Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, acted based on impermissible consideration in that they so acted against Airday maliciously and in bad faith with the intent to injure him.

## FIFTH CLAIM FOR RELIEF
(Equal Protection: Class of One)

96. Airday repeats and realleges each of the foregoing allegation as if set forth herein at length.

97. Defendants, Schwam, Frankel, and the City, treated Airday as a "class of one" in a manner that was different from the way they treated others similarly situated, and there is no rational basis or justification for the difference in their

18

treatment of Airday.

98. As a result of the Defendants' conduct, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

## **JURY DEMAND**

99. Plaintiff demands a jury trial on all claims so triable.

THEREFORE, Plaintiff demands that judgment be entered in his favor against the Defendants City, Frankel and Schwam for damages including financial damages, emotional distress damages, and punitive damages, in an amount to be established as trial; for reinstatement to his office as City Marshal; for a declaratory judgment that his removal from office was invalid and unenforceable and that the contract between the City of New York and IPT, LLC is invalid; for the costs and expenses, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and for such other legal and equated relief as the Court deems proper.

Dated: New York, New York
        October 7, 2014

LAW OFFICE OF
NATHANIEL B. SMITH

By: Nathaniel B. Smith
111 Broadway, Suite 1305
New York, New York 10007
Attorney for the Plaintiff

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GEORGE AIRDAY,

                       14-cv-8065 (RWS)

          Plaintiff,

       -against-                **AMENDED COMPLAINT**

THE CITY OF NEW YORK, KEITH        **JURY TRIAL DEMANDED**
SCHWAM, and DAVID M. FRANKEL.

          Defendants.

-----------------------------------------------------------X

     Plaintiff, George Airday, by and through the undersigned counsel, hereby
alleges and states as his Amended Complaint the following:

## PARTIES

1. Plaintiff, George Airday ("Airday"), is an individual with a residence in the
State of New York.

2. Defendant, the City of New York (the "City"), is a municipal corporation
organized and existing under the laws of the State of New York.

3. Defendant, Keith Schwam ("Schwam"), is an individual with a residence in
the State of New York, and at all relevant times, Schwam was the Director of the
Marshal's Bureau at the New York City Department of Investigations ("DOI").

4. Defendant, David M. Frankel ("Frankel"), is an individual with a residence in
the State of New York, and at all times, Frankel was the Commissioner of the New
York City Department of Finance ("DOF").

5. Both Schwam and Frankel are sued in their official and individual capacities.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under and pursuant to 28 U.S.C. §1331 and §1343 (federal justice and civil rights), 28 U. S. C. §§ 2201-2202 (declaratory judgment), and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because this action is brought pursuant to 42 U.S.C. §§1983 and §1988 and the First, Fifth, and Fourteenth Amendments to the United States Constitution as well as the laws of the State of New York.

7. Venue is proper in the district pursuant to 28 U.S.C. §1391(1) because the claims arose in the Southern District of New York.

## BACKGROUND

8. Airday was appointed by the Mayor of the City of New York, Edward I. Koch, as a City Marshal on January 24, 1984 and at all relevant times satisfactorily performed his duties as a City Marshal.

9. City Marshals are appointed by the Mayor pursuant to Section 1601 of the New York City Civil Court Act for five-year terms, and it is part of the practice and policy of the City to regularly reappointed City Marshals to successive five-year terms and/or to hold them over after their terms of office have expired.

10. City Marshals are empowered, among other things, to enforce money judgments entered by the New York City Civil Court against judgment debtors and

their property.

11.  Over the past thirty-five years, there have been about fifty active City Marshals, including Airday, and generally, as a matter of policy and practice, they have continued their duties as City Marshals after the expiration of the remaining portion of their five-year terms of appointment as "holdovers" or until their reappointment.

12.  As with other City Marshals, since his initial appointment in 1984, Airday has been either regularly reappointed to the position as City Marshal or has been "held over" as a City Marshal pending his reappointment.

13.  Airday's initial term was scheduled to expire on December 20, 1988, and after that date he acted as a "holdover" until December 17, 1993, when he received a retroactive re-appointment that was stated to expire on December 20, 1998.

14.  For the next eight years, Airday held office as a holdover again, along with all other City Marshal, whose terms also expired during that eight-year period.

15.  On January 22, 2009, Airday received a re-appointment from Mayor Bloomberg with a stated December 20, 2013 expiration date.

16.  Airday had a reasonable expectation that his office as City Marshal would continue after December 20, 2013 as a "holdover" or by a reappointment, and as such had a property and a liberty interest in that office protected by the due process of law provisions of the United States Constitution.

17.   Over the period from 1984 through 2012 Airday maintained an office as a City Marshal at various locations in New York City, including 16 Court Street, Brooklyn, NY; 401 Broadway, New York, NY; 110 West 40th Street, New York, NY; and 5720 Mosholu Avenue, Bronx, NY 10471.

18.   In the course of the operations of his offices as a City Marshal, Airday made substantial investments in time, office expenses, staff and other expenses associated with the duties of a City Marshal.

19.   For the period from 2002 through 2010, Airday had, among other things, total office expenses as a City Marshal ranging from about $351,000 to $511,000 in expenses, including, average computer expenses of about $65,000 a year; average payroll expenses for four to five employees of about $125,000 a year; and average rent and related office expenses of about $50,000 a year.

## THE SCOFFLAW AND PAYLOCK PROGRAMS

20.   At the times relevant to this action, several City Marshals, including Airday, were actively involved in the New York City's Scofflaw Program.

21.   Under the City's Scofflaw Program, City Marshals, working closely with the New York City Department of Finance ("DOF"), would enforce parking and related fines and judgments against vehicles and their owners where the total fines and judgments exceeded a threshold amount (which was $350 as of 2001) by towing vehicles, enforcing and collecting on the unpaid fines and judgments and otherwise

4

taking responsibility for the care, custody and control of the vehicles.

22.   For at least 20 years, numerous City Marshals, including Airday, focused their offices duties mainly on the Scofflaw Program, devoting substantive time and expense to fulfilling their duties under the Scofflaw Program.

23.   Over time, these City Marshals, including Airday, specialized their operations to tailor them specifically to the City's Scofflaw Program and devoted significant resources to the Scofflaw Program.

24.   Upon information and belief, in about 2010, Mayor Bloomberg decided to assign the administration of the Scofflaw Program to a private corporation with close political ties to the Bloomberg Administration through a private, non-public, no-bid contract in violation of the competitive bidding requirements of state and local law.

25.   The private corporation, IPT, LLC, which is known under the name "Paylock," proposed to the Bloomberg Administration a parking violation enforcement program whereby a vehicle associated with a certain number of unpaid summons or a lapsed New York State registration would no longer be inventoried and towed by a licensed tow company under contract with a City Marshal, but instead, would have a metal boot affixed to one of the vehicle's wheels, immobilizing it while parked on a City street as a means for forcing payment of unpaid fines and judgments (hereafter the "Paylock booting program").

26.   Through its direct lobbying efforts with the Bloomberg Administration, in

5

2010 Paylock secured, with little public disclosure or the approval of the City Council, the authorization of the Bloomberg Administration and the DOF to conduct a pilot program for its booting system.

27. Thereafter, in about 2010 the City and the Bloomberg Administration established a policy and a practice of requiring City agencies, City employees, including DOF and DOI and City Marshals, to provide unqualified and unquestioned support for its private, no-bid arrangement with Paylock.

28. As a result of political pressure from the City and from the Bloomberg Administration, DOF and Defendant Frankel, who, as DOF Commissioner, had oversight and control over the City's Scofflaw Program, and DOI and Defendant Schwam, who as Director of the Marshal's Bureau, had oversight over City Marshals, began enforcing and implementing the City's policy and practice of promoting the Paylock booting program by, among other things, conducting and finalizing negotiations with Paylock without soliciting or obtaining bids from other contractors, as required for City contracts, and punishing and discouraging those who spoke out against the Paylock program or raised questions about its legality.

29. At all relevant times, Defendant Frankel was DOF's Commissioner with oversight and control of the Scofflaw Program, as well as control over Airday's participation in the Scofflaw Program, and oversight and control over the Paylock booting program.

6

30. At all relevant times, Defendant Schwam was the Director of the Marshal's Bureau at the Department of Investigations with direct supervisory oversight over City Marshals, including Airday.

31. At all relevant times, Frankel and Schwam knew of, endorsed, and enforced the policy and practices of the Bloomberg Administration regarding the Paylock booting program.

32. In 2010 and 2011, several of the City Marshals, including Airday, who were actively involved in the City's Scofflaw Program, including Airday, started making inquires, questioning the appropriateness and the legality of the Paylock booting program.

33. Several members of the Marshals Association of the City of New York, Inc. (the "City Marshals Association"), a New York not-for-profit association of City Marshals, including Airday, began organizing for the purpose of opposing the Paylock booting program.

34. The City Marshals Association was run at the time by Ken Kelly as Executive Director and Airday raised his concerns about the Paylock booting program with Kelly on numerous occasions during the course of 2011 and 2012.

35. Airday also raised his concerns about Paylock with Anthony Piscitelli, a lobbyist and attorney for the City Marshals Association and with numerous other City Marshals within the City Marshal Association for the purpose of garnering

7

support for opposing the Paylock booting program.

36.   In late 2011 and early 2012, Airday also directly approached the offices of four local elected officials to raise his concerns about the Paylock booting program: (1) John Koppel, a City Council members from the Bronx; (2) John Liu, the New York City Controller; (3) Denny Farrell, an Assemblyman in Harlem; and (4) Jeff Dinowitz, an Assemblyman from the Bronx.   The purpose of these contacts was to create political pressure to oppose the Paylock booting program.

37.   In about March of 2011, Airday went to the public offices of the DOF to review a proposed operating procedure document for the Paylock booting program.

38.   DOF refused to permit Airday to make a photocopy of the document in violation of established practice, policy and law.

39.   After reviewing the document in the office of the DOF, Airday disseminated his analysis and criticisms of the proposed Paylock booting program to the Executive Director of the City Marshals Association and other members of the City Marshals Association who were involved in the Scofflaw Program so that the organization and the other Marshals had a specific basis upon which to level its criticisms of the Paylock booting program.

40.   Among other things, in his analysis of the Paylock proposal, Airday questioned and requested further information about: (a) how Paylock was chosen by the City and whether a no-bid contract was appropriate and legal; (b) who would be

in charge under the proposal for tracking fines paid to Paylock; (c) who would be responsible for supervising Paylock; (d) what fees would be charged to the vehicle owners; (e) what would be the City Marshal's law enforcement and administrative roles, if any, in the booting process; (f) what would be Paylock's fee be under the proposed system; (g) whether a vehicle could be legally "un-booted" upon payment of the outstanding fines and judgments and left operational on City streets where the vehicle's registration status had expired and the vehicle cannot under law be parked or operated on public streets; and (h) whether it was appropriate to omit or disregard necessary and legal guidelines from the Paylock booting program.

41.   Over the course of 2011 and early 2012, Airday and the other City Marshals continued to organize and to be outspoken in their opposition to the Paylock booting program, contending to other City Marshals Association that the booting program was unlawful, improper and unfair to the public and to vehicle owners.

42.   Upon information and belief, the City Marshals Association's Executive Director, Ken Kelly, told Schwam and Frankel of the mounting opposition to the Paylock booting program and Airday's role in forming that opposition.

43.   Upon information and belief, Schwam and Frankel knew and believed that Airday was spearheading the opposition to the Paylock booting program.

44.   Airday had in the past spoken out publicly on matters relating to the City Marshals and had a well-known reputation among City Marshals and at DOF and

DOI for being out-spoken and assertive. In 1992, Airday testified before the Transportation Committee of the City Council when it was conducting hearings on the role of the New York City Sheriff's Office in the enforcement of judgments against scofflaws and the use of excessive force while enforcing judgments.

45. Airday was spearheading the opposition to the Paylock booting program and upon information and belief Schwam and Frankel knew these facts.

46. Upon information and belief, Schwam, Frankel, and the City set out to silence and punish Airday's opposition to the Paylock booting program, to use their conduct against Airday as a message to other City Marshals not to oppose the Paylock booting program or expose any issues pertaining to it, and to obtain the consent of some of the City Marshalls in the Scofflaw Program to drop their opposition and join ranks with and otherwise embrace the Paylock booting program.

### THE PRETEXT

47. On December 21, 2011 and January 18, 2012, Airday was arrested as a result of an alleged domestic incident with his girlfriend. Among other things, Airday was accused falsely of assaulting and threatening his girlfriend on December 21, 2011 and of criminal possession of a handgun on January 18, 2012.

48. Upon information and belief, about December 21, 2011 or shortly thereafter, Schwam learned of the December 21, 2011 assault arrest.

49. Upon information and belief, on January 18, 2012 or shortly thereafter,

Schwam learned of the January 18, 2012 gun possession arrest.

50. The day that Schwam learned of the January 18, 2012 arrest, Schwam decided to use that arrest against Airday as a pretext for the purpose of silencing, inhibiting, and punishing Airday for his criticism of the Paylock booting program.

51. On about January 19, 2012, Schwam wrote a letter to Airday, demanding that Airday, who had been a City Marshal for the past 28 years, immediately resign as City Marshal based on the criminal allegations against Airday, without giving Airday any notice or opportunity to be heard and without conducting any investigation into the validity of the allegations against Airday.

52. Schwam had no factual basis for his purported conclusion that Airday was responsible for, or guilty of,  the allegations made against him and, in violation of established DOI rules and procedures, Schwam failed to conduct any type of investigation into the allegations against Airday before demanding his resignation on January 19, 2012.

53. At that same time, Schwam purported to order, under his purported authority under law, that Airday immediately suspend performance of his duties as a City Marshal, other than to wind down his pending matters, in violation of Airday's rights to notice and an opportunity to defend himself.

54. As of January 2012, other City Marshals had been accused of far more serious kinds of conduct, but neither Schwam nor DOI did, under those

circumstances, seek the removal or resignation of any of those other City Marshals or otherwise treated similar types of allegations, charges or findings in the same way that Schwam and DOI treated the allegations against Airday.

55. For example, Marshals who were treated much more leniently when faced with significant charges include: Charles Marchisotto, a member of the Scofflaw Program who was arrested for domestic violence and was widely reported as a slum landlord with numerous violations of the NYC codes and regulation governing residential rentals in New York City; Joel Shapiro, who was accused of assaulted yellow cab driver and displaying gun; Howard Schain, a member of the Scofflaw Program who was charged with forging official records and for not being present (as required by law) when vehicles was being impounded; Elmer Flemings, who was charged with stealing trust moneys, Ruth Burko, who was charged with having office records in disarray with more than $170,000 missing; Alfred Locascio, a member of the Scofflaw Program who was charged with permitting employees to use Marshal insignia, illegal use of lights and sirens, used contractor's staff for personal/business tasks;, Jeff Rose, a member of the Scofflaw Program who was charged with false testimony in a federal proceeding and permitting (against the law) towers to impound vehicles without his presence; Hayott Martin, who was charged with illegally buying a car at Marshal's auction; Marshall Fioritto, who was charged with misusing trust moneys; Woodie Gist, who was charged as a landlord with numerous

violations of the rules and regulations governing residential rentals in the City of New York; Linda Swift, who was charged by a Deputy Sheriff for allowing her staff to execute impounds; Frank Sorgente, who was charged with income tax evasion and using trust moneys for personal expenses, and resigned while under suspension; and Roger Hammer, who was repeatedly charged with numerous violations of regulations governing the Marshals towing program.

56. On about January 19, 2012, the day after Schwam learned of Airday's January 18, 2012 arrest, the DOF, acting at the direction of Frankel and in coordination with Schwam, and without providing notice or opportunity to be heard, suspended Airday from the Scofflaw Program, thereby causing Airday substantive damages to, and disruption of, his City Marshal operations.

57. As noted above, other City Marshals had been accused of similar or more serious charges, and DOF and Frankel did not treat those City Marshals in the same manner by terminating or suspending their involvement in the enforcement of judgments on behalf of the City of New York or their involvement in the Scofflaw Program.

58. The suspension by Schwam and Frankel of Airday from the Scofflaw Program was done in bad faith, without any grounds or justification in an arbitrary and capricious manner that abused the powers of their offices for the purpose of punishing Airday for speaking out against the Paylock booting program and to

13

prevent him from engaging in future expressive activity.

59.  The removal of Airday from the Scofflaw Program constituted a de facto suspension from the Scofflaw Program without notice or opportunity to be heard at a time (set to expire on December 20, 2013) when Airday had a reasonable expectation based on the term of his existing office and based on the history of City Marshals continuing their offices that his office would not be shut down or suspended.

60.  The suspension of Airday violated his due process rights because Frankel and Schwam were abusing their power and were using their office as an instrument of oppression and because Airday had a protected property interest and a protected liberty interest in his office and in the continuation of his office at the time based on the existing term of the office and the history of renewals.

61.  Upon information and belief, the DOF made the decision to remove Airday from the Scofflaw Program in furtherance of the City's policy and practice regarding the Paylock booting program, after discussions with Schwam where Schwam requested that the DOF terminate Airday's involvement in the Scofflaw Program.

62.  On or about February 27, 2012, DOF on behalf of the City, and Paylock signed a five-year contract awarding Paylock an exclusive right to use the Paylock booting program in the City of New York.

63.  Upon information and belief, the Paylock contract was entered into in violation of the competitive bidding process mandated by state and local law.

64. Upon information and belief, a public hearing on the Paylock contract would have been required in March of 2012 in the event that any individual requested the opportunity to speak at any such public hearing.

65. Airday did not request a public hearing or appear at the City Council to oppose the Paylock contract and had it not been for the acts by Schwam and Frankel in suspending him from the Scofflaw Program Airday would have requested a public hearing and appeared at the hearing before the City Council to continue his opposition to the Paylock contract.

66. As a result, Schwan and Frankel's conduct had a chilling effect on Airday's right of speech, expression and association and similarly deterred other City Marshalls from continuing to oppose the Paylock booting program.

67. Upon information and belief, no public hearing was ever conducted on the Paylock contract because of the City's unlawful policy and practice regarding the Paylock booting program and silencing any dissent.

68. Upon information and belief, during the course of 2012, the Marshals' Association and several of its individual members withdrew their opposition to the Paylock booting program because of the City's policies and practices regarding the Paylock booting program, including the attack on Airday.

69. About four months after Schwam and Frankel sought unsuccessfully to force Airday to resign and in furtherance of their unlawful design, on June 1, 2012,

15

Schwam served Airday with formal disciplinary charges against Airday, seeking from the First and Second Department of the Appellate Division his immediate suspension and ultimate removal from his office as a City Marshal.

70.  There was no emergency or other pressing legitimate need or justification for an immediate, pre-hearing, suspension of Airday and therefore a pre-hearing suspension of Airday violated his due process rights.

71.  Although Schwam knew of the criminal charges against Airday as of January 19, 2014, Schwam did not commence disciplinary proceedings against Airday until May 30, 2012.

72.  Based on Schwam's application, which was an abuse of his power and position under state law, the Appellate Divisions issued a Joint Administration Order, dated June 11, 2012, granting Schwam's request and temporarily suspended Airday from office, pending further order before, in advance of any hearing on the merits of Schwam's charges.

73.  As a result of the suspension, Airday was required to lay off his employees and to shut down his City Marshal office, causing him significant financial damages and emotional distress.

74.  The suspension of Airday before a hearing on the merits of the charges against him violated his rights to due process because their was no need or justification for a pre-hearing suspension of Airday.

75. Schwam had known of the charges against Airday since at least January 2012 and did not during that period of time seek a pre-hearing suspension from the First and Second Departments.

76. The application for his suspension and the charges pressed by Schwam against Airday were public charges that directly attacked in bad faith for improper purposes Airday's ability to continue to act as a City Marshal.

77. Schwam, as the Director of the DOI's Marshalls Bureau, stated in his application to the First and Second Departments that he lacked the "integrity required on a public servant." Schwam also charged Airday with assaulting and injuring his fiancée and violating an order of protection by possession a handgun, claiming that the charges "are serious and go to the heart of his qualifications to serve as a City Marshal" because they raised questions about Airday's integrity, judgment and attention to court orders and law. Schwan also charged that an immediate suspension was required to eliminate "an acceptable risk to the safety of the public."

78. On October 17, 2012, four months after his pre-hearing suspension by the First and Second Departments, Airday was absolved of criminal liability when a jury found him not guilty of the assault charges pressed by his former girlfriend.

79. Thereafter, the District Attorney dismissed the remaining gun possession charges against Airday.

80. Although all criminal charges were completely resolved in Airday's favor, Schwam and the City refused to drop all their disciplinary charges against Airday and Frankel continued his ban on Airday's involvement in the Scofflaw Program.

81. Acting under color of state law, Schwam continued to assert that Airday should be subject to discipline for failing to "cooperate fully" in DOI's investigation of Airday for failing to produce immediately upon Schwam's demand documents relating to the various charges against Airday before formal charges by DOI had been filed against him, even though Airday was a defendant in a criminal action with a Fifth Amendment right to be free from self-incrimination.

82. As noted above, other City Marshalls had been accused of far more serious charges and were not similarly treated by Schwam, Frankel and the City.

83. DOI and Schwam had previously demanded in late January of 2012 that Airday produce with one-day's notice various documents relating to the then-pending gun possession charge against him.

84. In response, Airday asserted that the forced production of documents relating to pending criminal charges implicated Airday's rights as a criminal defendant because he was a defendant in a pending criminal case and the criminal proceeding ought to take precedence over any administration proceedings.

85. Although other City Marshals had, during Schwam's tenure, engaged in alleged conduct far more egregious than Airday's alleged failure to "cooperate

18

fully," Schwam again misused and abused his power and position under state law and continued his retaliatory prosecution of Airday because of Airday's criticism of the Paylock booting program and because of the likelihood that such criticism would continue as the Paylock booting program moved closer to being fully implemented by the City.

86.   On May 20, 2013, Airday and DOI entered into a stipulation providing for what was represented to be a "final disposition" of the pending administrative charge against Airday relating to his alleged failure to cooperate "fully" with DOI's investigation.  In exchange for paying a stipulated $7,500 fine, all pending charges were dropped, and DOI purported to state its agreement in good faith to seek Airday's reinstatement as a City Marshal.

87.   On June 5, 2013 and June 6, 2013, respectively, the Appellate Divisions for the Second Department and the First Department executed a Joint Administration Order, reinstating Airday as City Marshal and vacating their prior suspension of him from office.

88.   Thereafter, Airday re-opened his office as a City Marshal, hired employees and began the process of rebuilding his operations, which had been substantially damaged by the Defendants' conduct.

89.   About six months later, however, in bad faith and without any notice and contrary to established policies and practices and a mutual understanding of the

parties regarding the re-appointment of City Marshals, on December 23, 2013, Schwam unilaterally sent Airday a letter stating that Airday's term of office expired on December 20, 2013, that Airday's "successor has been appointed to that office" and that Airday's "service as a City Marshal has ended."

90.   At no time either before or after December 23, 2013 did Schwam or the City provide Airday with any notice or any opportunity to be heard on the termination of his office and authorization to act as a City Marshal.

91.   Upon information and belief, the decision to terminated Airday's office and "appoint a successor" was conducted maliciously and in bad faith, for the purpose of punishing Airday for exercising his right of speech and association, for exercising his rights to defend himself and for exercising his right to be free from self-incrimination.

92.   Schwam unilaterally terminated Airday as a City Marshal for the purpose of deterring Airday and others from further opposition to the Paylock booting program.

93.   The action to terminate Airday's office was an action based on an improper, invalid and unlawful delegation of authority to Schwan and/or DOI and as a result such action is invalid and Airday is entitled to a declaratory judgment that such action was invalid and that he is entitled to reinstatement.

94.   The following month, Schwam left DOI and immediately began working for one of former Mayor Bloomberg's private companies.

95.   As a result of the illegal conduct by Schwam, Frankel, and the City, Airday has suffered emotional distress and has been financially damaged.

96.   At all relevant times, Frankel and Schwam were acting under color of state law.

97.   At all relevant times, Airday's statements and expressive conduct critical of the Paylock booting program constituted speech on a matter of public concern.

98.   At all relevant times, Airday had a valid and protected property and liberty interest in his position, office and authorization to act as a City Marshal.

## FIRST CLAIM FOR RELIEF
### (First Amendment Retaliation)

99.   Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

100. Schwam, Frankel, and the City are liable to Airday for violating of his rights under the First, Fifth, and Fourteenth Amendments to freedom of speech, expression and association by retaliating against him, by investigating him, by bringing administrative charges against him, by terminating his involvement in the Scofflaw Program, by chilling his protected activities, by maintaining and by pursuing disciplinary charges against him, and by terminating his office as City Marshal.

101. As a result, Airday has suffered damages in an amount to be established at trial and is entitled to reinstatement to his office.

## SECOND CLAIM FOR RELIEF
(Procedural Due Process; Suspension)

102. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

103. On January 19, 2012, Schwam wrote to Airday, demanding that Airday resign his office because of the recent allegations against him.

104. Schwam's decision to demand Airday's resignation was not made in good faith, was made without any investigation, and was made for the purpose of silencing Airday in making further objections to the Paylock contract.

105. At the same time, Frankel made the unilateral decision to eliminate Airday's involvement in the DOF's Scofflaw Program, effectively putting Airday, whose business almost exclusively was based on and derived from the Scofflaw Program, out of business.

106. The City, Schwam, and Frankel violated Airday's rights to procedural due process by suspending him unilaterally in January 2012 from the Scofflaw Program and for suspending him as a City Marshall in June 2012 without any pre-suspension hearing.

107. As a result, Airday has suffered damages in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF
(Procedural Due Process; Termination)

108.   Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

109. The City and Schwam violated Airday's rights to procedural due process by terminating his office in 2013 without providing him with any notice or any opportunity to be heard.

110. As a result, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

## FOURTH CLAIM FOR RELIEF
(Substantive Due Process)

111. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

112. Schwam and the City violated Airday's rights to substantive due process by suspending his office and by terminating Airday's property interest in his position, office and authorization to act as a City Marshal in an unauthorized and unlawful manner inconsistent with any legitimate governmental purpose or interest.

113. Given Airday's long-term tenure as a City Marshal, the deprivation of Airday's rights under the circumstances is shockingly inconsistent with basic notions of fairness and ordered liberty.

114. As a result of the Defendants' conduct, Airday has suffered damages and is

entitled to reinstatement to his office as City Marshal.

### FIFTH CLAIM FOR RELIEF
(Equal Protestation: Selective Enforcement)

115. Airday repeats and realleges each of the foregoing allegations as if set forth herein at length.

116. Defendants, Schwam, Frankel, and the City, treated Airday more harshly than they treated others who were similarly situated to Airday.

117. Defendants, Schwam, Frankel, and the City, selectively enforced their rules, regulations, requirement and other conditions against Airday.

118. Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, based their conduct on impermissible considerations in that they so acted with the intent to inhibit and punish Airday for exercising his constitutional rights to speech, affiliation, association, due process, and his right to defend himself and be free from self-incrimination.

119. Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, acted based on impermissible consideration in that they so acted against Airday maliciously and in bad faith with the intent to injure him.

### SIXTH CLAIM FOR RELIEF
(Equal Protection: Class of One)

120. Airday repeats and realleges each of the foregoing allegation as if set forth

24

herein at length.

121. Defendants, Schwam, Frankel, and the City, treated Airday as a "class of one" in a manner that was different from the way they treated others similarly situated, and there is no rational basis or justification for the difference in their treatment of Airday.

122. As a result of the Defendants' conduct, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

## JURY DEMAND

123. Plaintiff demands a jury trial on all claims so triable.

THEREFORE, Plaintiff demands that judgment be entered in his favor against the Defendants City, Frankel and Schwam for damages including financial damages, emotional distress damages, and punitive damages, in an amount to be established as trial; for reinstatement to his office as City Marshal; for a declaratory judgment that his removal from office was invalid and unenforceable and that the contract between the City of New York and IPT, LLC is invalid; for the costs and expenses, including

reasonable attorney's fees pursuant to 42 U.S.C. §1988; and for such other legal and

equated relief as the Court deems proper.

Dated: New York, New York
          October 7, 2015

                                        LAW OFFICE OF
                                        NATHANIEL B. SMITH

                                            *s/NBS*

                                        By: Nathaniel B. Smith
                                        100 Wall Street – 23rd Floor
                                        New York, New York 10005
                                        Attorney for the Plaintiff

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

GEORGE AIRDAY,                                    14-CV-8065 (RWS)

                          Plaintiff,

          -against-                                **AMENDED COMPLAINT**

THE CITY OF NEW YORK, KEITH SCHWAM, and
DAVID M. FRANKEL.

                    Defendants.        **JURY TRIAL DEMANDED**

----------------------------------------------------------------------- x

        Plaintiff, George Airday, by and through the undersigned counsel, hereby alleges and states as his Amended Complaint the following:

## PARTIES

        1.  Plaintiff, George Airday ("Airday"), is an individual with a residence in the State of New York.

        2.  Defendant, the City of New York (the "City"), is a municipal corporation organized and existing under the laws of the State of New York.

        3.  Defendant, Keith Schwam ("Schwam"), is an individual with a residence in the State of New York, and at all relevant times, Schwam was the Director of the Marshal's Bureau at the New York City Department of Investigations ("DOI").

        4.  Defendant, David M. Frankel ("Frankel"), is an individual with a residence in the State of New York, and at all times, Frankel was the Commissioner of the New York City Department of Finance ("DOF").

        5.  Both Schwam and Frankel are sued in their official and individual capacities.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action under and pursuant to 28 U.S.C. §1331 and §1343 (federal justice and civil rights), 28 U. S. C. §§ 2201-2202 (declaratory judgment), and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because this action is brought pursuant to 42 U.S.C. §§1983 and §1988 and the First, Fifth, and Fourteenth Amendments to the United States Constitution as well as the laws of the State of New York.

7.   Venue is proper in the district pursuant to 28 U.S.C. §1391(1) because the claims arose in the Southern District of New York.

## BACKGROUND

8.   Airday was appointed by the Mayor of the City of New York, Edward I. Koch, as a City Marshal on January 24, 1984 and at all relevant times satisfactorily performed his duties as a City Marshal.

9.   City Marshals are appointed by the Mayor pursuant to Section 1601 of the New York City Civil Court Act for five-year terms, and it is part of the practice and policy of the City to regularly reappointed City Marshals to successive five-year terms and/or to hold them over after their terms of office have expired.

10.   City Marshals are empowered, among other things, to enforce money judgments entered by the New York City Civil Court against judgment debtors and their property.

11.   Over the past thirty-five years, there have been about fifty active City Marshals, including Airday, and generally, as a matter of policy and practice, they have continued their duties as City Marshals after the expiration of the remaining portion of their five-year terms of appointment as "holdovers" or until their reappointment.

12.     As with other City Marshals, since his initial appointment in 1984, Airday has been either regularly reappointed to the position as City Marshal or has been "held over" as a City Marshal pending his reappointment.

13.     Airday's initial term was scheduled to expire on December 20, 1988, and after that date he acted as a "holdover" until December 17, 1993, when he received a retroactive re-appointment that was stated to expire on December 20, 1998.

14.     For the next eight years, Airday held office as a holdover again, along with all other City Marshal, whose terms also expired during that eight-year period.

15.     On January 22, 2009, Airday received a re-appointment from Mayor Bloomberg with a stated December 20, 2013 expiration date.

16. Airday had a reasonable expectation that his office as City Marshal would continue after December 20, 2013 as a "holdover" or by a reappointment, and as such had a property and a liberty interest in that office protected by the due process of law provisions of the United States Constitution.

17.     Over the period from 1984 through 2012 Airday maintained an office as a City Marshal at various locations in New York City, including 16 Court Street, Brooklyn, NY; 401 Broadway, New York, NY; 110 West 40th Street, New York, NY; and 5720 Mosholu Avenue, Bronx, NY 10471.

18.     In the course of the operations of his offices as a City Marshal, Airday made substantial investments in time, office expenses, staff and other expenses associated with the duties of a City Marshal.

19.     For the period from 2002 through 2010, Airday had, among other things, total office expenses as a City Marshal ranging from about $351,000 to $511,000 in expenses,

including, average computer expenses of about $65,000 a year; average payroll expenses for four to five employees of about $125,000 a year; and average rent and related office expenses of about $50,000 a year.

## THE SCOFFLAW AND PAYLOCK PROGRAMS

20.    At the times relevant to this action, several City Marshals, including Airday, were actively involved in the New York City's Scofflaw Program.

21.    Under the City's Scofflaw Program, City Marshals, working closely with the New York City Department of Finance ("DOF"), would enforce parking and related fines and judgments against vehicles and their owners where the total fines and judgments exceeded a threshold amount (which was $350 as of 2001) by towing vehicles, enforcing and collecting on the unpaid fines and judgments and otherwise taking responsibility for the care, custody and control of the vehicles.

22.    For at least 20 years, numerous City Marshals, including Airday, focused their offices duties mainly on the Scofflaw Program, devoting substantive time and expense to fulfilling their duties under the Scofflaw Program.

23.    Over time, these City Marshals, including Airday, specialized their operations to tailor them specifically to the City's Scofflaw Program and devoted significant resources to the Scofflaw Program.

24.    Upon information and belief, in about 2010, Mayor Bloomberg decided to assign the administration of the Scofflaw Program to a private corporation with close political ties to the Bloomberg Administration through a private, non-public, no-bid contract in violation of the competitive bidding requirements of state and local law.

25.    The private corporation, IPT, LLC, which is known under the name "Paylock," proposed to the Bloomberg Administration a parking violation enforcement program

whereby a vehicle associated with a certain number of unpaid summons or a lapsed New York State registration would no longer be inventoried and towed by a licensed tow company under contract with a City Marshal, but instead, would have a metal boot affixed to one of the vehicle's wheels, immobilizing it while parked on a City street as a means for forcing payment of unpaid fines and judgments (hereafter the "Paylock booting program").

26.    Through its direct lobbying efforts with the Bloomberg Administration, in 2010 Paylock secured, with little public disclosure or the approval of the City Council, the authorization of the Bloomberg Administration and the DOF to conduct a pilot program for its booting system.

27.    Thereafter, in about 2010 the City and the Bloomberg Administration established a policy and a practice of requiring City agencies, City employees, including DOF and DOI and City Marshals, to provide unqualified and unquestioned support for its private, no-bid arrangement with Paylock.

28.    As a result of political pressure from the City and from the Bloomberg Administration, DOF and Defendant Frankel, who, as DOF Commissioner, had oversight and control over the City's Scofflaw Program, and DOI and Defendant Schwam, who as Director of the Marshal's Bureau, had oversight over City Marshals, began enforcing and implementing the City's policy and practice of promoting the Paylock booting program by, among other things, conducting and finalizing negotiations with Paylock without soliciting or obtaining bids from other contractors, as required for City contracts, and punishing and discouraging those who spoke out against the Paylock program or raised questions about its legality.

29.     At all relevant times, Defendant Frankel was DOF's Commissioner with oversight and control of the Scofflaw Program, as well as control over Airday's participation in the Scofflaw Program, and oversight and control over the Paylock booting program.

30.     At all relevant times, Defendant Schwam was the Director of the Marshal's Bureau at the Department of Investigations with direct supervisory oversight over City Marshals, including Airday.

31.     At all relevant times, Frankel and Schwam knew of, endorsed, and enforced the policy and practices of the Bloomberg Administration regarding the Paylock booting program.

32.     In 2010 and 2011, several of the City Marshals, including Airday, who were actively involved in the City's Scofflaw Program, including Airday, started making inquires, questioning the appropriateness and the legality of the Paylock booting program.

33.     Several members of the Marshals Association of the City of New York, Inc. (the "City Marshals Association"), a New York not-for-profit association of City Marshals, including Airday, began organizing for the purpose of opposing the Paylock booting program.

34.     The City Marshals Association was run at the time by Ken Kelly as Executive Director and Airday raised his concerns about the Paylock booting program with Kelly on numerous occasions during the course of 2011 and 2012.

35.     Airday also raised his concerns about Paylock with Anthony Piscitelli, a lobbyist and attorney for the City Marshals Association and with numerous other City Marshals within the City Marshal Association for the purpose of garnering support for opposing the Paylock booting program.

36. In late 2011 and early 2012, Airday also directly approached the offices of four local elected officials to raise his concerns about the Paylock booting program: (1) John Koppel, a City Council members from the Bronx; (2) John Liu, the New York City Controller; (3) Denny Farrell, an Assemblyman in Harlem; and (4) Jeff Dinowitz, an Assemblyman from the Bronx. The purpose of these contacts was to create political pressure to oppose the Paylock booting program.

37. 33. In about March of 2011, Airday went to the public offices of the DOF to review a proposed operating procedure document for the Paylock booting program.

38. 34. DOF refused to permit Airday to make a photocopy of the document in violation of established practice, policy and law.

39. 35. After reviewing the document in the office of the DOF, Airday disseminated his analysis and criticisms of the proposed Paylock booting program to the Executive Director of the City Marshals Association and other members of the City Marshals Association who were involved in the Scofflaw Program so that the organization and the other Marshals had a specific basis upon which to level its criticisms of the Paylock booting program.

40. 36. Among other things, in his analysis of the Paylock proposal, Airday questioned and requested further information about: (a) how Paylock was chosen by the City and whether a no-bid contract was appropriate and legal; (b) who would be in charge under the proposal for tracking fines paid to Paylock; (c) who would be responsible for supervising Paylock; (d) what fees would be charged to the vehicle owners; (e) what would be the City Marshal's law enforcement and administrative roles, if any, in the booting process; (f) what would be Paylock's fee be under the proposed system; (g) whether a vehicle could be legally "un-booted" upon payment of the outstanding fines and judgments and left operational on City

streets where the vehicle's registration status had expired and the vehicle cannot under law be parked or operated on public streets; and (h) whether it was appropriate to omit or disregard necessary and legal guidelines from the Paylock booting program.

41. ~~37.~~ Over the course of ~~2011,~~2011 and early 2012, Airday and the other City Marshals continued to organize and to be outspoken in their opposition to the Paylock booting program, contending to other City Marshals~~, to the Marshals' Association of the City of New York, Inc. (the "Marshals'~~ Association~~"), and to DOI~~ that the booting program was unlawful, improper and unfair to the public and to vehicle owners.

42. Upon information and belief, the City Marshals Association's Executive Director, Ken Kelly, told Schwam and Frankel of the mounting opposition to the Paylock booting program and Airday's role in forming that opposition.

43. Upon information and belief, Schwam and Frankel knew and believed that Airday was spearheading the opposition to the Paylock booting program.

44. Airday had in the past spoken out publicly on matters relating to the City Marshals and had a well-known reputation among City Marshals and at DOF and DOI for being out-spoken and assertive. In 1992, Airday testified before the Transportation Committee of the City Council when it was conducting hearings on the role of the New York City Sheriff's Office in the enforcement of judgments against scofflaws and the use of excessive force while enforcing judgments.

45. Airday was spearheading the opposition to the Paylock booting program and upon information and belief Schwam and Frankel knew these facts.

46. ~~38.~~ Upon information and belief, Schwam, Frankel, and the City set out to silence and punish Airday's opposition to the Paylock booting program ~~and,~~ to use their conduct

against Airday as a message to other City Marshals not to oppose the Paylock booting program or expose any issues pertaining to it, and to obtain the consent of some of the City Marshalls in the Scofflaw Program to drop their opposition and join ranks with and otherwise embrace the Paylock booting program.

## THE PRETEXT

47. 39. On December 21, 2011 and January 18, 2012, Airday was arrested as a result of an alleged domestic incident with his girlfriend. Among other things, Airday was accused falsely of assaulting and threatening his girlfriend on December 21, 2011 and of criminal possession of a handgun on January 18, 2012.

48. 40. Upon information and belief, about December 21, 2011 or shortly thereafter, Schwam learned of the December 21, 2011 assault arrest.

49. 41. Upon information and belief, on January 18, 2012 or shortly thereafter, Schwam learned of the January 18, 2012 gun possession arrest.

50. 42. The day that Schwam learned of the January 18, 2012 arrest, Schwam decided to use that arrest against Airday as a pretext for the purpose of silencing, inhibiting, and punishing Airday for his criticism of the Paylock booting program.

51. 43. On about January 19, 2012, Schwam wrote a letter to Airday, demanding that Airday, who had been a City Marshal for the past 28 years, immediately resign as City Marshal based on the criminal allegations against Airday, without giving Airday any notice or opportunity to be heard and without conducting any investigation into the validity of the allegations against Airday.

52. 44. Schwam had no factual basis for his purported conclusion that Airday was responsible for any, or guilty of, the allegations made against him and, in violation of

established DOI rules and procedures, Schwam failed to conduct any type of investigation into the allegations against Airday before demanding his resignation on January 19, 2012.

53. 45. At that same time, Schwam purported to order, under his purported authority under law, that Airday immediately suspend performance of his duties as a City Marshal, other than to wind down his pending matters, in violation of Airday's rights to notice and an opportunity to defend himself.

54. 46. As of January 2012, other City Marshals had been accused of, and even found responsible for, far more serious kinds of conduct, but neither Schwam nor DOI did, under those circumstances, seek the removal or resignation of any of those other City Marshals or otherwise treattreated similar types of allegations, charges or findings in the same way that Schwam and DOI treated the allegations against Airday.

55 For example, Marshals who were treated much more leniently when faced with significant charges include: Charles Marchisotto, a member of the Scofflaw Program who was arrested for domestic violence and was widely reported as a slum landlord with numerous violations of the NYC codes and regulation governing residential rentals in New York City; Joel Shapiro, who was accused of assaulted yellow cab driver and displaying gun; Howard Schain, a member of the Scofflaw Program who was charged with forging official records and for not being present (as required by law) when vehicles was being impounded; Elmer Flemings, who was charged with stealing trust moneys, Ruth Burko, who was charged with having office records in disarray with more than $170,000 missing; Alfred Locascio, a member of the Scofflaw Program who was charged with permitting employees to use Marshal insignia, illegal use of lights and sirens, used contractor's staff for personal/business tasks;, Jeff Rose, a member of the Scofflaw Program who was charged with false testimony in a federal proceeding and permitting

-10-

(against the law) towers to impound vehicles without his presence; Hayott Martin, who was charged with illegally buying a car at Marshal's auction; Marshall Fioritto, who was charged with misusing trust moneys; Woodie Gist, who was charged as a landlord with numerous violations of the rules and regulations governing residential rentals in the City of New York; Linda Swift, who was charged by a Deputy Sheriff for allowing her staff to execute impounds; Frank Sorgente, who was charged with income tax evasion and using trust moneys for personal expenses, and resigned while under suspension; and Roger Hammer, who was repeatedly charged with numerous violations of regulations governing the Marshals towing program.

56. 47. On about January 19, 2012, the day after Schwam learned of Airday's January 18, 2012 arrest, the DOF, acting at the direction of Frankel, and in coordination with Schwam, and without providing notice or opportunity to be heard, removed suspended Airday from the Scofflaw Program, thereby causing Airday substantive damages to, and disruption of, his City Marshal operations.

57. 48. Upon information and belief As noted above, other City Marshals had been accused of similar or more serious charges, and DOF and Frankel did not treat those City Marshals in the same manner by terminating or suspending their involvement in the enforcement of judgments on behalf of the City of New York or their involvement in the Scofflaw Program.

58. The suspension by Schwam and Frankel of Airday from the Scofflaw Program was done in bad faith, without any grounds or justification in an arbitrary and capricious manner that abused the powers of their offices for the purpose of punishing Airday for speaking out against the Paylock booting program and to prevent him from engaging in future expressive activity.

59. The removal of Airday from the Scofflaw Program constituted a de facto suspension from the Scofflaw Program without notice or opportunity to be heard at a time (set to expire on December 20, 2013) when Airday had a reasonable expectation based on the term of his existing office and based on the history of City Marshals continuing their offices that his office would not be shut down or suspended.

60. The suspension of Airday violated his due process rights because Frankel and Schwam were abusing their power and were using their office as an instrument of oppression and because Airday had a protected property interest and a protected liberty interest in his office and in the continuation of his office at the time based on the existing term of the office and the history of renewals.

61. 49. Upon information and belief, the DOF made the decision to remove Airday from the Scofflaw Program in furtherance of the City's policy and practice regarding the Paylock booting program, after discussions with Schwam where Schwam requested that the DOF terminate Airday's involvement in the Scofflaw Program.

50.    Airday refused to resign; refused to cease exercising his right to free speech, expression, and association; and continued to assert his rights to defend himself.

62. 51. On or about February 27, 2012, DOF on behalf of the City, and Paylock signed a five -year contract awarding Paylock an exclusive right to use the Paylock booting program in the City of New York.

63. 52. Upon information and belief, the Paylock contract was entered into in violation of the competitive bidding process mandated by state and local law.

64. 53. Upon information and belief, a public hearing on the Paylock contract would have been required in March of 2012 in the event that any individual requested the opportunity to speak at any such public hearing.

65. Airday did not request a public hearing or appear at the City Council to oppose the Paylock contract and had it not been for the acts by Schwam and Frankel in suspending him from the Scofflaw Program Airday would have requested a public hearing and appeared at the hearing before the City Council to continue his opposition to the Paylock contract.

66. As a result, Schwan and Frankel's conduct had a chilling effect on Airday's right of speech, expression and association and similarly deterred other City Marshalls from continuing to oppose the Paylock booting program.

67. 54. Upon information and belief, no public hearing was ever conducted on the Paylock contract because of the City's unlawful policy and practice regarding the Paylock booting program and silencing any dissent.

68. 55. Upon information and belief, during the course of 2012, the Marshals' Association and several of its individual members withdrew their opposition to the Paylock booting program because of the City's policies and practices regarding the Paylock booting program, including the attack on Airday.

69. 56. About four months after Schwam and Frankel sought unsuccessfully to force Airday to resign and in furtherance of their unlawful design, on June 1, 2012, Schwam served Airday with formal disciplinary charges against Airday, seeking from the First and Second Department of the Appellate Division his immediate suspension and ultimate removal from his office as a City Marshal.

70. 57. There was no emergency or other pressing legitimate need or justification for an immediate, pre-hearing, suspension of Airday and therefore a pre-hearing suspension of Airday violated his due process rights.

71. 58. Although Schwam knew of the criminal charges against Airday as of January 19, 2014, Schwam did not commence disciplinary proceedings against Airday until May 30, 2012.

72. 59. Based on Schwam's application, which was an abuse of his power and position under state law, the Appellate Divisions issued a Joint Administration Order, dated June 11, 2012, granting Schwam's request and temporarily suspendingsuspended Airday from office, pending further order before, in advance of any hearing on the merits of Schwam's charges.

73. 60. As a result of the suspension, Airday was required to lay off his employees and to shut down his City Marshal office, causing him significant financial damages and emotional distress.

74. The suspension of Airday before a hearing on the merits of the charges against him violated his rights to due process because their was no need or justification for a pre-hearing suspension of Airday.

75. Schwam had known of the charges against Airday since at least January 2012 and did not during that period of time seek a pre-hearing suspension from the First and Second Departments.

76. The application for his suspension and the charges pressed by Schwam against Airday were public charges that directly attacked in bad faith for improper purposes Airday's ability to continue to act as a City Marshal.

77. Schwam, as the Director of the DOI's Marshalls Bureau, stated in his application to the First and Second Departments that he lacked the "integrity required on a public servant." Schwam also charged Airday with assaulting and injuring his fiancée and violating an order of protection by possession a handgun, claiming that the charges "are serious and go to the heart of his qualifications to serve as a City Marshal" because they raised questions about Airday's integrity, judgment and attention to court orders and law. Schwan also charged that an immediate suspension was required to eliminate "an acceptable risk to the safety of the public."

78. 61. On October 17, 2012, four months after his pre-hearing suspension by the First and Second Departments, Airday was absolved of criminal liability when a jury found him not guilty of the assault charges pressed by his former girlfriend.

79. 62. Thereafter, the District Attorney dismissed the remaining gun possession charges against Airday.

80. 63. Although all criminal charges were completely resolved in Airday's favor, Schwam and the City refused to drop all their disciplinary charges against Airday and Frankel continued his ban on Airday's involvement in the Scofflaw Program.

81. 64. Acting under color of state law, Schwam continued to assert that Airday should be subject to discipline for failing to "cooperate fully" in DOI's investigation of Airday for failing to produce immediately upon Schwam's demand documents relating to the various charges against Airday before formal charges by DOI had been filed against him, even though Airday was a defendant in a criminal action with a Fifth Amendment right to be free from self-incrimination.

82. As noted above, other City Marshalls had been accused of far more serious charges and were not similarly treated by Schwam, Frankel and the City.

83. 65. DOI and Schwam had previously demanded in late January of 2012 that Airday produce with one-day's notice various documents relating to the then-pending gun possession charge against him.

84. 66. In response, Airday asserted that the forced production of documents relating to pending criminal charges implicated Airday's rights as a criminal defendant because he was a defendant in a pending criminal case and the criminal proceeding ought to take precedence over any administration proceedings.

85. 67. Although other City Marshals had, during Schwam's tenure, engaged in alleged conduct far more egregious than Airday's alleged failure to "cooperate fully," Schwam again misused and abused his power and position under state law and continued his retaliatory prosecution of Airday because of Airday's criticism of the Paylock booting program and because of the likelihood that such criticism would continue as the Paylock booting program moved closer to being fully implemented by the City.

86. 68. On May 20, 2013, Airday and DOI entered into a stipulation providing for what was represented to be a "final disposition" of the pending administrative charge against Airday relating to his alleged failure to cooperate "fully" with DOI's investigation. In exchange for paying a stipulated $7,500 fine, all pending charges were dropped, and DOI purported to state its agreement in good faith to seek Airday's reinstatement as a City Marshal.

87. 69. On June 5, 2013 and June 6, 2013, respectively, the Appellate Divisions for the Second Department and the First Department executed a Joint Administration Order, reinstating Airday as City Marshal and vacating their prior suspension of him from office.

88. 70. Thereafter, Airday re-opened his office as a City Marshal, hired employees and began the process of rebuilding his operations, which had been substantially damaged by the Defendants' conduct.

89. 71. About six months later, however, in bad faith and without any notice and contrary to established policies and practices and a mutual understanding of the parties regarding the re-appointment of City Marshals, on December 23, 2013, Schwam unilaterally sent Airday a letter stating that Airday's term of office expired on December 20, 2013, that Airday's "successor has been appointed to that office" and that Airday's "service as a City Marshal has ended."

90. 72. At no time either before or after December 23, 2013 did Schwam or the City provide Airday with any notice or any opportunity to be heard on the termination of his office and authorization to act as a City Marshal.

91. 73. Upon information and belief, the decision to terminated Airday's office and "appoint a successor" was conducted maliciously and in bad faith, for the purpose of punishing Airday for exercising his right of speech and association, for exercising his rights to defend himself and for exercising his right to be free from self-incrimination.

92. 74. Schwam unilaterally terminated Airday as a City Marshal for the purpose of deterring Airday and others from further opposition to the Paylock booting program.

93. 75. The action to terminate Airday's office was an action based on an improper, invalid and unlawful delegation of authority to Schwan and/or DOI and as a result such action is invalid and Airday is entitled to a declaratory judgment that such action was invalid and that he is entitled to reinstatement.

94. 76. The following month, Schwam left DOI and immediately began working for one of former Mayor Bloomberg's private companies.

95. 77. As a result of the illegal conduct by Schwam, Frankel, and the City, Airday has suffered emotional distress and has been financially damaged.

96. 78. At all relevant times, Frankel and Schwam were acting under color of state law.

97. 79. At all relevant times, Airday's statements and expressive conduct critical of the Paylock booting program constituted speech on a matter of public concern.

98. 80. At all relevant times, Airday had a valid and protected property and liberty interest in his position, office and authorization to act as a City Marshal.

### FIRST CLAIM FOR RELIEF
### (First Amendment Retaliation)

99.     81. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

100.     82. Schwam, Frankel, and the City are liable to Airday for violating of his rights under the First, Fifth, and Fourteenth Amendments to freedom of speech, expression and association by retaliating against him, by investigating him, by bringing administrative charges against him, by terminating his involvement in the Scofflaw Program, by chilling his protected activities, by maintaining and by pursuing disciplinary charges against him, and by terminating his office as City Marshal.

101.     83. As a result, Airday has suffered damages in an amount to be established at trial and is entitled to reinstatement to his office.

### SECOND CLAIM FOR RELIEF
### (Procedural Due Process: Suspension)

102.     84. Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

103.    On January 19, 2012, Schwam wrote to Airday, demanding that Airday resign his office because of the recent allegations against him.

104.    Schwam's decision to demand Airday's resignation was not made in good faith, was made without any investigation, and was made for the purpose of silencing Airday in making further objections to the Paylock contract.

105.    At the same time, Frankel made the unilateral decision to eliminate Airday's involvement in the DOF's Scofflaw Program, effectively putting Airday, whose business almost exclusively was based on and derived from the Scofflaw Program, out of business.

106.    85.  The City and, Schwam, and Frankel violated Airday's rights to procedural due process by suspending him in 2012 without any opportunity to be heard andunilaterally in January 2012 from the Scofflaw Program and for suspending him as a City Marshall in June 2012 without any pre-suspension hearing.

107.    As a result, Airday has suffered damages in an amount to be established at trial.

**THIRD CLAIM FOR RELIEF**
**(Procedural Due Process: Termination)**

108.    Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

109.    The City and Schwam violated Airday's rights to procedural due process by terminating his office in 2013 without providing him with any notice or any opportunity to be heard.

110.    86.  As a result, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

### ~~THIRD~~FOURTH CLAIM FOR RELIEF
### (Substantive Due Process)

111. ~~87.~~ Airday repeats and realleges the forgoing allegations herein as if set forth in this claim at length.

112. ~~88.~~ Schwam and the City violated Airday's rights to substantive due process by suspending his office and by terminating Airday's property interest in his position, office and authorization to act as a City Marshal in an unauthorized and unlawful manner inconsistent with any legitimate governmental purpose or interest.

113. ~~89.~~ Given Airday's long-term tenure as a City Marshal, the deprivation of Airday's rights under the circumstances is shockingly inconsistent with basic notions of fairness and ordered liberty.

114. ~~90.~~ As a result of the Defendants' conduct, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

### ~~FOURTH~~FIFTH CLAIM FOR RELIEF
### (Equal Protestation: Selective Enforcement)

115. ~~91.~~ Airday repeats and realleges each of the foregoing allegations as if set forth herein at length.

116. ~~92.~~ Defendants, Schwam, Frankel, and the City, treated Airday more harshly than they treated others who were similarly situated to Airday.

117. ~~93.~~ Defendants, Schwam, Frankel, and the City, selectively enforced their rules, regulations, requirement and other conditions against Airday.

118. ~~94.~~ Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, based their conduct on impermissible considerations in that they so acted with the intent to inhibit and punish Airday for exercising his

constitutional rights to speech, affiliation, association, due process, and his right to defend himself and be free from self-incrimination.

119. 95. Defendants, Schwam, Frankel, and the City, in their selective enforcement and selective treatment of Airday, acted based on impermissible consideration in that they so acted against Airday maliciously and in bad faith with the intent to injure him.

### FIFTHSIXTH CLAIM FOR RELIEF
### (Equal Protection: Class of One)

120. 96. Airday repeats and realleges each of the foregoing allegation as if set forth herein at length.

121. 97. Defendants, Schwam, Frankel, and the City, treated Airday as a "class of one" in a manner that was different from the way they treated others similarly situated, and there is no rational basis or justification for the difference in their treatment of Airday.

122. 98. As a result of the Defendants' conduct, Airday has suffered damages and is entitled to reinstatement to his office as City Marshal.

### JURY DEMAND

123. 99. Plaintiff demands a jury trial on all claims so triable.

THEREFORE, Plaintiff demands that judgment be entered in his favor against the Defendants City, Frankel and Schwam for damages including financial damages, emotional distress damages, and punitive damages, in an amount to be established as trial; for reinstatement to his office as City Marshal; for a declaratory judgment that his removal from office was invalid and unenforceable and that the contract between the City of New York and IPT, LLC is invalid; for the costs and expenses, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and for such other legal and equated relief as the Court deems proper.

Dated:      New York, New York
            October 7, 20142015

LAW OFFICE OF
NATHANIEL B. SMITH


s/NBS


By: Nathaniel B. Smith
111 Broadway, Suite 1305100 Wall Street – 23rd
Floor
New York, New York 1000710005
Attorney for the Plaintiff

Document comparison by Workshare Professional on Tuesday, January 09, 2018 2:58:02 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://LAWMAN-DMS.LAW.LOCAL/Legal/7942416/1 |
| Description | #7942416v1<Legal> - AirdDay Complaint |
| Document 2 ID | interwovenSite://LAWMAN-DMS.LAW.LOCAL/Legal/7942448/1 |
| Description | #7942448v1<Legal> - AirdDay Amended Complaint |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 94 |
| Deletions | 89 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 185 |

# EXHIBIT I

HONORABLE KARA MILLER
OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
--------------------------------------------------X
*In the Matter of*

NEW YORK CITY                                        OATH Index No. 1620/13
DEPARTMENT OF INVESTIGATION,
                              *Petitioner*           AFFIRMATION IN OPPOSITION TO
                                                     RESPONDENT'S MOTION TO DISMISS
*--against--*                                        AND
                                                     CROSS-MOTION FOR JUDGMENT
GEORGE AIRDAY,                                        ON THE PLEADINGS
New York City Marshal, Badge #7
                              *Respondent*
--------------------------------------------------X

     1.     MARJORIE B. LANDA, an attorney duly admitted to practice before the Courts

of the State of New York, hereby affirms the following to be true under the penalties of perjury

pursuant to CPLR 2106:

     2.     I am General Counsel to the New York City Department of Investigation

("DOI"), the Petitioner in this action. I submit this affirmation in opposition to the motion by

Respondent George Airday to dismiss the charge against him and in support of DOI's cross-

motion for a recommended finding of fact sustaining the charge based on the pleadings. I base

this affirmation on my personal knowledge, conversations with DOI personnel, and my review of

DOI's files.

     3.     For the reasons set forth herein, Respondent's motion should be denied.

Additionally, Respondent's motion and the attached exhibits demonstrate that Respondent has

failed to cooperate with DOI's investigation and has refused to produce documents requested by

DOI. Thus, there is no disputed issue of fact in this case and OATH should recommend a

finding of fact that the charge against Respondent is sustained on the pleadings.

1

**D000275**

## Statement of Facts

A.    Respondent's Arrests

4.    On or about December 22, 2011, Respondent was arrested and charged with assault in the third degree, menacing in the third degree, and harassment in the second degree. Affirmation of Howard B. Sterinbach in Support of Motion to Dismiss, March 21, 2013 ("Sterinbach Aff.") ¶ 4; Ex. 1 (Sterinbach Aff. Ex. A). In connection with that arrest, the Bronx County Criminal Court issued an order of protection against Respondent, ordering him to immediately surrender to the New York City Police Department ("NYPD") all firearms that he owned or possessed. *See* Ex. 2.

5.    While Respondent was in custody, police officers took possession of five handguns from Respondent's safe. Each gun removed from the safe was separately listed with its make, caliber, and serial number on a police property invoice, a copy of which was provided to Respondent. *See* Ex. 3. The officer who recovered and listed the guns subsequently informed Detective Raymond Casablanca a NYPD Detective assigned to the DOI Squad that the Respondent had represented to the officer that there were five guns in the safe. Affidavit of Det. Raymond Casablanca (Ex. 4).

6.    Subsequently, the NYPD's Licensing Division notified detectives at the 50th Precinct, where Respondent was arrested, that two guns registered on Respondent's license had not been recovered on December 22, 2011, and that one of the guns that had been recovered was not listed on the license. Following that notification, officers recovered from Respondent's safe a .22 caliber Derringer handgun that was registered to Respondent, but did not locate the second unrecovered gun.

D000276

7.     On or about January 18, 2012, Responded was arrested and charged with criminal contempt in the second degree for violating the order of protection by continuing to possess a handgun contrary to the order of protection.  Sterinbach Aff. ¶ 5; Ex. 5 (Sterinbach Aff. Ex. B).[1]

B.     DOI's Oversight of New York City Marshals

8.     New York City marshals are officers of New York's court system, empowered to perform sensitive law enforcement work, including enforcing judgments, garnishing wages, seizing property, and effecting evictions.  Marshals, who are not peace officers, are frequently involved with distraught individuals in contentious situations in which they act under the City's and the courts' authority.  City marshals carry a badge and, subject to the NYPD's issuance of a license, are permitted to carry a firearm.  They operate independently and are entrusted to use both their badge and weapon (if they chose to carry one) with the utmost discretion.  The position is one of trust and requires sound judgment and an unwavering commitment to lawful and ethical conduct.

9.     Marshals are not, however, City employees, but independent contractors, overseen by the Appellate Division for the First and Second Departments, pursuant to Article 16 of the New York City Civil Court Act ("CCA").[2]  Through joint administrative orders, the Appellate Division has delegated much of this authority to DOI and has empowered DOI's Commissioner or her designee to "supervise and monitor the official acts of New York City

---

[1] The original NYPD arrest report indicates that the Respondent was also charged on January 18, 2012, by the arresting officer, with an additional count of criminal possession of a weapon based on the unlicensed gun, a .25 caliber Hawes handgun, found in his safe during the overnight period of December 21-22, 2011. The Bronx District Attorney's Office did not file that charge with the Criminal Court. Nevertheless, the recovery of that unlicensed gun was reported to DOI on or about January 19, 2012 and was a subject of DOI's inquiry and investigation. Furthermore, as described subsequently, on January 20, 2012, Respondent's attorney admitted that Respondent was in possession of that unlicensed gun and proffered an explanation.

[2] Although Respondent attempts to analogize City marshals to NYPD officers, Sterinbach Aff. at 7 n.1, this comparison is inapt.  Marshals and police officers, among other differences, are subject to different statutes and regulations, derive their authority from different sources, receive different oversight and supervision, and have different employment statuses with respect to the City.

3

D000277

Marshals and to take complaints, make inquiries and conduct investigations into all aspects of marshals' activities." Joint Administrative Order ("JAO") 453(1), attached as Ex. 6. In carrying out its oversight responsibilities, DOI relies upon the full cooperation of every marshal in, among other things, making his or her books and records available to DOI for inspection, as required by Appellate Division Order. *See* JAO 453(1)-(3) (Ex. 6); New York City Marshals Handbook of Regulations ("Marshals Handbook"), Chapter I, § 1-9, attached as Ex. 7.[3]

C.    DOI's Investigation

10.    Pursuant to its supervisory authority over marshals, DOI was both entitled and obligated to investigate the circumstances surrounding the charges for which Respondent was arrested and was particularly concerned given that the contempt charge arose from allegations that Respondent had not properly accounted for handguns on the license he held by virtue of his position as a marshal.[4]

11.    Accordingly, on January 19, 2012, one day after Respondent's second arrest, DOI sent a letter to Respondent and his counsel requesting that Respondent resign from his position and advising him that if he did not resign DOI would seek to suspend him from duty.[5] Ex. 10 (Sterinbach Aff. Ex. C).

12.    In response, Respondent's counsel sent a letter to DOI attempting to offer explanations regarding the circumstances of Respondent's two arrests, including that the police

---

[3] The Marshals Handbook is promulgated pursuant to JAO 453 and approved by the Appellate Division in JAO 542 (Ex. 8).

[4] *See* Feb. 10, 2006 letter from Respondent to Deputy Inspector Roy Richter of the NYPD License Division, in which Respondent states that "[i]t is necessary to carry a firearm in the performance of the duties of a City Marshal." (Ex. 9).

[5] Under CCA § 1610 and JAO 456 (Ex. 11), the DOI Commissioner may seek, and the Appellate Division may impose, a temporary suspension on a Marshal who has been served with disciplinary charges pending the outcome of the proceeding relating to those charges.

D000278

officers who originally searched Respondent's safe had overlooked a firearm, that another one of Respondent's guns had been stolen years earlier, and that the third gun in question, an unlicensed gun recovered from Respondent's safe on or about December 21 or 22, 2012,[6] previously belonged to Respondent's late father, had been placed in the Respondent's safe by the Respondent when his father died,[7] and had never been fired. Ex. 12.

13.    On January 30, 2012, DOI requested that Respondent produce copies of documents relevant to these assertions and its investigation, including the Criminal Court complaint, documents relating to Respondent's handgun license, and records relating to the firearms in question. Ex. 13 (Sterinbach Aff. Ex. D). DOI did not seek any records relating to the assault charge and did not request that Respondent appear for questioning.

14.    Despite an initial indication that the requested documents would be produced, Ex. 14, Respondent, through his counsel, subsequently refused to provide the documents unless and until DOI filed administrative charges against him, Exs. 15 and 16. At no point did Respondent assert any privilege against self-incrimination in his refusal to produce the requested records.

D.    Filing of Charges and Specifications

15.    On May 30, 2012, DOI submitted Charges and Specifications against Respondent to the Appellate Division and requested that the Appellate Division suspend Respondent pending the resolution of the charges. On June 4, 2012, Respondent's counsel filed a letter with the Appellate Division opposing the application for temporary suspension. Nowhere in that letter did Respondent assert or invoke any privilege, under the Fifth Amendment or any other authority, or allege that his failure to produce the requested documents was founded on a belief that the production of such records would have constituted self-incrimination. Ex. 17.

---

[6] This is the .25 caliber Hawes handgun referenced in footnote 1.

[7] DOI was not given any indication of when Respondent's father died.

D000279

16.     On June 11, 2012, the Appellate Division for the First and Second Departments issued JAO 2012-1, ordering, among other things, Respondent's immediate suspension and directing DOI to institute disciplinary proceedings against Respondent. JAO 2012-1 (Ex. 18). Accordingly, DOI designated OATH to conduct a hearing on the Charges and Specifications, to make a written record of the hearing, and to refer the written record, along with the ALJ's recommended findings of fact, to the Commissioner of DOI. Ex. 19.

## Argument

17.     For the reasons set forth herein, DOI's request that the Respondent produce documents relating to his firearm license and possession of handguns is well within the bounds of the Fifth Amendment of the Federal Constitution, Article 1, section 6 of the New York State Constitution, and DOI's policies as promulgated in the Marshals Handbook, and does not implicate either the testimonial privilege against self-incrimination or an act of production privilege. Indeed, prior to his motion to dismiss, Respondent has never invoked or asserted any privilege against self-incrimination and has indicated, through counsel, that his production of the requested documents was contingent upon DOI's formal filing of charges against him.

A.     Legal Standard

18.     Pre-trial motions to dismiss are "disfavored in practice at OATH and have only been granted in the clearest cases of failure by petitioners to state a viable claim." *Hsu v. HSBC Bank*, OATH Index No. 522/09, at 4 (Mem. Dec. Jan. 22, 2010). In order to prevail in a pre-trial motion to dismiss, the moving party must establish that the relief sought by the action must be denied as a matter of law and the petitioner must be given "the benefit of every possible favorable inference." *See id.* This is a heavy burden in general, but is even more difficult to surmount in cases in which OATH "makes recommending findings which are submitted for final

6

**D000280**

decision" to another agency or entity. *Matter of Tenants of 51-55 West 28th Street*, OATH Index No. 2877/09, at 2 (Mem. Dec. June 26, 2009).

19.    Indeed, in the case at hand, Respondent has had a previous opportunity to raise his legal objections to the Charges and Specifications before the Appellate Division. After considering DOI's application and Respondent's submission, the Appellate Division ordered DOI to "institute disciplinary proceedings against Marshal Airday, based upon the Charges and Specifications filed" and has ordered that "[t]he disciplinary proceeding shall be conducted in accordance with Article 16 of the New York City Civil Court Act and Joint Administrative Orders 453 and 456." Ex. 18. DOI's designation of OATH only requests "recommended findings of fact" that are to be referred, along with the hearing record, to the DOI Commissioner, and does not seek any conclusions of law. Ex. 19.

B.    DOI's request for documents does not implicate Respondent's privilege against self-incrimination.

20.    Respondent claims that his failure to cooperate with DOI's investigation and his refusal to produce documents relating to handguns on his license and in his possession are justified by Respondent's privilege against self-incrimination. Sterinbach Aff. at 6-8. In making this argument, Respondent conflates the testimonial privilege against self-incrimination with the "act of production" privilege addressed in *Brasky v. New York City Dep't of Investigation*. 840 N.Y.S.2d 315 (N.Y. App. Div. 1st Dep't 2007). Here, the documents requested by DOI do not implicate any privilege available under *Brasky*, as there is nothing inherently criminal about them.

21.    Marshals Handbook Chapter I, § 1-9(c), which provides that a Marshal may be removed from office or otherwise penalized for refusing to answer questions concerning his official business "after having been advised that neither his statements nor any information or

D000281

evidence derived therefrom will be used against him in a subsequent criminal prosecution other than for perjury or contempt arising from such testimony," Ex. 7 (Sterinbach Aff. Ex. M), applies specifically to the *testimony* of a Marshal upon questioning by DOI. Indeed, this section tracks the wording of Mayoral Executive Order 16 § 4(b), which concerns the refusal of City officers or employees to answer questions after having been assured that their answers and information derived therefrom will not be used against them in a criminal proceeding, sometimes referred to as "use immunity." *See* Mayoral Executive Order 16 § 4(b) (July 26, 1978), attached as Ex. 20 ("The refusal of an officer or employee to *answer questions*" "after first being advised that neither their statements nor any information derived therefrom will be used against them in a subsequent criminal prosecution other than for perjury to contempt arising from such *testimony*" "shall constitute grounds for removal . . . or other appropriate penalty.") (emphasis added).

22.    DOI has never sought to question Respondent or to take his testimony under oath either regarding his two arrests or on matters relating to the firearms on his license and in his possession. Indeed, DOI requested documents from Respondent only after he, through his counsel, attempted to offer an explanation for the circumstances surrounding the recovery of an unlicensed gun from the Respondent's safe, his continued possession of a second, licensed gun following and contrary to his receipt of a court order that required him to surrender all such guns, and the whereabouts of a third gun listed on his license but not recovered by the police, all unresolved discrepancies between Respondent's firearms license and the handguns in his possession. Accordingly, DOI's request for records was in furtherance of its responsibility, pursuant to JAO 453, to oversee and supervise the City marshals, and to make inquiries and conduct investigations into their activities, in this instance by determining whether Respondent

8

having obtained his firearms license based on his occupation as a City marshal, had properly discharged this responsibility in handling and accounting for the handguns in question.

23.    Furthermore, Respondent has failed to produce any information or argument that suggests that his production of the requested records would have implicated his right against self-incrimination; Respondent's invocation of the act of production privilege addressed in *Brasky* is misplaced. In *Brasky*, DOI's subpoena sought documents concerning a City employee's private legal practice and his representation of private clients in front of the agency at which he was employed. 840 N.Y.S.2d at 316. By law, however, the subject was not permitted to engage in this representation. Thus, the First Department found, the production of the requested documents would constitute a "compelled testimonial act" in which the subject would be stating "'these are people to whom I provided legal services [during the specified time].'" *Id.* at 318.

24.    In contrast, the documents that DOI requested from the Respondent are not inherently incriminating. It is not illegal for a marshal to possess a handgun license, an application for such license, or renewal forms for one; nor is it illegal for a marshal to own or possess licensed firearms. *See* Ex. 13. *Cf. Fisher v. United States*, 425 U.S. 391, 412 (1976) (upholding a subpoena of an accountant's workpapers over an assertion that the production would violate the client's right against self-incrimination because "surely it is not illegal to seek accounting help in connection with one's tax returns or for the accountant to prepare workpapers and deliver them to the taxpayer.").

C.    Dismissal is not warranted because Respondent has never before asserted any privilege against self-incrimination.

25.    Respondent now argues that not only did DOI's request require him to incriminate himself, but that DOI cannot discipline him for his refusal to comply because it did not explicitly offer him use immunity. Sterinbach Aff. at 6-8. In essence, Respondent is arguing two

D000283

inconsistent positions. In the first instance he argues that, under *Matt v. Larocca*, 71 N.Y.2d 154 (N.Y. 1987), any production that he made to DOI would "be automatically cloaked with immunity from use in a subsequent criminal prosecution." Sterinbach Aff. at 7. Yet, at the same time he is arguing that he cannot be disciplined for refusing to make such a production because DOI did not so inform him. Sterinbach Aff. at 8-9. These two positions are both untenable as a matter of fact and law.

26.    Indeed, before filing the instant motion, Respondent, represented throughout all relevant events by highly experienced counsel, never asked DOI to withdraw its records request, never asked whether he would be assured that his production of documents would not be used against him in a criminal proceeding, and never asserted in any way or by any stretch that his failure to produce documents was in furtherance of his right against self-incrimination. Rather, Respondent, through counsel, initially took a contrary position and indicated that the requested documents would be produced. Ex. 14.

27.    Respondent then changed course and, still through counsel, asserted that he would only produce the documents if DOI instituted formal charges against him, *see* Ex. 15 ("If the Department of Investigation does go forward with a hearing, at that time we will be willing to provide the documentation that is pertinent to this matter.") and suggested that his decision not to produce the records was based on tactical considerations or his own determination as to which of his interests and obligations was more important to him, Ex. 16 ("[Marshal Airday's] criminal case *takes precedence* over the administrative proceeding. Therefore, until resolution of that criminal matter, *absent the Department of Investigation affording Airday his rights to a full and fair hearing* as required under the law, Airday will not be able to provide the documents that have been requested. . . ." (emphasis added)).

D000284

28.    At the same time, Respondent insisted that unless DOI took the extraordinary step of bringing about his summary suspension by joint order of the Appellate Division, he had determined that he could continue obtaining and performing the paying work of a City marshal, notwithstanding his continued breach of his clear obligation as a City marshal to cooperate with DOI's investigation. *See* Ex. 21.  Indeed, even after DOI sought an order from the Appellate Division suspending Respondent and filing charges against him, Respondent did not assert any privilege against self-incrimination. *See* Ex. 17.  While DOI does not agree that the production of the requested documents would entitle Respondent to use immunity, it cannot be expected to offer such immunity in the absence of any assertion by Respondent of his privilege against self-incrimination.

29.    Moreover, even if use immunity were to attach to Respondent's production, DOI is not required to inform respondent of this.  In fact, in *Matt*, the Court of Appeals found that due to a number of factors, "the State was not obligated to inform petitioner that immunity attached before ordering him to answer questions." 71 N.Y.2d at 162.  Among these factors were (1) the nature of the proceeding (i.e., that it was a civil proceeding as opposed to a Grand Jury), (2) that the petitioner was not requested to waive his privilege against self-incrimination, (3) that petitioner was assisted and advised by counsel throughout the proceeding, (4) that the questions posed were specifically related to petitioner's official duties, and (5) that the most serious consequence of petitioner's refusal to testify would be dismissal from his employment for insubordination. *Id.* at 161-62.

30.    Respondent's argument in this case is even less tenable: (1) DOI commenced an investigation in its role as the agency empowered and obligated to oversee Respondent's activities as a City marshal and, if warranted, to bring disciplinary charges; (2) DOI has never

11

asked that Respondent waive any privileges against self-incrimination, as he has not asserted any until now; (3) Respondent has been represented by an attorney for the duration of DOI's investigation; (4) the documents DOI requested included and consisted in large measure of public records, e.g. license and renewal applications filed with the NYPD, which related to firearms that Respondent listed with NYPD was permitted to own and possess by virtue of his position as a Marshal; and (5) the most severe penalty DOI could impose is removal from office, and only with the approval of the Appellate Division.    Thus, even if DOI's request had implicated Respondent's privilege against self-incrimination, DOI is not required to speculate or to inform Respondent of whether there would be an automatic attachment of use immunity to his production. *See Cortes v. County of Nassau*, 670 N.Y.S.2d 509, 511 (N.Y. App. Div. 2d Dep't 1998) ("no due process right to formal notification of [the right to use immunity] is implied by the Court of Appeals decision in *Matter of Matt v LaRocca*.").

D.    Conclusion

31.    DOI's request for documents relating to Respondent's firearm license and possession of handguns was well within its investigative and oversight authority in relation to City marshals and did not require the Respondent to waive any privilege against self-incrimination.    The requested documents are not inherently incriminating and did not trigger an "act of production" privilege.    Moreover, DOI is not required either by Chapter I, § 1-9(c) of the Marshals Handbook, which, like Mayoral Executive Order 16, applies specifically to testimony pursuant to questioning, or by *Matt v. Larocca*, cited by Respondent, to provide notification of the attachment of use immunity to a document production.    Respondent, represented from the inception of DOI's investigation through the present by highly experienced counsel, has proffered statements acknowledging and seeking to explain his possession, alleged reporting, and

12

handling of the guns for which DOI requested records, and he has never before provided DOI with any indication that he wished to assert his privilege against self-incrimination, instead indicating that upon the filing of formal charges, he would be willing to produce the documents. He should not be heard now to suggest, after the fact, that his bald, repeated, and continuing refusal to provide DOI with records that related directly to the explanations he proffered was justified by an inapt, after-the-fact reference to a purported "act of production" privilege that he never asserted. DOI should not be required to proactively determine or speculate as to which of the many individuals it oversees wish to assert an unexpressed privilege and offer immunity to them. Respondent's motion to dismiss should therefore be denied.

### Cross-Motion for Judgment on the Pleadings

32.    Respondent's motion to dismiss and the annexed exhibits demonstrate that no disputed issue of material fact at issue in this case: Respondent has failed to cooperate with an investigation being conducted by DOI pursuant to the oversight authority delegated to it by the Appellate Division and has refused to produce documents that DOI has requested from him in connection with this investigation. This conduct, i.e., Respondent's undisputed failure and refusal to produce the records, unquestionably violates Marshals Handbook Chapter I, §1-9(a)-(b) and the Court should enter a recommended finding of fact stating as much.

33.    A judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to relief as a matter of law. *See Shlyakov v. 1347 Ocean Co., LLC*, OATH Index No. 2829/09, at 2 (Mem. Dec. Jan. 12, 2009). In the affirmation supporting his motion to dismiss, Respondent's counsel admits that Respondent has not given the requested documents to DOI. Sterinbach Aff. at 10 ("Respondent did not violate any regulation by refusing to provide those documents to DOI."). Respondent's correspondence with DOI

13

D000287

establishes that Respondent has continued to refuse to do so. Ex. 16 (Sterinbach Aff. Ex. G) ("Airday will not be able to provide the documents that have been requested by the Department of Investigation."). Absent from Respondent's papers is any indication that Respondent ever raised with DOI or the Appellate Division any concern that cooperating with DOI's investigation, specifically its request for records that were directly relevant to Respondent's proffered statements, raised any issue of self-incrimination or other privilege. Respondent's inapt and untimely legal argument purporting to invoke the rule that provides for the removal from office of a marshal who refuses to answer questions after being assured that neither his answers nor information or evidence derived therefrom will be used against him in a criminal proceeding raises no disputed issue of a material fact. Furthermore, raising that argument now cannot retroactively excuse Respondent's failure to cooperate with and his obstruction of DOI's investigation for months on end when no such assertion of privilege was ever invoked.

34.    For the reasons stated above, Respondent's failure to produce these documents is not justified by his eleventh hour invocation of his privilege against self-incrimination: This privilege does not attach to the production of documents that are not inherently incriminating, Respondent has never before asserted this privilege, and DOI is not required to offer Respondent immunity pre-emptively. It remains undisputed that Respondent has refused to produce the requested documents to DOI and in refusing to do so has obstructed and failed to cooperate fully with DOI's investigation.

14

**D000288**

WHEREFORE, Petitioner respectfully requests that Respondent's motion to dismiss the charge be denied and that Petitioner's cross-motion for summary judgment be granted.

Dated: New York, New York
       March 28, 2013

                NEW YORK CITY DEPARTMENT OF INVESTIGATION

                By _____
                   Marjorie Landa

15

D000289

# EXHIBIT J



**The City of New York**
**<u>Department of Investigation</u>**

# New York City Marshals<br>**<u>Handbook of Regulations</u>**

**Michael R. Bloomberg**
**Mayor**

**Rose Gill Hearn**
**Commissioner**

**Effective Date:**
**April 24, 2013**

**D000718**

# Foreword

In 1938, Mayor Fiorello LaGuardia delegated to the Commissioner of Investigation the responsibility to supervise New York City Marshals. Sixteen years later, in 1954, the Bureau of City Marshals was formally established at the Department of Investigation to carry out the Mayor's mandate. During Mayor Robert Wagner's third term, the State Court underwent reorganization, and as a result, the Municipal Court and City Court were replaced by the Civil Court of the City of New York.

Pursuant to Article 16 of the New York City Civil Court Act, marshals became officers of the Civil Court of New York City. The authority to appoint city marshals remained with the mayor; however, the power to suspend and remove city marshals became vested in the Appellate Divisions for the First and Second Judicial Departments. In 1968, these courts held that "the Appellate Divisions in the First and Second Judicial Departments are jointly vested with the power to supervise the activities of New York City Marshals and that the routine exercise of that power was lawfully delegated by the Appellate Divisions, through the Mayor, to the Department of Investigation."[1]

During the period of its supervision of marshals, the Department of Investigation has issued numerous directives from time to time prescribing the standards for marshals' official conduct, as well as the standards for the maintenance of official books and records.

On November 12, 1975 and February 27, 1976, the Appellate Divisions for the First and Second Judicial Departments issued Joint Administrative Orders 453 and 456, concerning the supervision of city marshals. These orders formally set forth the Department of Investigation's supervisory powers, which include the power to conduct investigations into marshals' activities, examine their books and records, promulgate directives concerning the official records to be kept by them and the procedures for performing their official duties, as well as the power to discipline them.

Joint Administrative Order 453 specifically authorized the Department of Investigation, with the approval of both Appellate Divisions, to promulgate a "handbook of regulations" for city marshals. Thus, this handbook is a direct result of the authority vested in the Department of Investigation by the Appellate Divisions for the First and Second Departments. This handbook, which the Appellate Divisions approved on March 25, 2013, replaces the previous Handbook of Regulations, issued in 1997.[2]

The purpose of updating the Marshals Handbook is to set forth in one reference this Department's directives, issued through the years (as well as certain new directives), for official conduct and record keeping. All current directives have been codified within this handbook. As always, a marshal shall be accountable for the duties, functions, and responsibilities that are delegated to him or her pursuant to judicial order, Department of Investigation directive, and this Handbook of Regulations.

---

[1] *Fraiman v. Mancuso*, 30 A.D. 2d 108, 109 (1st and 2nd Dep'ts 1968), *aff'd*, 24 N.Y.2d 891 (1969), *cert. denied*, 396 U.S. 885 (1969).

[2] Joint Administrative Order 2013-2. The complete text appears in the Appendix.

i

D000719

# TABLE OF CONTENTS

**CHAPTER I: INTEGRITY AND DISCIPLINE** ...................................................... 1

Section 1: **INTEGRITY** .................................................................................................1
    Section 1-1: Generally ..........................................................................................1
    Section 1-2: Respect for the Public .....................................................................1
    Section 1-3: Receipt of Benefits Prohibited ........................................................1
    Section 1-4: Public Servant Defined; Benefit Defined ........................................2
    Section 1-5: Conferring Property or Benefit in Consideration for Work
               Prohibited .......................................................................................2
    Section 1-6: Bribery, Gratuities, Rewarding Official Misconduct Prohibited .................3
    Section 1-7: Gifts to City Officials, Officers and Employees Prohibited .......................3
    Section 1-8: Report Corruption to Department of Investigation ...........................3
    Section 1-9: Interference with Investigation Prohibited; Cooperation Required .............4
    Section 1-10: Duty to Maintain Accurate Records ..............................................4
    Section 1-11: Truthful Statements .......................................................................6
    Section 1-12: Persons Pretending to be Marshals ...............................................6
    Section 1-13: Report Persons Pretending to be Marshals ....................................7
    Section 1-14: Restriction on Employment of Former Marshal .............................7
    Section 1-15: Termination by Direction of Commissioner ...................................7
    Section 1-16: Arrest of Marshal or Employee(s) .................................................8
    Section 1-17: Outside Employment Restricted ....................................................9

Section 2: **DISCIPLINE** ............................................................................................10
    Section 2-1: Generally ........................................................................................10
    Section 2-2:  Department of Investigation Appearances ....................................10

**CHAPTER II: LEVIES** ........................................................................................ 12

Section 1: **GENERALLY** ..........................................................................................12

Section 2: **PRIORITY OF EXECUTIONS** ...............................................................14

Section 3: **OPTIONAL LETTER TO DEBTOR** ......................................................15

Section 4: **LEVY** .......................................................................................................16
    Section 4-1: Property Not Capable of Delivery ..................................................16
    Section 4-2: Property Capable of Delivery .........................................................16

Section 5: **SERVICE** .................................................................................................18

Section 6: **EFFECT OF LEVY** ..................................................................................20

D000720

Section 7: **SPECIFIC PROCEDURES** .................................................................22
    Section 7-1: Particular Garnishees.....................................................22
    Section 7-2: Dispossessed Tenants.....................................................22
    Section 7-3: Death of Judgment Debtor ............................................23
    Section 7-4: Protective Orders............................................................23
    Section 7-5: Levy on Stock Certificates.............................................24
    Section 7-6: Exempt Property..............................................................24
    Section 7-7: Notice to Debtors............................................................25
    Section 7-8: Execution against a Marshal ..........................................26
    Section 7-9: Levy on Partnerships......................................................26

Section 8: **RETURN OF EXECUTION** ...........................................................27

Section 9: **SMALL CLAIMS** ..............................................................................28
    Section 9-1: Executions.......................................................................28
    Section 9-2: Reporting.........................................................................28

Section 10: **LEVY ON MOTOR VEHICLES** ...................................................30
    Section 10-1: Generally.......................................................................30
    Section 10-2: Parking Violations Operations (PVO) Standard Operating
            Procedures ....................................................................31
    Section 10-3:  PVO Fees......................................................................32
    Section 10-4:  PVO Fee Waivers.........................................................32
    Section 10-5: Out-of-State Notice .......................................................33
    Section 10-6:  PVO Lawsuits..............................................................33

**CHAPTER III: SALES**.............................................................................................35

Section 1: **GENERALLY** ....................................................................................35

Section 2: **COLLUSIVE SALES** ........................................................................37

Section 3: **REMOVAL OF PROPERTY**.............................................................38

Section 4: **ADJOURNMENTS**............................................................................38

Section 5: **BILL OF SALE** ..................................................................................39

Section 6: **SALE OF ALCOHOLIC BEVERAGES, DRUGS, AND CIGARETTES** ........40
    Section 6-1: Alcoholic Beverages.......................................................40
    Section 6-2: Drugs...............................................................................40
    Section 6-3: Cigarettes ........................................................................41

iii

D000721

Section 7: **SALES TAX** ..............................................................................................43

Section 8: **DEPOSITS AND PAYMENTS** ..............................................................43

**CHAPTER IV: SUMMARY PROCEEDINGS: EVICTIONS AND
LEGAL POSSESSIONS** .........................................................................44

Section 1: **BACKGROUND** ...................................................................................44
    Section 1-1: Grounds for Removal ............................................................44
    Section 1-2: Parties to be Named...............................................................45

Section 2: **NOTICE OF PETITION AND PETITION** ...........................................46
    Section 2-1: Generally...............................................................................46
    Section 2-2: Service ..................................................................................46

Section 3: **MILITARY AFFIDAVITS** ..................................................................49

Section 4: **WARRANT REQUISITION** .................................................................51

Section 5: **NOTICE OF EVICTION** .......................................................................52
    Section 5-1: Form and Content of the Notice.............................................52
    Section 5-2: Service ..................................................................................54
    Section 5-3: Date of the Notice..................................................................57
    Section 5-4: Additional Notice of Eviction after Thirty Days or Stay of Eviction .........58
    Section 5-5: Service of Notice of Eviction during Stay of Proceedings .........61
    Section 5-6: Reimbursement of Mailing Expenses ...........................................61

Section 6: **EVICTION AND LEGAL POSSESSION PROCEDURES** ...............62
    Section 6-1: Notifications ..........................................................................62
    Section 6-2: Preliminaries..........................................................................64
    Section 6-3: Effect of Bankruptcy Proceedings .........................................66
    Section 6-4: Removal of Tenant's Property ...............................................68
    Section 6-5: Inventory of Property ............................................................70
    Section 6-6: Items Not to be Removed.......................................................71
    Section 6-7: Social Service Call-Ins .........................................................72
    Section 6-8: Sick and Disabled Children...................................................75
    Section 6-9: Evictions of Schools, Day Care Centers, Senior Facilities, and
        Similar Institutions Serving Children and the Elderly ...........................76
    Section 6-10: Animals................................................................................77
    Section 6-11: Show Cause Orders..............................................................78
    Section 6-12: Valuables and Third Parties .................................................79
    Section 6-13: Notification of Location of Property ....................................80
    Section 6-14: Revival of Landlord-Tenant Relationship ............................80
    Section 6-15: Securing the Premises ..........................................................82

D000722

Section 6-16: Re-entry by Dispossessed Person ...............................................82
Section 6-17: Controlled Substances; Drug Enforcement Administration
         Notification.............................................................................83

**Section 7: REPORTS OF COMPLETED EVICTIONS**........................................84
Section 7-1: Itemized Transmittal Forms Listing All Executed Warrants
         Returned to the Court..............................................................84
Section 7-2: Maintaining Year-to-Date Count of Completed Evictions,
         Possessions, and Ejectments....................................................86

**CHAPTER V: INCOME EXECUTION** ...................................................... 87

Section 1: **GENERALLY** ................................................................. 87

Section 2: **CONTENTS OF AN INCOME EXECUTION** .....................................88

Section 3:  **INCOME SUBJECT TO COLLECTION** ........................................90

Section 4: **SERVICE AND RETURN** .....................................................92

Section 5: **SPECIFIC EXECUTIONS** ....................................................95
Section 5-1: Exemptions .................................................................95
Section 5-2: Priorities ..................................................................95
Section 5-3: Loss of Employment .........................................................95
Section 5-4:  Release ....................................................................95
Section 5-5: Accountings ................................................................96
Section 5-6: Affidavits ..................................................................96
Section 5-7: City Employees .............................................................96
Section 5-8: Service on New York City Office of Payroll Administration....................97
Section 5-9: State Employees ............................................................98
Section 5-10: Small Claims ..............................................................98

**CHAPTER VI: RECOVERY OF CHATTELS** .................................................. 99

Section 1: **GENERALLY** ................................................................. 99

Section 2: **ORDER OF SEIZURE** .........................................................100
Section 2-1: Papers to Proceed ..........................................................100

Section 3: **BREAKING AND ENTERING** ...................................................102

Section 4: **PROCEDURE** ................................................................103

D000723

# CHAPTER VII: ATTACHMENT ........................................................................ 104

Section 1: **GENERALLY** ...........................................................................104

Section 2: **ORDER**...................................................................................104

Section 3: **LEVY BY SERVICE** ...............................................................105

Section 4: **LEVY BY SEIZURE** ...............................................................106

Section 5: **DUTIES AFTER LEVY** ...........................................................106

Section 6: **GARNISHEE'S STATEMENT** ................................................107

Section 7: **DISCHARGES, VACATUR, AND ANNULMENT** ..................107

Section 8: **PRIORITY OF ORDERS OF ATTACHMENT** ........................108

Section 9: **RETURN OF PROPERTY** .......................................................108

# CHAPTER VIII: MARSHAL'S AUTHORITY RESTRICTED ..................... 109

Section 1: **CIVIL ARREST AS PROVISIONAL REMEDY PROHIBITED**...................109

Section 2: **MARSHALS NOT PEACE OFFICERS** ...................................109

Section 3: **RESTRICTIONS ON FIREARMS** ...........................................110
    Section 3-1: Firearm Permits ........................................................................110
    Section 3-2: Firearms Training.......................................................................110
    Section 3-3: Department of Investigation Notification Upon Display or
        Discharge of Weapon.......................................................................111

# CHAPTER IX: FISCAL REQUIREMENTS....................................................... 112

Section 1: **ANNUAL PAYMENT** ..............................................................112

Section 2: **FEES** .......................................................................................113
    Section 2-1: Generally....................................................................................113
    Section 2-2: Mileage Fees; Specific Requirements ......................................113
    Section 2-3: Requisition Fee; Warrant of Eviction ......................................114

Section 3: **REIMBURSABLE EXPENSES**................................................115

D000724

Section 4: **MARSHAL'S BOND** ..................................................................116

Section 5: **FIDUCIARY** ...........................................................................117

Section 6: **PENSION** ...............................................................................118

Section 7: **TIMELY REMITTANCE OF TAX REVENUE** ..............................119

Section 8: **CREDIT CARDS** ......................................................................119


# CHAPTER X: ADMINISTRATIVE REQUIREMENTS ................................ 120

Section 1: **THE MARSHAL'S OFFICE** .......................................................120
    Section 1-1: Office Hours ....................................................................120
    Section 1-2: Lawful Occupancy Only ...................................................121
    Section 1-3: Marshal's Office Public ....................................................121
    Section 1-4:  Sign; Complaints ............................................................121
    Section 1-5: Telephone Listings ...........................................................121
    Section 1-6: Advertising for Business ...................................................122
    Section 1-7: Stationery and Office Forms .............................................122
    Section 1-8: Badge and Identification ...................................................123
    Section 1-9: Employee Data ................................................................124
    Section 1-10: Unusual Incident Reports ................................................124

Section 2: **LEGAL PROCEEDINGS** ............................................................125
    Section 2-1: Department of Investigation Notification of Service of Legal
            Process upon a Marshal ...............................................125
    Section 2-2: Department of Investigation Notification of Service of Subpoena
            on a Marshal ..............................................................125

Section 3: **NOTARIES** ..............................................................................126

Section 4: **TERMINATION OF OFFICE PROCEDURE** ....................................127


# CHAPTER XI: REQUIRED BANK ACCOUNTS ...................................... 128

Section 1: **GENERALLY** ...........................................................................128

Section 2: **TRUST FUND BANK ACCOUNT** .................................................130

Section 3: **OPERATING FUND BANK ACCOUNT** ........................................133

vii

D000725

## CHAPTER XII: MAINTENANCE OF MARSHALS' RECORDS ............... 135

Section 1: **GENERALLY** .................................................................................135
    Section 1-1: Mandatory Conversion to Computerized Records ....................135
    Section 1-2: Manual Records.......................................................................138
    Section 1-3: Low Volume Docket Books......................................................138
    Section 1-4: Requirements ..........................................................................139

Section 2: **DOCKET RECORDS OR BOOKS**....................................................141
    Section 2-1: General Instructions ................................................................141
    Section 2-2: Cross-Referencing Docket Records or Books..........................142
    Section 2-3: Poundage.................................................................................143
    Section 2-4: Calculating Interest.................................................................144
    Section 2-5: Property Execution Docket Record or Book .............................144
    Section 2-6: Income Execution Docket Record or Book................................146
    Section 2-7: Landlord and Tenant Docket Record or Book ...........................147
    Section 2-8: Notice of Petition and Petition Docket Record or Book ...........149
    Section 2-9: Miscellaneous Docket Record or Book ....................................149

Section 3: **TRUST FUND RECEIPTS AND DISBURSEMENTS RECORD OR**
    **BOOK**.........................................................................................................150
    Section 3-1: Explanation of Cash Record or Book Entries............................150
    Section 3-2: Voided Checks .........................................................................154
    Section 3-3: Unclaimed Funds.....................................................................155
    Section 3-4: Unidentified Funds ..................................................................155
    Section 3-5: Accounting for Unclaimed and Unidentified Funds .................155
    Section 3-6: Lump Sum Entries....................................................................157
    Section 3-7: Marshal's Invoices and Receipts .............................................157
    Section 3-8: Month-End Closing Receipts and Disbursements.....................159
    Section 3-9: Bank Reconciliation ................................................................160
    Section 3-10: Adjusting Entries ...................................................................161
    Section 3-11: Sixty Day Credit Limit ..........................................................162
    Section 3-12: Funds Held Over Thirty Days.................................................162
    Section 3-13: Amounts Owing From Trust Fund .........................................162

Section 4: **OPERATING ACCOUNT BOOKS AND RECORDS**...........................163
    Section 4-1: Generally.................................................................................163
    Section 4-2: Requirements for Operating Account Cash Record or Book...................164

Section 5: **DIARY OF DAILY ACTIVITIES**...................................................166

Section 6: **RECORDS RETENTION AND DISPOSAL** ......................................167
    Section 6-1: Generally.................................................................................167
    Section 6-2: Applications and Definitions ...................................................168
    Section 6-3: Procedure for Conversion of Manual Records into Electronic Form .......169

D000726

Section 6-4: Procedure for Disposition of Marshal's Records Pursuant to NYC
Marshals Records Retention Schedule ...................................................171
Section 6-5: Requirements for Surrender of a City Marshal's Manual Records
Upon Termination of Office ...................................................................172

# CHAPTER XIII: ANNUAL FINANCIAL STATEMENT ...............................173

## Section 1: GENERALLY ...........................................................................173

## Section 2: REQUIREMENTS .....................................................................174

## Section 3: TERMINATION OF OFFICE AND FINAL REPORT ...................176

# Appendix ...........................................................................................177

Joint Administrative Order 453 .........................................................................178
Joint Administrative Order 456 .........................................................................182
Joint Administrative Order 490 .........................................................................183
Joint Administrative Order 511 .........................................................................185
Joint Administrative Order 514 .........................................................................188
Joint Administrative Order 2013-3 ....................................................................190
Joint Administrative Order 534 .........................................................................191
Joint Administrative Order 2013-2 ....................................................................192
Civil Court Directive 288 ..................................................................................193
Civil Court Directive 334 ..................................................................................197
Civil Court Directive 354 ..................................................................................198
Civil Court Directive 358 ..................................................................................199
Civil Court Directive 627 ..................................................................................200
Corporation Counsel Opinion 107,883 .............................................................201
Corporation Counsel Opinion 44-80 ................................................................203
The Seal of the City of New York .....................................................................206
Valuable Gift Rule ............................................................................................207
NYC Marshals Records Retention Schedule .....................................................212
72 Hour Notice of Eviction ...............................................................................216
Notice of Eviction .............................................................................................217

D000727

**Department of Investigation**

Rose Gill Hearn, *Commissioner*

## CHAPTER I

## INTEGRITY AND DISCIPLINE

Section 1: **INTEGRITY**

Section 1-1: **Generally**

City marshals are public servants who must maintain uncompromised standards of integrity in the management of their offices and the conduct of their official business. They must obey the law in all their activities, both official and personal. In dealing with the courts, public agencies, attorneys, parties to legal actions and proceedings, and the public, marshals must conduct their business honestly.

Marshals are further reminded that they are responsible for all ministerial duties performed for them by their office managers, bookkeepers, process servers, etc., which pertain to the performance of the marshal's office. Marshals, therefore, are urged to review periodically all of their official books and records, and other work performed by their employees.

Section 1-2: **Respect for the Public**

A city marshal shall at all times treat the public with respect and dignity, befitting the marshal's position as an officer of the Civil Court. Marshals and their staffs, agents, and independent contractors must be courteous and helpful to the public, and must avoid physical and verbal confrontations and the use of abusive language while conducting official business.

Section 1-3: **Receipt of Benefits Prohibited**

A marshal shall accept only the fees and reimbursements that he or she[1] is authorized by law to receive in connection with official acts. A marshal and the marshal's employee, contractor, or agent shall not accept, solicit, or agree to accept any other benefit or anything of value from or on behalf of any person in connection with the marshal's official action. A marshal shall not solicit, accept, or agree to accept any additional compensation or benefit or anything of value from or on behalf of another person upon an agreement or understanding

---

[1] Whenever words of the masculine or feminine gender appear in this handbook, they shall be deemed to refer to both male and female persons.

1

D000728

# Department of Investigation

Rose Gill Hearn, *Commissioner*

that the marshal's vote, opinion, judgment, action, decision, or exercise of discretion as a marshal will thereby be influenced.  A marshal shall not solicit, accept, or agree to accept a benefit or anything of value from or on behalf of another person in consideration for having engaged in official conduct which the marshal was required or authorized to perform, nor shall the marshal solicit, accept, or agree to accept a benefit or anything of value for having failed to take some official action or for having violated an official duty.

A marshal's official action for the purposes of this section includes, but is not limited to, the selection, hiring and continued use of an employee, contractor, or agent to perform any service in furtherance of or in connection with the marshal's performance of official duties, including, but not limited to serving legal process, levying on property or income, and executing warrants of eviction and orders of seizure.

Section 1-4: **Public Servant Defined; Benefit Defined**

"Public servant" for purposes of this Handbook means (a) any public officer or employee of the State of New York or any political subdivision thereof or any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee.  The term "public servant" includes, but is not limited to a city marshal, any officer or employee of the City, any member of the committee on city marshals established pursuant to New York City Civil Court Act § 1601(2), and any person who has been elected or designated to become a public servant.

"Benefit" for purposes of this Handbook means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.

Section 1-5: **Conferring Property or Benefit in Consideration for Work Prohibited**

A marshal shall not give, offer, or agree to give anything of value to, or to confer any benefit upon, any person or entity, as part of an agreement or understanding that the marshal will be retained, hired or otherwise directed to act as, or perform the duties of a marshal.

Nothing in this section prohibits a marshal who is a participant, or who is applying to be a participant, in the City of New York Marshal Vehicle Seizure program from paying the City a monthly fee or from paying any other charge to the City as directed in writing by the Commissioner of Finance or his or her designee.

2

D000729

# Department of Investigation

CHAPTER I

**Rose Gill Hearn,** *Commissioner*

INTEGRITY & DISCIPLINE

NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS                    PG. 3

Section 1-6: **Bribery, Gratuities, Rewarding Official Misconduct Prohibited**

A marshal shall not give, offer, or agree to give anything of value or confer any benefit upon a public servant, including, but not limited to, city employees and court personnel, in connection with the public servant's performance, non-performance, or violation of his or her official duties.

Section 1-7: **Gifts to City Officials, Officers and Employees Prohibited**

Marshals are reminded that Chapter 68, § 2604(b)(5) of the City Charter prohibits City officials, officers, and employees from accepting valuable gifts from persons who have, or intend to become engaged in, business dealings with the City.  That section reads:

"No public servant shall accept any valuable gift, as defined by rule of the board, from any person or firm which such public servant knows is or intends to become engaged in business dealings with the city, except that nothing contained herein shall prohibit a public servant from accepting a gift which is customary on family and social occasions."

Because marshals frequently engage in transactions with the City that involve the provision or exchange of services and property, and in recognition of the supervision of marshals by the Department of Investigation, it would be inappropriate for a City official, officer or employee to accept a valuable gift from a marshal.  Accordingly, a marshal shall not give or offer a valuable gift to any official, officer, or employee of the City.

"Valuable gift," as defined by the Conflicts of Interest Board means, in part, "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."  The complete rule is attached as an appendix to this Handbook.

Section 1-8: **Report Corruption to Department of Investigation**

Every marshal shall have the affirmative obligation to report directly and promptly to the Department of Investigation any and all information concerning conduct which the marshal knows or should reasonably know to involve corrupt or other criminal activity or conflict of interest (a) by a City officer or employee, a marshal or marshal's employee, or other public servant which concerns the marshal's or any other public servant's office or employment, or (b) by persons dealing with the City or a marshal, which concerns such dealings.  The knowing failure to report as required above shall constitute cause for removal from office.

3

D000730

# Department of Investigation

CHAPTER I

**Rose Gill Hearn,** *Commissioner*

INTEGRITY & DISCIPLINE

NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS

PG. 4

Section 1-9: **Interference with Investigation Prohibited; Cooperation Required**

(a) No person shall prevent, seek to prevent, interfere with, obstruct, or otherwise hinder any study or investigation conducted pursuant to the New York City Charter, Joint Administrative Order 453, or this Handbook. A marshal's violation of this subsection shall constitute cause for removal from office or other appropriate penalty. A violation of this subsection by an employee, contractor, or agent of a city marshal shall constitute cause for termination of employment or contract, as provided by § 1-15 of this chapter, or other appropriate penalty.

(b) Full cooperation with the Department of Investigation shall be afforded by every city marshal and all employees, contractors, and agents of a city marshal. A marshal's violation of this subsection shall constitute cause for removal from office or other appropriate penalty. A violation of this subsection by an employee, contractor, or agent of a city marshal shall constitute cause for termination of employment or contract, as provided by § 1-15 of this chapter, or other appropriate penalty.

(c) In an investigation conducted by the Department of Investigation pursuant to Joint Administrative Order 453, this Handbook, or Chapter 34 of the New York City Charter, the refusal of a marshal to answer questions concerning any matter related to the marshal's official business after the marshal has been advised that neither his or her statements nor any information or evidence derived therefrom will be used against the marshal in a subsequent criminal prosecution other than for perjury or contempt arising from such testimony, shall constitute cause for removal from office or other appropriate penalty.

(d) In an investigation conducted by the Department of Investigation pursuant to Joint Administrative Order 453, this Handbook, or Chapter 34 of the New York City Charter, the refusal of a marshal's employee to answer questions concerning any matter related to the official business of the marshal, or the refusal of a person dealing with a marshal in any matter related to the marshal's official duties to answer questions concerning such dealings with the marshal, after such employee, or person dealing with a marshal has been advised that neither his or her statements nor any information or evidence derived therefrom will be used against him or her in a subsequent criminal prosecution other than for perjury or contempt arising from such testimony, shall constitute cause for termination of such person's employment, contract, or business association with the marshal, as provided by § 1-15 of this chapter, or other appropriate penalty.

Section 1-10: **Duty to Maintain Accurate Records**

A marshal and his or her employees, contractors and agents, shall make only accurate and truthful entries in all records and documents, including computer records, which relate

4

D000731

# Department of Investigation

**Rose Gill Hearn,** *Commissioner*

to the marshal's official activities.  Any person who knowingly makes a false entry in any such record or document, or who omits to make a true entry in any such record or document in violation of a duty to do so, or who knowingly removes, mutilates, destroys, conceals, or falsely alters any such record or document is subject to criminal prosecution.  A marshal shall be strictly responsible for the accuracy and integrity of all records and documents maintained by the marshal's office, and is subject to disciplinary action, including removal from office, if he or she fails to complete and maintain all such records and documents accurately and truthfully.

Where a marshal retains an independent contractor or agent to assist in the performance of official duties, the marshal shall be responsible for the accuracy and integrity of all records and documents, including computer records, that relate to the marshal's official activities, regardless of whether any such record or document is completed or maintained personally by the marshal, the marshal's employee, or by an independent contractor or agent. Marshals are therefore advised when they assign recordkeeping duties to an independent contractor or agent to ensure that the person who will perform such duties is qualified, to supervise the contractor or agent carefully, and to review such records and documents to ensure that they are completed and maintained accurately.

The Department of Investigation will consider the following and other pertinent factors in determining whether disciplinary action against a marshal is appropriate for an inaccuracy in a record or document completed or maintained by a marshal's employee, independent contractor or agent:

- the nature of the inaccuracy, e.g., whether intentional, negligent, inadvertent, etc.;

- the marshal's knowledge, if any, of the inaccuracy;

- evidence of repeated errors or inaccuracies in that record or document or other records or documents completed or maintained by the same employee, independent contractor or agent, and whether the marshal knew or should have known thereof;

- the frequency and diligence of the marshal's review of the records or documents;

- whether the marshal took prompt and appropriate corrective action when the marshal learned of errors or inaccuracies;

- whether the marshal promptly reported falsification of records or significant errors or inaccuracies in records to the Department of Investigation;

D000732

# Department of Investigation

Rose Gill Hearn, *Commissioner*

- evidence of a marshal's knowledge of facts suggesting that the person maintaining or completing a record or document lacked the ability or trustworthiness to perform this function properly;

- evidence of the marshal's willful avoidance of knowledge of one or more instances of falsification, errors or inaccuracies in such records and documents or that the person maintaining or completing a record or document lacked the ability or trustworthiness to perform this function properly;

- whether the marshal assigned the recordkeeping function to a qualified person for a bona fide reason related to the efficient operation of the marshal's office; and

- the importance of the record or document.

## Section 1-11: **Truthful Statements**

A marshal and the marshal's employees, contractors, and agents shall provide only truthful and accurate information to the Department of Investigation in all oral and written communications. Knowingly providing false, deceptive or misleading information to the Department of Investigation is grounds for disciplinary action, including removal from office, and may result in criminal prosecution.

## Section 1-12: **Persons Pretending to be Marshals**

According to § 1603 of the New York City Civil Court Act, "It shall be unlawful for any person, other than a marshal...to hold himself out to the public as being a marshal or as being...authorized to act as a marshal or to perform the duties of a marshal..." Furthermore, § 1603 also states that "it shall be unlawful for any city marshal to permit any person, other than a city marshal, to perform any act in his name, or to sign or to use his name in the performance of any act which must be performed personally by a city marshal." Violators of this section are guilty of a misdemeanor.

Accordingly, marshals are advised that neither their employees nor any person other than marshals may perform functions which can only be performed by marshals. Furthermore, a marshal may not allow employees of collection agencies to be based in the marshal's office.[1] A marshal shall not permit any person other than a marshal to use the marshal's name, badge, badge number, letterhead, office address, or any symbol or insignia

---

[1] Q-133 (October 22, 1985). Citations with the prefix "Q" refer to directives previously issued by the Department of Investigation and filed with the Appellate Divisions for the First and Second Departments. These directives are cited for the purpose of historical reference only. This Handbook of Regulations contains all operative rules as of its effective date.

D000733

# Department of Investigation

Rose Gill Hearn, *Commissioner*

of the marshal's official status or authority in any written or oral communication made to another person. This prohibition does not apply to bona fide office employees of a marshal acting under the marshal's direction and supervision in the regular performance of their duties and responsibilities. Any questions with respect to this section should be directed to the Bureau of City Marshals.

Section 1-13: **Report Persons Pretending to be Marshals**

A marshal must report to the Department of Investigation directly and promptly any and all information concerning conduct that the marshal knows or should reasonably know to involve a person other than a marshal holding themselves out to the public as being a marshal or as being in any way authorized to act as a marshal or to perform the duties of a marshal. A marshal must also report to the Department of Investigation directly and promptly any unauthorized use of a marshal's name, letterhead, office address, or any symbol or insignia of the marshal's official status or authority.

Section 1-14: **Restriction on Employment of Former Marshal**

A city marshal may <u>not</u> employ any former marshal who (a) has been convicted of a crime that is related to the performance of his or her official duties when such employment bears a direct relationship to the criminal offense for which the former marshal was convicted; or (b) because of official misconduct has been removed from office pursuant to administrative proceedings or has resigned during such proceedings.[1]

Section 1-15: **Termination by Direction of Commissioner**

The Commissioner of Investigation ("Commissioner") may, after an investigation, direct a city marshal to terminate the employment of an employee or independent contractor, and may bar a marshal from a business association with any contractor, business entity, its principals, or former employee of a marshal.

The Commissioner's direction to a marshal to terminate the employment of an employee or independent contractor and to bar a marshal from a business association with any contractor, business entity, its principals, or former employee of a marshal shall be in writing and shall state the basis for the direction. The basis may include, but shall not be limited to, a finding that a person or business entity:

1) has prevented, sought to prevent, interfered with, obstructed, or otherwise hindered or has refused or failed to cooperate with any study or investigation conducted by the

---

[1] Q-104 (July 2, 1981).

D000734

# Department of Investigation

CHAPTER I

Rose Gill Hearn, *Commissioner*

INTEGRITY & DISCIPLINE

NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS                    PG. 8

Department of Investigation pursuant to Joint Administrative Order 453, this Handbook, or Chapter 34 of the New York City Charter; or

2) has engaged in conduct in violation of law, the rules of the Appellate Divisions for the First and Second Judicial Departments, the rules of the Supreme Court, the Family Court, or the Civil Court of the City of New York, this Handbook or other directives of the Department of Investigation; or

3) has by action or inaction behaved in a manner constituting incompetency or misconduct or that demonstrates that the person or business entity lacks the integrity necessary to conduct business with or on behalf of a city marshal.

Before issuing a written direction to the marshal pursuant to this section, the Commissioner shall give written notice of the proposed direction and the basis for it to the marshal and to the person or entity who is the subject of the proposed direction. Such persons shall also be given an opportunity to respond either orally or in writing, at the Commissioner's sole discretion, as to why such direction should not be issued. When responding to the Commissioner's notice, the marshal and the person or entity that is the subject of the Commissioner's proposed direction may be assisted by counsel. Nothing contained in this section shall require the Commissioner to hold a hearing before issuing a written direction.

The marshal shall, immediately upon receipt of the Commissioner's written direction, comply with that direction. The marshal's failure to do so shall be grounds for disciplinary action, including removal.

All contracts relating to the marshal's official duties entered into or renewed by a marshal on or after the effective date of this Handbook must provide for termination of the contract by the marshal at the direction of the Commissioner, unless such provision is waived by the Commissioner.

Section 1-16: **Arrest of Marshal or Employee(s)**

A city marshal must notify the Department of Investigation within two hours on a business day, or by 11:00 a.m. the next business day, if the occurrence is on a weekend or holiday, after the marshal's arrest or after the marshal learns of the arrest of any of his or her employees whether or not the conduct underlying the arrest was during the course of official duties.[1]  In enforcing this section the Department of Investigation shall consider whether a marshal's failure to notify the Department of Investigation within the applicable time limits

---

[1] Q-146 (October 31, 1994).

8

D000735

# Department of Investigation

Rose Gill Hearn, *Commissioner*

was due to a circumstance beyond the marshal's control.  If the criminal charges bear upon the marshal's fitness for office, the pendency of such charges may be cause for disciplinary action, including but not limited to an application to the Appellate Divisions for the marshal's suspension pending a hearing or pending resolution of the criminal charges.[1]

## Section 1-17: **Outside Employment Restricted**

The Corporation Counsel, in Opinion 44-80, interpreted the New York City Civil Court Act and applicable court cases relating to "outside employment" of city marshals.[2]  New York City Civil Court Act § 1601-a(2)(a) provides that no city marshal shall actively engage or participate in any other occupation or employment, nor shall any marshal engage or participate in any trade or business which creates or might tend to create an actual or potential conflict of interest.  The statute further provides that no marshal or member of his or her immediate family shall maintain any financial interest, direct or indirect, in a process serving agency, towing company, or furniture moving and storage company.  A violation of the statute is grounds for disciplinary action, including removal.

Every marshal is urged to read Opinion 44-80.  The opinion states that under the statute marshals are required to devote their full time to the performance of their duties as marshals. The opinion further states that the statute strictly prohibits marshals from engaging in any activity or having any financial interest in a trade or business, including the businesses mentioned above, that creates or might tend to create a conflict of interest.

A marshal who is employed or anticipates being employed in any other occupation or employment must immediately notify the Department of Investigation.  A marshal who has a financial interest in a business or whose immediate family member has an interest in a business must disclose such interest to this Department.  Upon receipt of a notification under this section, the Department of Investigation will review all pertinent facts and circumstances to determine whether the outside employment is permissible and whether the financial interest of a marshal or his or her immediate family member in a business creates or might tend to create a conflict of interest.

---

[1] *See* Civil Court Act § 1610.

[2] Q-92 (October 20, 1980).

D000736

**Department of Investigation**                                    APPENDIX

Rose Gill Hearn, *Commissioner*                    JOINT ADMINISTRATIVE ORDER 453

NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS                    PG. 178

## Joint Administrative Order 453

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in each of them, and for the purpose of providing controls and close supervision of City Marshals, do hereby jointly order as follows:

(1) The Commissioner of Investigation of the City of New York or his designee, is empowered to supervise and monitor the official acts of New York City Marshals and to take complaints, make inquiries and conduct investigations into all aspects of marshals' activities.

(2) The Commissioner of Investigation or his designee, in order to investigate and monitor the activities of city marshals, may hold hearings, compel the attendance of and examine under oath a marshal and his employees regarding the official acts of any marshal.

(3) (a) Each city marshal shall keep detailed books and records and maintain bank accounts as prescribed by the Appellate Divisions or the Department of Investigation.

(b) A city marshal's official books, records and bank accounts are public records and as such are subject to unannounced inspections by the Department of Investigation or anyone designated for that purpose by the Commissioner of Investigation or the Appellate Divisions.

(c) Should the Commissioner of Investigation deem it proper, the Department of Investigation may take into its custody any or all of the official records of a city marshal for the purpose of inspecting them.

(d) Each city marshal shall surrender all official books and records including, but not limited to, cash books, docket books, check books, bank statements, and cancelled checks to the Department of Investigation upon termination of office. Should it become necessary, access to such official books and record for the purpose of examination shall be accorded to the city marshal surrendering the same.  Upon termination of office, each city marshal shall further prepare a final report of his official acts, as prescribed by the Department of Investigation, which shall include a final statement of monies held in trust, expenses incurred, and fees earned.

178

D000905

# Department of Investigation

**Rose Gill Hearn,** *Commissioner*

<u>NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS</u>

(e) A city marshal is entitled to only those fees for those services which are prescribed by law and set forth in an official schedule of fees issued by the Commissioner of Investigation. A city marshal shall perform all other services required of him by law without any other fees or charges, except as otherwise expressly prescribed by law. No fee to which a city marshal is entitled may be waived without specific written authorization of the Commissioner of Investigation.

(f) Each city marshal shall henceforth, in accordance with the procedures prescribed by the Department of Investigation, provide for a fiduciary who shall, upon the death or incapacity of said marshal, assume complete responsibility for the marshal's bank accounts and official records, and shall distribute any monies held in trust or otherwise collected by the marshal to the proper judgment creditors or to any other individual(s) to whom such monies are due and owing. Such a fiduciary shall be compensated at the marshal's own expense.

(4) (a) The Commissioner of Investigation is empowered to continue to issue directives regarding marshals' official day to day activities including, but not limited to, the official records to be kept by city marshals, the procedures for performing their duties, and the conduct of marshals and their employees. Copies of all directives shall be forwarded to the Appellate Divisions, and each directive shall remain in full force and effect unless and until nullified by joint order of both Appellate Divisions.

(b) Any handbook of regulations for city marshals which may be promulgated by the Department of Investigation shall become effective upon the approval of both Appellate Divisions. Any substantial policy changes therein shall require similar approval. However, copies of any other changes therein by directive or otherwise shall be forwarded to the Appellate Divisions and such changes shall remain in full force and effect unless and until nullified by joint order of both Appellate Divisions.

(5) The Director of the Bureau of Marshals at the Department of Investigation or any other person or persons designated by the Commissioner of Investigation may, after an investigation, present evidence of incompetency, misconduct, or other wrongdoing as set forth in Section (6) herein to the Commissioner of Investigation. The Commissioner may accordingly designate a deputy commissioner, assistant commissioner, or other qualified person to hear charges as provided herein or, in the alternative, at the option of the

D000906

# Department of Investigation

**Rose Gill Hearn,** *Commissioner*

**NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS**

Commissioner, refer these charges and this evidence to the Appellate Divisions for disciplinary action or removal proceedings.

(6) (a) The Commissioner of Investigation may, after a hearing on charges preferred against a city marshal, impose penalties upon him including, but not limited to, suspension from the performance of his official duties for a period not to exceed six months for violation of the civil laws, the rules of the Appellate Divisions of the First and Second Departments, the rules of the Civil Court of the City of New York, the directives of the Department of Investigation, or for incompetency or misconduct.

(b) A city marshal against whom such disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him, and shall be allowed at least eight days for answering the same in writing. The marshal shall be entitled to a full and complete hearing with the assistance and presence of counsel.

(c) The hearing upon such charges shall be held by such deputy commissioner, assistant commissioner, or other person designated by the Commissioner of Investigation for that purpose.

(d) The deputy commissioner or assistant commissioner holding such hearing shall, upon the request of the city marshal against whom charges are preferred, permit him to be represented by counsel, and shall allow him to summon witnesses on his behalf. The burden of proving incompetency, misconduct or other wrongdoing shall be upon the Director of the Bureau of Marshals or other person designated by the Commissioner of Investigation for the purpose of preferring charges and shall be by a fair preponderance of evidence. The deputy or assistant commissioner holding such hearing shall receive evidence in the same manner as if this hearing were held pursuant to section 75 of the Civil Service Law, in that compliance with technical rules of evidence shall not be required.

(e) If the city marshal is found guilty, a transcript of the hearing, and a written statement of the determination and the reason therefor, shall be filed in the office of the Department of Investigation. A copy of the transcript shall, upon request of the city marshal affected, be furnished to him without charge.

D000907

# Department of Investigation

Rose Gill Hearn, *Commissioner*

NEW YORK CITY MARSHALS HANDBOOK OF REGULATIONS

(f) If desired, the city marshal may appeal any decision by the Commissioner of Investigation to the appellate divisions.  The marshal shall file such appeal in writing within 20 days after service of written notice of the determination to be reviewed, such written notice to be delivered personally or by registered mail to the last known office address of such city marshal.  When notice is given by registered mail, such city marshal shall be allowed an additional three days in which to file an appeal.

(7) A marshal, after being furnished with a copy of the charges preferred against him, may knowingly waive a hearing as provided in subdivision (6) of this section, and agree to a penalty prescribed by the Commissioner of Investigation.

(8) Perjury by a city marshal or his failure to testify concerning his official duties at an investigative or administrative hearing held at the Department of Investigation after being granted immunity from the use of the testimony in a criminal prosecution shall be ground for removal.

(9) Failure to comply with penalties imposed by the Commissioner of Investigation shall be ground for removal.

This Order is effective immediately and shall remain in full force and effect unless and until modified or nullified by Joint Order of both Appellate Divisions.

Dated:  New York, N.Y. and
Brooklyn, New York
November 12, 1975

FOR THE FIRST DEPARTMENT          FOR THE SECOND DEPARTMENT

/S/                               /S/
HAROLD A. STEVENS                 FRANK A. GULOTTA
Presiding Justice                 Presiding Justice

D000908

# Department of Investigation

Rose Gill Hearn, *Commissioner*

## Joint Administrative Order 456

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in each of them, and for the purpose of supplementing and amending their joint administrative order (J.ADM 453 dated November 12, 1975), with respect to providing controls and close supervision of City Marshals, do hereby, effective immediately, jointly order as follows:

(1) Any and all charges preferred by the Commissioner of Investigation shall be in writing and filed with both Appellate Divisions pursuant to Section 1610 of the Civil Court Act.

(2) The Commissioner of Investigation or his designee, as provided in paragraph (5) of Joint Administrative Order #453, may thereupon conduct hearings on the charges filed with both Appellate Divisions, except with respect to such charges warranting immediate suspension of a city marshal pending a hearing as hereinafter provided.

(3) Should the Commissioner of Investigation, following a hearing, conclude that a penalty in excess of a suspension of six months is warranted, he may impose such six months' suspension, and shall thereupon refer the entire matter together with the minutes of all proceedings had therein and his report and recommendations to both Appellate Divisions for their joint consideration and disposition.

(4) Should the Commissioner of Investigation deem the charges to be of such a nature as to warrant the immediate suspension of a city marshal pending a hearing on removal proceedings, he shall not conduct such hearings or proceedings but shall file such charges in writing with both Appellate Divisions pursuant to Section 1610 of the Civil Court Act, together with his request for the immediate suspension of such city marshal and for such removal proceedings as the Appellate Divisions may be advised to pursue under the circumstances.

(5) In all other respects the provisions of Joint Administrative Order #453 dated November 12, 1975, shall remain in full force and effect.

Dated:  New York, N.Y. and Brooklyn, New York
        February 27, 1976

FOR THE FIRST DEPARTMENT            FOR THE SECOND DEPARTMENT
/S/                                 /S/
HAROLD A. STEVENS                   FRANK A. GULOTTA
Presiding Justice                   Presiding Justice

D000909

# EXHIBIT K



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

January 22, 2009

Mr. George Airday
5720 Mosholu Avenue
Bronx, New York 10471

Dear Mr. Airday:

Following the recommendation of the Committee on City Marshals, and pursuant to the authority vested in me as Mayor by Section 1601 of the New York City Civil Court Act, I hereby reappoint you to the position of City Marshal, Badge No. 7. Your reappointment is for the remainder of a five-year term expiring on December 20, 2013.

On behalf of the people of New York City, I extend my thanks and congratulations to you on your reappointment. I appreciate the work you are doing for our city and I wish you continued success as a City Marshal.

Sincerely,

Michael R. Bloomberg
Mayor

MRB:jb

cc: Commissioner Rose Gill Hearn
Peter Madonia, Marshals Committee Chair
Keith Schwam, DOI Marshals Bureau Director

NYCE000997

# EXHIBIT L

**From:** KEITH SCHWAM [MS029@doi.nyc.gov]
**Sent:** Wednesday, May 30, 2012 2:51 PM
**To:** Aprilanne Agostino; Susanna Rojas
**CC:** Benet Kearney; Marjorie Landa
**Subject:** Request for Suspension of a City Marshal
**Attachment(s):** "Airday letter to App Div 05-30-12.pdf", "Airday Charges and Specifications 5-30-12.pdf", "Airday Proposed JAO 05-30-12.docx"

Dear Ms. Agostino and Ms. Rojas,

Attached for the Courts' consideration and joint disposition is a letter from the Department of Investigation ("DOI") dated May 30, 2012, which seeks an order from the Appellate Division, First and Second Departments, for the immediate suspension of City Marshal George Airday, Badge No. 7, pending a hearing and the resolution of the attached Charges and Specifications. Also attached is a proposed Joint Administrative Order for that requested action. The attached letter sets forth the basis of DOI's request.

Inasmuch as the abovementioned documents are being submitted electronically herewith, I have not submitted hard copies, but can do so if you wish.

I am available to respond to any questions.

Thank you for your attention and consideration.

Respectfully submitted,

Keith Schwam
Assistant Commissioner
NYC Department of Investigation
212 825-5958
kschwam@doi.nyc.gov

NYCE000226

CITY OF NEW YORK
DEPARTMENT OF INVESTIGATION

In the Matter of the
Charges and Specifications
- against -
GEORGE AIRDAY
New York City Marshal - Badge #7

Pursuant to §1610 of the New York City Civil Court Act and Joint Administrative Orders #453 and #456 of the Appellate Division for the First and Second Departments, dated November 12, 1975, and February 27, 1976, respectively, you are hereby charged as follows:

| Charge number | Rules Violated and Specifications |
|---|---|
| Charge One | New York City Marshals Handbook of Regulations, Chapter I, § 1-9 (a), (b) |

From on or about January 31, 2012 continuing through the present, you interfered and failed to cooperate fully with an investigation by the Department of Investigation ("DOI") concerning (1) handguns that may have been in your possession or custody at various times and (2) one or more handgun licenses you obtained from the New York City Police Department ("NYPD") based in whole or part on your occupation as a New York City Marshal. Specifically, on January 30, 2012, DOI directed that you provide to DOI by the next day copies of any correspondence and notices you received from the NYPD on or after December 22, 2011 regarding your handgun license(s), and any and all relevant records in your custody or control, including but not limited to (1) copies of all applications for handgun license(s) and renewals, (2) records reflecting the loss, theft, or transfer of any handgun and any notifications to the NYPD of such loss, theft or transfer, and (3) any and all records reflecting or related to (a) a Derringer .22 caliber handgun, and (b) your acquisition of a .25 caliber Hawes handgun listed in an NYPD Property Claims Invoice as having been recovered from your residence. You have failed and refused to provide the above-described documents and records to DOI and have indicated that it is your intention not to produce those documents and records unless and until formal disciplinary charges are filed.

NYCE000227

<u>Charge Two</u>              <u>Civil Court Act § 1610; New York City Marshals Handbook of</u>
                        <u>Regulations, Chapter I, § 1-1</u>

On or about December 21, 2011, you were arrested, and you were subsequently charged with (1) assault in the third degree (Penal Law § 120.00(1)), (2) menacing in the third degree (Penal Law § 120.15), and (3) harassment in the second degree (Penal Law § 240.26(1)). The allegations contained in the accusatory instrument, if true, warrant your removal or other penalty. The pendency of these charges therefore warrants your suspension pending their resolution.

<u>Charge Three</u>            <u>Civil Court Act § 1610; New York City Marshals Handbook of</u>
                        <u>Regulations, Chapter I, § 1-1</u>

On or about January 18, 2012, you were arrested, and you were subsequently charged with criminal contempt in the second degree (Penal Law § 215.50(3)), in that, according to the accusatory instrument filed and pending in the Bronx Supreme Court, Criminal Division, you engaged in intentional disobedience or resistance to the lawful process or other mandate of a court in a case not involving or growing out of a labor dispute. The allegations contained in the accusatory instrument, if true, warrant your removal or other penalty. The pendency of these charges therefore warrants your suspension pending their resolution.


Dated:        New York, New York
              May 30, 2012

                              ROSE GILL HEARN, Commissioner
                              New York City Dept. of Investigation

                              By
                                 Keith Schwam
                                 Assistant Commissioner
                                 Director of the Bureau of Marshals

Date Served: _____

By: _____

Page 2

NYCE000228



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

May 30, 2012

Honorable Luis A. Gonzalez
Presiding Justice
Appellate Division, First Department
27 Madison Avenue at 25th Street
New York, NY 10010

Honorable William F. Mastro
Acting Presiding Justice
Appellate Division, Second Department
45 Monroe Place
Brooklyn, NY 11201

**RE: City Marshal George Airday**

Dear Justices Gonzalez and Mastro:

By this letter submitted pursuant to Section 4 of Joint Administrative Order ("JAO") 456 of the Appellate Division for the First and Second Departments, the Department of Investigation ("DOI") hereby seeks the immediate suspension of City Marshal George Airday pending the resolution of the enclosed Charges and Specifications. The basis for the relief sought is threefold: (1) Marshal Airday's arrest for assaulting and injuring his fiancée in a domestic violence incident; (2) Marshal Airday's subsequent arrest for violating the resulting order of protection by possessing a handgun; and (3) Marshal Airday's refusal to provide relevant records to DOI in the wake of police reports, stemming from these incidents, that he was in possession of an additional, unregistered gun and that a third gun, registered to him, was missing. Under the enclosed proposed JAO, Marshal Airday would be suspended pending a hearing and determination of the enclosed Charges and Specifications, in accordance with the procedure described below.

Pursuant to its authority under New York City Civil Court Act ("CCA") Article 16, the Appellate Division, through JAOs 453 and 456, has empowered the Commissioner of Investigation of the City of New York to supervise and monitor the official acts of City marshals, and, among other things, to investigate allegations of incompetency, misconduct, or wrongdoing by a marshal and conduct hearings on such charges. Section 4 of JAO 456 provides:

Should the Commissioner of Investigation deem the charges [preferred against a marshal] to be of such a nature as to warrant the immediate suspension of a city marshal pending a hearing on removal proceedings, he shall not conduct such hearings or proceedings but shall file such charges in writing with both Appellate Divisions pursuant to Section 1610 of the Civil Court Act, together with [the Commissioner's] request for the immediate

NYCE000229

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 2 of 9

suspension of such city marshal and for such removal proceedings as the Appellate Divisions may be advised to pursue under the circumstances.

In accordance with JAOs 453 and 456, enclosed are Charges and Specifications against Marshal Airday. Also enclosed is a proposed JAO for the First and Second Departments' joint consideration and approval, which directs that: (1) Marshal Airday will be temporarily suspended from the performance of his official duties pending a hearing and determination of the Charges and Specifications; (2) the Commissioner of Investigation will file the Charges and Specifications with the New York City Office of Administrative Trials and Hearings ("OATH"); (3) OATH shall conduct a hearing on these Charges and Specifications, and shall refer the entire record, along with recommended findings of fact, to the Commissioner of Investigation; (4) the Commissioner will review the OATH record and take whatever action thereupon that she deems warranted within her authority under JAO 453(6)(a) and JAO 456(3), which may include imposing a suspension of up to six months or other penalty; and (5) should the Commissioner conclude that a penalty in excess of a suspension of six months is warranted, or that a continuing suspension pending resolution of criminal charges pending in court is warranted, she may impose up to six months' suspension, and shall refer the matter with her written recommendation to the Appellate Division, pursuant to JAO 456(3).

### DOI's Charges and Specifications

The enclosed Charges and Specifications allege in sum and substance two grounds for discipline and immediate suspension:

(1) **Charge One** alleges that Marshal Airday interfered and failed to cooperate with an investigation by DOI into issues related to his handguns and discrepancies in his handgun license records uncovered by the New York City Police Department ("NYPD") in the wake of his arrest on assault, menacing, and harassment charges. Specifically, Marshal Airday is charged with failing and refusing to provide relevant documents and records in his custody or control to DOI, in response to DOI's demand. That conduct violates Chapter I, §§ 1-9(a) and (b) of the New York City Marshals Handbook of Regulations ("Marshals Handbook"),[1] promulgated pursuant to JAO 453 and approved by the Appellate Division in JAO 542. DOI seeks Marshal Airday's immediate suspension pending a hearing on this charge, and, if the charge is substantiated, would seek his removal or suspension, or another penalty.

(2) **Charges Two and Three** allege that Marshal Airday has been arrested on two occasions on criminal charges that are pending in court. The criminal charges call into question his fitness to hold the office of New York City marshal, and, if true, would constitute grounds for removal from office

---

[1] Sections 1-9 (a) and (b) provide, in pertinent part, that "(a) No person shall prevent, seek to prevent, interfere with, obstruct, or otherwise hinder any study or investigation conducted pursuant to the New York City Charter, Joint Administrative Order 453, or this Handbook.  A marshal's violation of this subsection shall constitute cause for removal from office or other appropriate penalty. . . . (b) Full cooperation with the Department of Investigation shall be afforded by every city marshal. . . .
A marshal's violation of this subsection shall constitute cause for removal from office or other appropriate penalty. . . ."
While they are appointed by the mayor, marshals are not City employees, but are independent contractors whose work is overseen by DOI.  DOI cannot, however, fulfill its supervisory responsibilities if it is denied access to the very information it needs to investigate and evaluate allegations of incompetency, misconduct, or other wrongdoing by marshals.

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 3 of 9

(specifically, assault, menacing, and harassment charges in a domestic violence case, and, subsequently, criminal contempt charges based on his custody and control of a handgun in violation of the criminal court's order of protection that resulted from his first arrest). New York City marshals are officers of New York's court system, empowered to perform sensitive, law enforcement work, including enforcing judgments, garnishing wages, seizing property, and effecting evictions. The position requires sound judgment and an unwavering commitment to lawful and ethical conduct. City marshals carry a badge and, subject to the NYPD's issuance of a license, are permitted to carry a firearm. They are entrusted to use both with the utmost discretion. Because of the seriousness of the criminal charges and their direct bearing on a City marshal's fitness for office, DOI seeks Marshal Airday's immediate suspension and a hearing to determine whether he should remain suspended from office pending their adjudication in criminal court.

A finding that any one of these three charges against Marshal Airday is substantiated would be grounds for discipline independent of the others.

**Factual Summary**

1. Marshal Airday's Two Arrests

On December 21, 2011, at approximately 11:00 p.m., Marshal Airday was arrested and charged with assault in the third degree, a class A misdemeanor, menacing in the third degree, a class B misdemeanor, and harassment in the second degree, a violation, in an incident with his fiancée. Those charges have been filed by the Bronx District Attorney's Office and are pending in the Bronx Supreme Court, Criminal Division, under case number 2011BX068751.[2] The criminal complaint charges that on December 21, 2011, at approximately 10:30 p.m., inside his residence, Marshal Airday shoved his fiancée to the ground, struck her several times in the face with an open hand, and threatened to kill her, and that as a result of the marshal's actions, among other things, his fiancée sustained bruising and swelling to her lower back and face and experienced substantial pain. A copy of the complaint is attached as Exhibit A.

According to NYPD records, during the overnight period of December 21-22, while Marshal Airday was in custody in the 50th precinct station, the arresting officer took custody of five handguns that Marshal Airday owned. Each gun is separately listed with a detailed description, including its make, model number, caliber, color, and serial number, on the NYPD property clerk's invoice that the arresting officer prepared on December 22, 2011 at approximately 3:30 a.m., attached as Exhibit B. Marshal Airday received a copy of that invoice. DOI was further informed by Marshal Airday's attorney and thereafter by the arresting officer that the five guns were removed from a safe in Marshal Airday's residence. The arresting officer added that Marshal Airday had informed him that there were five guns in the safe.

---

[2] DOI is informed by the Deputy Clerk of the Bronx Supreme Court, Criminal Division, that as a result of the merger of the criminal and supreme courts in that county, the cases are deemed transferred to Supreme Court, Criminal Division, Bronx County, where they are pending as of this writing.

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 4 of 9

Later on December 22, 2011, Hon. Ruben Franco of the Bronx County Criminal Court issued an order of protection against Marshal Airday, which, among other things, ordered him to surrender all firearms that he owned or possessed to the police immediately. Marshal Airday's signature appears on the order, next to two checked boxes stating that he was advised in court of the contents of the order and that the order was served on him in court. A copy of the order of protection is attached as Exhibit C.

On January 13, 2012, the NYPD License Division mailed a letter to Marshal Airday that advised him that his gun licenses were suspended and instructed him, among other things, to surrender any and all firearms immediately at his local precinct. A copy of the License Division's letter is attached as Exhibit D.[3]

According to NYPD reports, on January 18, 2012, the NYPD License Division notified detectives at the 50th Precinct that two guns registered to Marshal Airday had not been recovered from the safe on December 22, 2011 following his arrest and that one of the five guns removed on that date was unregistered. Following that notification, detectives visited Marshal Airday and recovered from his safe a .22 caliber Derringer handgun, which was registered to him. According to the detectives' report, Marshal Airday said that the police officer who retrieved his firearms on the night of his arrest "must have missed this one."[4] Marshal Airday was then arrested on charges of (1) criminal contempt and criminal possession of a weapon, based on his possession of the .22 caliber Derringer on January 18, 2012 in violation of the abovementioned order of protection; and (2) criminal possession of a weapon, specifically, an unregistered .25 caliber Hawes handgun, one of the five guns removed from his safe on December 22, 2011 and listed in the previously-described NYPD property clerk's invoice. The criminal complaint, filed later on January 18, 2012 by the Bronx District Attorney's Office and pending in Bronx Supreme Court, Criminal Division, under case number 2012BX004096, charges Marshal Airday with criminal contempt in the second degree, a class A misdemeanor.[5] A copy of the complaint is attached as Exhibit F.

---

[3] The NYPD License Division's records also indicate that Marshal Airday's stated need for his "carry license," which permitted him to carry a concealed handgun throughout the City, was based upon his occupation as a City marshal. *See* Feb. 10, 2006 letter to Deputy Inspector Roy Richter from G. Airday, stating, in part, "It is necessary to carry a firearm in the performance of the duties of a City marshal." A copy of the letter is attached as Exhibit E.

[4] With respect to the second gun that the License Division reported as missing, Marshal Airday told the detectives that he had reported it stolen to the police many years earlier. According to the arresting detective's report, Marshal Airday did not provide documentation of the theft report. He has not been charged with a crime based on that missing gun.

[5] At this time, the criminal charge pending in the court as a result of the January 18, 2012 arrest concerns only the .22 caliber Derringer, but the Bronx District Attorney's Office has informed DOI that its investigation of the arrest charge relating to the .25 caliber Hawes remains pending.

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 5 of 9

2. <u>Marshal Airday's Failure to Cooperate with DOI's Investigation</u>

Upon learning of the January 18, 2012 arrest, DOI instructed Marshal Airday not to perform any marshal duties other than the orderly redemption of vehicles and the collection and remittance of funds in relation to vehicles already in his custody. DOI then commenced an investigation into the charges and the issues reported by the police concerning Marshal Airday's firearms, licenses, and gun registrations.

On January 30, 2012, after initial communications with his counsel, DOI instructed Marshal Airday to provide DOI with documents related to his NYPD-issued handgun licenses and handguns identified by the NYPD as having been in his custody, including: (1) a copy of the criminal complaint; (2) any correspondence or notices he received from the NYPD on or after December 22, 2011 regarding his handgun license(s); (3) copies of all applications for handgun license(s) and renewals, (4) records reflecting the loss, theft, or transfer of any handgun and any notifications to the NYPD of such loss, theft, or transfer; (5) any and all records relating to the above-described Derringer and Hawes handguns, by 5:00 pm on January 31, 2012. A copy of this letter is attached as Exhibit G.

With the exception of the criminal complaint against Marshal Airday, which was provided to DOI on February 2, 2012, Marshal Airday has refused to provide DOI with any of the requested documents. On February 8, 2012, and again on February 10, 2012, Assistant Commissioner Keith Schwam, the Director of the Bureau of City Marshals, wrote to Marshal Airday's counsel, noting the marshal's failure to produce the remaining records as required by the Marshals Handbook and repeating DOI's demand for production of these documents. In a letter dated February 13, 2012, received by DOI on February 17, 2012, Marshal Airday's counsel informed an investigator with DOI's Bureau of City Marshals that Marshal Airday would not provide DOI with any documentation unless DOI filed formal disciplinary charges against the marshal. *See* Feb. 13, 2012 letter to T. Pinckney from S. London, Exhibit H. He reiterated that position in a February 17, 2012 letter, which he emailed to Assistant Commissioner Schwam. *See* Feb. 17, 2012 letter to K. Schwam from S. London, Exhibit I.[6]

Both before and after being informed that Marshal Airday refused to produce the records responsive to DOI's demand, DOI advised Marshal Airday, through his attorney, that the marshal's continuing failure to comply with DOI's instruction was a breach of his legal obligations under the City Charter, Marshals Handbook rules, and JAO 453 and was obstructing DOI's investigation. *See* Feb. 17 and Feb. 23 letters to S. London from K. Schwam, Exhibits J and K. To date, Marshal Airday has not produced any further records to DOI, a failure, it is charged, that violates sections 1-9(a) and (b) of the New York City Marshals Handbook of Regulations.

---

[6] Marshal Airday, through his attorney, while asserting no privilege, has cited the pendency of the criminal charges as a reason for his refusal to produce records demanded by DOI. However, this argument is predicated on the mistaken assumption that DOI's oversight and attendant investigative authority is tantamount to an "administrative proceeding." It is not. Thus, the argument does not justify or excuse Marshal Airday's failure to cooperate and interference with DOI. Moreover, DOI's right, and obligation to inquire as to these matters in not circumscribed by the fact of a pending criminal charge. It is well established that a criminal defendant is not entitled to a stay of a disciplinary proceeding pending the outcome of a criminal trial. *See, e.g., Matter of Chaplin* v. *N.Y. City Dep't of Ed.*, 850 N.Y.S.2d 425, 426 (App. Div. 1st Dep't 2008) ("A criminal defendant does not have a right to stay a related disciplinary proceeding pending the outcome of trial.").

NYCE000233

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 6 of 9

Even as he refuses to honor his clear legal obligation as a City marshal to cooperate with DOI and refrain from interfering with its investigation, Marshal Airday has informed DOI, through his attorney that, unless and until he is suspended from office, he will continue to conduct and seek business as a City marshal and that "there is no legal prohibition against Airday from performing any work of a City marshal that he does obtain." *See* Feb. 15, 2012 letter to K. Schwam from S. London, Exhibit L.

## Hearing Procedure

CCA § 1610 empowers the Appellate Division to discipline, suspend, or remove a City marshal "for cause," and, in its discretion, to suspend a marshal from the performance of his or her official duties pending a hearing to be held within sixty days of service of the suspension order. Pursuant to JAOs 453 and 456, the Commissioner of Investigation or her designee may conduct a hearing on charges preferred against a City marshal and thereafter impose penalties upon the marshal, including, but not limited to, suspension from the performance of his or her official duties for a period not to exceed six months for violation of the civil laws, the rules of the Appellate Division for the First and Second Departments, the rules of the Civil Court of the City of New York, the directives of DOI, or for incompetency or misconduct. Should the Commissioner conclude that the charges warrant the marshal's removal from office, she shall refer the matter, after the conclusion of the hearing, along with her report and recommendations, to the Appellate Divisions for consideration and disposition. JAO 456(4).

The enclosed proposed JAO invokes these procedures:

(1)    It suspends Marshal Airday from his office as a City marshal and directs the Commissioner of Investigation to begin disciplinary proceedings against him by referring the matter to OATH for a hearing to be held within sixty days from service of the Order, as required by CCA §1610.

(2)    The administrative law judge ("ALJ") shall make a written record of the hearing and submit it to the Commissioner of Investigation along with his or her and recommendation regarding findings of fact.

(3)    After reviewing the record of the hearing and the ALJ's recommendation, the Commissioner shall take such action as she finds to be warranted. Should she conclude that a penalty in excess of a suspension of six months is warranted, or that a continuing suspension is warranted, she may impose up to six months' suspension, and shall refer the entire matter, including her written recommendations, to the Appellate Division, First and Second Departments, for their joint consideration and disposition.

## Relief Sought

The proposed JAO, together with the Charges and Specifications that have been filed against Marshal Airday, contemplate two different grounds for disciplinary action which, because of their nature, have different potential consequences.

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 7 of 9

<em>Charge One</em>

The first charge, that Marshal Airday failed to cooperate with DOI and interfered with its investigation - alleges misconduct by him in direct violation of Marshals Handbook provisions that specifically require such cooperation from every City marshal and prohibit such interference by a City marshal under penalty of removal. The Marshals Handbook is promulgated by DOI pursuant to JAO 453(4)(b) as a direct result of the authority vested in DOI by the Appellate Divisions and was approved by the Appellate Division in JAO 542. Any penalty imposed after a hearing for a proven violation of those provisions, such as suspension, fine, or removal, if recommended by the DOI Commissioner and ordered by the Appellate Division, would sanction Marshal Airday for that misconduct.

<em>Charges Two and Three</em>

The second and third charges, which concern Marshal Airday's two arrests and the criminal charges pending against him in court, allege that the criminal conduct charged in each of the respective accusatory instruments, if true, would warrant Marshal Airday's removal or other penalty. Accordingly, the relief sought in connection with these two charges is Marshal Airday's suspension during the pendency of those criminal charges. DOI maintains that suspension is warranted on the ground that the specific criminal charges pending against Marshal Airday, alleging violence and intentional disobedience of a court order involving a gun, raise serious concerns about his fitness for the office he holds, in that the charged criminal conduct is irreconcilable with the responsibilities of a City marshal, which include "obey[ing] the law in all their activities, both official and personal." Marshals Handbook, Chapter I, § 1-1.

The pendency of the criminal charges against Marshal Airday as alleged in Charges Two and Three constitutes "cause" under CCA § 1610 for the Appellate Division to suspend the marshal pending their resolution in criminal court. *Cf. Nnebe* v. *Daus*, 644 F.3d 147, 150-51 (2d Cir. 2011) (describing the Taxi and Limousine Commission's authority and procedure for suspending a taxi driver's license on "public health and safety" grounds upon the driver's arrest on felony or certain misdemeanor charges). Pursuant to the enclosed proposed JAO, at the hearing, with respect to Charges Two and Three, Marshal Airday would be able to offer evidence that, even if true, the pending criminal charges do not warrant his suspension, but his guilt or innocence of the underlying criminal acts would not be adjudicated. This procedure comports with the Second Circuit's guidance concerning due process requirements for suspension hearings. *See id.* at 159-60 (finding that a pre-suspension hearing is not necessary for a taxi driver charged with a felony or serious misdemeanor and that a post-suspension hearing need not adjudicate the criminal charges themselves).

The pending criminal charges against Marshal Airday are serious and go to the heart of his qualifications to serve as a City marshal. City marshals are given the power to enforce particularly sensitive court orders. They may seize judgment debtors' vehicles and other property and enter and if necessary break into private homes and businesses to remove utility meters and to evict tenants from their apartments, all potentially volatile situations with inherent risks for the safety of the marshal and those present. Therefore, for the protection of the rights and safety of the individuals affected by the marshals' official actions, those powers should be conferred only on individuals whose conduct in all

NYCE000235

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 8 of 9

matters demonstrates uncompromised integrity, sound judgment, and, when applicable, careful attention to the specific requirements of court orders, statutes, and rules. In contrast to those requirements and standards, Marshal Airday is charged with crimes in which he is accused of resorting to violence in a confrontation with his fiancée, causing her injury, and with criminal contempt and intentional disobedience of a court order directed at him in the wake of his arrest.

Moreover, as reflected in the New York State Court System's public, on-line *Webcrims* records, the next scheduled court date for the two criminal complaints pending against Marshal Airday is July 16, 2012, more than a month from now.[7] Under all of the abovementioned circumstances, including Marshal Airday's ongoing refusal to cooperate with DOI, permitting Marshal Airday to continue to exercise the powers and duties of a City marshal until the criminal charges are resolved would pose an unacceptable risk to the safety of the public and to the public's confidence in the ability of DOI and the Appellate Division to ensure the integrity of the City marshals empowered to carry out their sensitive official responsibilities. At the same time, DOI and the Appellate Division are not in a position and should not be compelled to hold a hearing that in effect would require them to determine, in advance of an adjudication of the criminal charges, whether Marshal Airday is guilty of misconduct based on the facts and issues to be determined in the criminal case. *See Nnebe*, 644 F.3d at 160 ("the City cannot be required to hold a hearing that functions as a preview of the criminal case").

Therefore, with respect to Charges Two and Three, DOI seeks a procedure to be employed, consistent with the Second Circuit's guidance in *Nnebe*, in which the DOI Commissioner and the Appellate Division will determine, after a hearing, whether Marshal Airday should be suspended while the criminal charges remain unresolved. Under that procedure, the issues to be determined with respect to Charges Two and Three of the enclosed Charges and Specifications will be (1) whether the criminal charges against Marshal Airday have been filed with and remain pending in court at the time of the hearing, and (2) whether the pending criminal charges warrant and constitute cause for his continued suspension until their resolution.

For that determination, the factual allegations underlying the criminal complaints need not be adjudicated. *See id.* Instead, in accord with *Nnebe*, Marshal Airday will have the opportunity at the hearing to show that even if the criminal charges are true, his continued exercise of the powers of a City marshal does not pose safety concerns or other concerns related to his fitness for that office sufficient to warrant his suspension pending the resolution of the criminal charges. Any post-hearing suspension imposed by the DOI Commissioner and the Appellate Division based upon their determination that Charges Two and/or Three are substantiated would be aimed at protecting the public while the criminal cases are adjudicated and would be in effect only through the adjudication of those charges.

## Conclusion

By refusing to cooperate with DOI's investigation, Marshal Airday has violated court-ordered provisions of the Marshals Handbook and has demonstrated that he lacks the integrity required of a public servant entrusted with the enforcement of New York State's and New York City's laws and court

---

[7] DOI is informed by the Bronx District Attorney's Office that the case is expected to be rescheduled to August 7, 2012.

NYCE000236

Honorable Luis A. Gonzalez,
Honorable William F. Mastro
May 30, 2012
Page 9 of 9

judgments. Furthermore, Marshal Airday is currently the subject of criminal charges that allege violent and threatening behavior and willful disobedience of a court order. Such allegations, if true, raise significant concerns about his fitness for an office that requires obedience to the law "in all their activities, both official and personal." Marshals Handbook, Chapter I, § 1-1. DOI therefore respectfully requests that the Appellate Divisions exercise their joint authority to order Marshal Airday's immediate suspension, pending a final decision at the conclusion of proceedings upon the enclosed disciplinary charges.

Respectfully submitted,

ROSE GILL HEARN, Commissioner
New York City Dept. of Investigation

By

Keith Schwam
Assistant Commissioner
Director of the Bureau of City Marshals
212 825-5958
kschwam@doi.nyc.gov

cc:    Susanna Molina Rojas, Esq.
       Aprilanne Agostino, Esq.

Enclosures (2)



2011BX068751

BRONX SUPREME COURT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF NEW YORK

v.

1.  GEORGE AIRDAY M/65
    Arrest# B11698664

                    Defendant

STATE OF NEW YORK

COUNTY OF THE BRONX

DOMESTIC VIOLENCE

FAMILY OFFENSE
Defendant:
FIANCEE
(Relationship To Victim)

▓▓▓▓▓▓▓▓▓ states that on or about December 21, 2011 at approximately 10:30 PM at INSIDE OF ▓▓▓▓▓▓▓ AVENUE, County of the Bronx, State of New York,

THE DEFENDANT COMMITTED THE OFFENSES OF:
1 (M) P.L. 120.00(1)        Assault 3^ (DNA Qualified Offense)
2 (M) P.L. 120.15          Menacing (DNA Qualified Offense)
3 (V) P.L. 240.26(1)       Harassment 2^

IN THAT THE DEFENDANT DID: intentionally cause physical injury; by physical menace, intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury and with intent to harass, annoy or alarm another person  struck, shoved, kicked or otherwise subjected such other person to physical contact, or attempted  or threatened to do the same.

THE GROUNDS FOR THE DEPONENT'S BELIEF ARE AS FOLLOWS:

    Deponent states that, at the above time and place, defendant shoved her to the ground. Deponent further states that defendant struck her several times in the face with an open hand while stating in sum and substance I AM GOING TO KILL YOU.

    Deponent further states that, as a result of the defendant's actions, she

*Supreme Court Criminal Division Bronx County*

*I hereby certify* ▓▓ ▓ ▓▓▓ *copy*
*of the record* ▓▓ ▓▓▓▓▓ *urt.*

Date _4-4-12_ _____ Court Official/Title

WILLIAM KALISH
BOROUGH CHIEF CLERK

Exhibit A

NYCE000238

sustained bruising and swelling to her lower back and face and experienced
substantial pain and experienced annoyance, alarm and fear for her physical
safety

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE
AS A CLASS A MISDEMEANOR PURSUANT TO P.L. 210.45

12/22/2011 (11:16)

DATE and TIME                                    SIGNATURE

Supreme Court Criminal Division Bronx County

I hereby certify the foregoing true copy
of the record filed in this Court.

Date 4-4-12                Court Official/Title
WILLIAM KALISH
BOROUGH CHIEF CLERK



Page 2 of 2

A002040075

Exhibit A

NYCE000239

 **NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)



Invoice No. **2000053659**

| Invoicing Command | | | | | Invoice Status |
|---|---|---|---|---|---|
| **50TH PCT.** | | | | | **OPEN** |

| Invoice Date | Property Type | | | Property Category |
|---|---|---|---|---|
| **12/22/2011** | **FIREARM** | | | **SAFEKEEPING** |

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | POM | CANCEL, WILLIAM | 928999 | 50TH PRECINCT | OCME. EU No. | |
| Arresting | N/A | | | | OCME. FB No. | |
| Investigating | N/A | | | | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | N/A | | | | Det Sqd. Case No. | N/A |
| CSU/ECT Processing | N/A | | | | CSU/ECT Run No. | N/A |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 1 | OTHER HANDGUN<br>MAKE: HECKLER AND KOCH MODEL: USP COMPACT<br>CALIBER: .40 FIREARM COLOR: BLACK<br>SERIAL NO. EXISTS: YES SERIAL NO.: 26-080601<br>LICENSE ACTIVE: NO | 1300048212 | 1 | |
| 2 | 1 | REVOLVER<br>MAKE: SMITH & WESSON MODEL: MOD 66.2<br>CALIBER: .357<br>FIREARM COLOR: CHROME/STAINLESS STEEL<br>SERIAL NO. EXISTS: YES SERIAL NO.: 240K477<br>LICENSE ACTIVE: NO | 1300048212 | 1 | |
| 3 | 1 | OTHER HANDGUN<br>MAKE: WALTHER MODEL: PPK/S CALIBER: .22<br>FIREARM COLOR: BLACK SERIAL NO. EXISTS: YES<br>SERIAL NO.: 132933ZS LICENSE ACTIVE: NO | 1300048212 | 1 | |
| 4 | 1 | OTHER HANDGUN<br>MAKE: WALTHER MODEL: PPK/S CALIBER: 9MM<br>FIREARM COLOR: CHROME/STAINLESS STEEL<br>SERIAL NO. EXISTS: YES SERIAL NO.: S097118<br>LICENSE ACTIVE: NO | 1300048212 | 1 | |
| 5 | 1 | OTHER HANDGUN<br>MAKE: HAWES MODEL: LA CALIF CALIBER: .25 | 1300048212 | 1 | *NOT Licensed* |



Invoice No. **2000053659**

**Assigned Investigator Copy**
printed: 01/19/2012 10:08

PCD Storage No.
**12B001832**

Page No. 1 of 3

EXHIBIT B

NYCE000240



**NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141 (Rev. 11/09)



Invoice No. **2000053659**

| Item | Total QTY | Article(s) | | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|---|
| | | FIREARM COLOR: **BLACK** SERIAL NO. EXISTS: YES SERIAL NO.: **114698** LICENSE ACTIVE: **NO** | | | | |

**REMARKS:**

907326 01/12/2012 09:03 : OWNER OF WEAPONS ARRESTED FOR ASSAULT. ARREST#B11698664N. 61#5915..DO NOT RELEASE WEAPONS WITHOUT APPROVAL OF LICENSE DIVISION

330365 01/12/2012 09:12 : SEE DOCS ON INCIDENT.

| Date Of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 12/22/2011 | | | N/A | ACCEPTED |

| Prisoner(s) Name | | D.O.B | Age | Address | | Arrest No./Summons No.  NYSID No. |
|---|---|---|---|---|---|---|
| | | | | | | |

| | Name | Tax No. | Address | Phone. No |
|---|---|---|---|---|
| Finder(s) | CANCEL, WILLIAM | 928999 | 1 POLICE PLAZA  NEW YORK, NY  10038. | 718-543-5700 |
| Owner(s) | AIRDAY, GEORGE | | 5720  MOSHOLU AVE, 3, BRONX, NY- 10463 | 917-952-8592 |
| Complainant(s) | | | | |

| Complaint No. | N/A |
|---|---|
| Related Comp No.(s) | N/A |
| Aided/Accident No.(s) | N/A |
| Related Invoice(s) | N/A |

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | POM | CANCEL, WILLIAM | 928999 | 50TH PRECINCT | 12/22/2011 | 03:38 |
| Invoicing Officer | POM | CANCEL, WILLIAM | 928999 | 50TH PRECINCT | 12/22/2011 | 04:38 |
| Approved By | SGT | PRINCEMCCOADE, PRINCESS | 926436 | 50TH PRECINCT | 12/22/2011 | 04:38 |

Invoice No. **2000053659**

**Assigned Investigator Copy**
printed: 01/19/2012 10:08

PCD Storage No.
**12B001832**
Page No. 2 of 3

EXHIBIT B

NYCE000241

 

**NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)

Invoice No. **2000053659**

## INVESTIGATORY EVIDENCE/DNA INVESTIGATORY EVIDENCE

All Investigatory/DNA Investigatory Evidence (except in homicide cases, sex offenses, IAB cases, MOS involved cases and Arson/Explosion) in the custody of this department in excess of **ONE YEAR** from the date **PROPERTY CLERK INVOICE** was prepared will be **DISPOSED OF**. The Property Clerk Division **MUST** be notified in the following instances:

### Case Closed - ARREST

The category of invoiced property **MUST** be changed from Investigatory/DNA Investigatory to Arrest Evidence in order for the Property Clerk Division to retain the evidence. Investigating officer shall create a **Change of Category** request in PETS.

### Case Closed - NO ARREST

The category of invoiced property **MUST** be changed from Investigatory/DNA Investigatory to Safekeeping, investigating officer shall create a **Change of Category** request in PETS.

### Case Open -INVESTIGATION

Investigating officer shall create a **Request for Retention** in PETS if investigatory evidence is required to be held more than **one (1) year** from the date the Property Clerk Invoice was created. Acceptance of a **Request for Retention** will only retain the property for one year. If additional retention of the property is necessary, a new **Request for Retention** must be created for each one year period. A **Request for Retention** must be completed for each invoice requested to be retained.



Invoice No **2000053659**

**Assigned Investigator Copy**
printed: 01/19/2012 10:08

PCD Storage No.
**12B001832**

Page No. 3 of 3

EXHIBIT B

NYCE000242

ORI No: __AM062033J__                At a term of the _Criminal_ Court, County of _Bronx_    Criminal Form 1 9/2009
Order No: _____                 at the Courthouse at _815 E. 161 Street_, State of New York

NYSID No: _____
CJTN No: _____                                      **ORDER OF PROTECTION**
                                                         **Family Offenses - C.P.L. 530.12**

PRESENT: Hon. _Franco_ ,
PEOPLE OF THE STATE OF NEW YORK                          ☐ Youthful Offender (check if applicable)
                                                         Part: _AP-1_ Index/Docket No: _2011BX06_
                                                         Indictment No., if any: _____
against                                                  Charges: _120.00(1)_

_George Airday_ , Defendant  Date of Birth: _____   [Check box]: ☐ Ex Parte ☑ Defendant Present In Court

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINA
PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CONTEMPT O
COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION AND YOU FAIL TO APPEAR IN COURT WHEN YOU
ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN
EFFECT UNTIL A NEW DATE SET BY THE COURT.

☑ **TEMPORARY ORDER OF PROTECTION** - Whereas good cause has been shown for the issuance of a temporary order of
protection [as a condition of ☐ recognizance ☐ release on bail ☐ adjournment in contemplation of dismissal]
☐ **ORDER OF PROTECTION** - Whereas defendant has been convicted of [specify crime or violation]: _____
    And the Court having made a determination in accordance with section 530.12 of the Criminal Procedure Law,
IT IS HEREBY ORDERED that the above-named defendant observe the following conditions of behavior:
[Check applicable paragraphs and subparagraphs]:
[01]☑ Stay away from [A] ☐ [name(s) of protected person(s) or witness(es)]: _____S_____ and/or from the
    [B] ☐ home of _____ , [C] ☐ school of _____
    [D] ☐ business of _____ , [E] ☐ place of employment of _____
[F] ☐ other _____
[14]☑ Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other mean
    with [specify protected person(s)]: _____
[02]☑ Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct,
    criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, or any criminal offense against
    [specify name(s), members of protected person's family or household, or person(s) with custody of
    child(ren)]: _____
[15]☑ Refrain from intentionally injuring or killing without justification the following companion animal(s) (pet(s)) [specify type(s
    and, if available, name(s)]: _____SAHA_____
[11]☐ Permit [specify individual]: _____ to enter the residence at [specify ]: _____
    during [specify date/time]: _____ with [specify law enforcement agency, if any]: _____ to remov
    personal belongings not in issue in litigation [specify items]: _____
[04]☑ Refrain from [indicate acts]: _____SAHA_____ that
    create an unreasonable risk to the health, safety, or welfare of [specify child(ren), family or household member]: _____
[05]☐ Permit [specify individual(s)]: _____ ,
    entitled by a court order or separation or other written agreement, to visit with [specify child(ren)]: _____
    _____ during the following periods of time [specify]: _____
    _____ , under the following terms and conditi
    [specify]: _____
[12]☑ Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not
    limited to, the following _All of the above_ _____ and do not obtain any further guns or ot
    firearms. Such surrender shall take place immediately, but in no event later than [specify date/time]: _____
    at: _Local Precinct_
[99]☐ Specify other conditions defendant must observe for the purposes of protection: _____
IT IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a
    firearm or firearms, if any, pursuant to Penal Law §400.00, is hereby [ 13A]☐ suspended or [13B]☐ revoked (note: final
only), and/or [13C] ☑ the Defendant shall remain ineligible to receive a firearm license during the period of this order. (Check all
applicable boxes).
IT IS FURTHER ORDERED that this order of protection shall remain in force until and including [specify date]: _2/2/_
DATED: _12/22/11_

                                                         _____
                                                         JUDGE / JUSTICE
☑ Defendant advised in Court of issuance and contents of Order.  _____    Court (Court Seal)
☑ Order personally served on Defendant in Court          _____
                                                         (Defendant's signature)
☐ Order to be served by other means [specify]: _____
☐ Warrant issued for Defendant
☐ ADDITIONAL SERVICE INFORMATION: [specify]: _____
The Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer
pursuant to his or her special duties shall authorize and in some situations may require, such officer to arrest a defendant who is alleg
have violated its terms and to bring him or her before the Court to face penalties authorized by law.
Federal law requires that this order be honored and enforced by state and tribal courts, including courts of a state, the District of
Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intima
partner of the protected party and has been or will be afforded reasonable notice and opportunity to be heard in accordance with state
sufficient to protect that person's rights (18 USC §§2265, 2266).
It is a federal crime to:
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect
    (Note: there is a limited exception for military or law enforcement officers but only while they are on duty); and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related
    crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even
    after this Order has expired. (18 U.S.C. §§922(g)(8), 922(g)(9), 2261, 2261A, 2262).

COURT

EXHIBIT C

NYCE000243



POLICE DEPARTMENT
License Division
1 Police Plaza, Room 110A
New York, NY 10038

Date: January 13, 2012
License(s) PR352967/CB352967

5720 Moshulo Avenue
Bronx, NY 10471

Dear George Airday

This letter is to advise you that your licenses are suspended as a result of your Arrest on 12/21/2011 in the confines of the 50th precinct where you were charged Assault 3rd Degree and Harassment 2nd degree.

YOUR ARE HEREBY DIRECTED TO IMMEDIATELY:

1. Surrender any and **all firearms** at your local Precinct pending the conclusion of the investigation of the above incident by the License Division.
2. Forward your license and/or permit to the License Division at the above address.
3. Forward a copy of the **Property Clerk's Invoice** showing surrender of the firearms to the License Division at the above address.
4. Forward a notarized letter to the License Division at the above address explaining the facts and circumstances surrounding your incident.
5. Telephone and speak with the investigator named below who is assigned to your case.
6. If you were arrested, you must forward to the License Division at the above address proof that the criminal charges have been terminated (**an original Certificate of Disposition from the court or a letter from the District Attorney declining prosecution**). If applicable, you must also forward a Certificate of Relief from Disabilities.

The License Division will conduct an investigation into the facts and circumstances of the incident. The Commanding Officer of the License Division will make a determination as to whether your License, Permit and/or Special Patrolman's designation will be *continued, suspended,* or *revoked* based upon the results of the investigation. You will be notified in writing of the results of that determination.

*The Investigator assigned to your case is,* P. O. Levine, A who can be reached at (646)-610-5154.

POSSESSION OF AN UNLICENSED FIREARM IS A CRIME. FAILURE TO COMPLY WITH ANY OF THE ABOVE-MENTIONED DIRECTIVES MAY RESULT IN YOUR ARREST AND/OR PERMANENT REVOCATION OF YOUR LICENSE.

Sincerely,

Andrew Lunetta
Deputy Inspector

COURTESY • PROFESSIONALISM • RESPECT

EXHIBIT D

NYCE000244

Fax-                                    Feb 22 2012 02:26pm  P002/002

P.O. Levine

**The City of New York**

POLICE DEPARTMENT

NEW YORK, N.Y. 10038

LICENSE DIVISION
INCIDENT SECTION
ONE POLICE PLAZA-RM. 110A
NEW YORK, NY 10038

Mr George Hirsch Avenue

Bronx, New York 10471

Redford
11/02/12

FOR POLICE EMERGENCY ONLY
DIAL 911

EXHIBIT D

NYCE000245



# Office of the City Marshal
## GEORGE AIRDAY
5720A MOSHOLU AVENUE
BRONX, NY 10471-2234
(718) 601-7288 • FAX (718) 601-7396

Roy T Richter, Deputy Inspector
NYC Police Department, License Division
Room 110A
New York, NY 10038

February 10, 2006

Dear Inspector Richter,

As required in the instructions for the Carry Permit, the duties of the City Marshal in the execution of civil law mandates in New York City includes the following:

In the course of my official duties I collect and make bank deposits of large amounts of cash, impound scofflaw vehicles from the street, supervise the court-ordered removal of chattel (electric meters) for Con Ed, collect court ordered money judgments from businesses and execute other Civil Court orders.

It is necessary to carry a firearm in the performance of the duties of a City Marshal.

Thank You,

George Airday

ESTHER COHEN
Notary Public, State of New York
No. 03-4831112
Qualified in Bronx County
Commission Expires 6/30/07

EXHIBIT E

NYCE000246

BRONX SUPREME COURT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF NEW YORK

v.

1.  GOERGE AIRDAY M/65
    Arrest# B12605345


                Defendant

STATE OF NEW YORK

COUNTY OF THE BRONX  

    DET CHRISTOPHER BOERKE of 50 DET,  Shield# 002085, states that on or about
January 18, 2012 at approximately 4:45 PM at inside of ▮▮▮▮▮▮▮▮ Avenue
apartment 3, County of the Bronx, State of New York,

    THE DEFENDANT COMMITTED THE OFFENSE OF:
1 (M) P.L. 215.50(3)          Criminal Contempt 2^

IN THAT THE DEFENDANT DID: engage in intentional disobedience or resistance to
the lawful process or other mandate of a court in a case not involving or
growing out of a labor dispute.

    THE GROUNDS FOR THE DEPONENT'S BELIEF ARE AS FOLLOWS:

    Deponent states that, at the above time and place, defendant's residence,
he observed the defendant inside of above location and further observed the
defendant to have in his custody and control, inside of a safe in the living
room, Berenger .22 caliber handgun.

    Deponent further states that he has reviewed a Criminal Court order of
protection issued by the Honorable Judge Ruben Franco of the Bronx County
Criminal Court (Docket #2011BX068751) on December 22, 2011 and valid through
February 7, 2012, on the behalf of ▮▮▮▮ S▮▮▮▮▮, which states that the
defendant should surrender any and all handguns, pistols, revolvers, rifles,
shotguns including but not limited to, the following: all handguns and do not
obtain any further guns or other firearms and such surrender shall take a place
immediately, but in no event later than 7 PM on December 22, 2011.


*Supreme Court Criminal Division Bronx County*

*I hereby certify this to be a true copy*
*of the record on file in this Court.*

                    *William McKalish*

Date  *4-4-12*          Court Official/Title
                WILLIAM KALISH
                BOROUGH CHIEF CLERK

002046913                Page 1 of 2

Deponent further states that, defendant had knowledge of said order in that said order indicates that the defendant was present in court when said order was issued. Deponent further states that said order is signed by the defendant.

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE
AS A CLASS A MISDEMEANOR PURSUANT TO P.L. 210.45

01/18/2012 (23:41)
_____          _____
DATE and TIME                      SIGNATURE



Supreme Court Criminal Division Bronx County

I hereby certify this to be a true copy
of the record on file in this Court.

Date _____  Court Official/Title

WILLIAM KALISH
BOROUGH CHIEF CLERK

002046913                    Page 2 of 2

EXHIBIT F

NYCE000248



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

January 30, 2012

Confidential

City Marshal George Airday
5720 Mosholu Avenue
Bronx, NY   10471

Dear Marshal Airday:

As indicated in previous correspondence, including Keith Schwam's letter to you dated January 19, 2012 (copy attached) it has come to the attention of the Department of Investigation (DOI) that you were arrested on January 18, 2012 and charged by the arresting officer with two counts of Criminal Possession of a Weapon (firearm) in the Fourth Degree and Criminal Contempt in the Second Degree, both class A misdemeanors.

By 5:00 p.m. on January 31, 2012, please provide DOI with a copy of the complaint filed in Criminal Court in relation to that arrest, along with any correspondence/notices you received from the New York City Police Department (NYPD) on or after December 22, 2011 regarding your handgun license(s), and any and all relevant records in your custody or control, including but not limited to (1) copies of all applications for handgun license(s) and renewals; (2) records reflecting the loss, theft, or transfer of any handgun and any notifications to the NYPD of such loss, theft or transfer; and (3) any and all records reflecting or related to (a) a Derringer .22 caliber handgun, and (b) your acquisition of the .25 caliber Hawes handgun referenced in NYPD Property Claims Invoice #200053659, a copy of which you provided to this office.

Thank you for your cooperation.

Sincerely,

Teresa Pinckney, Investigator
Bureau of City Marshals

c:  Kenneth Litwack, Esq

EXHIBIT G

NYCE000249

DEPT OF INVEST
MARSHALS BUREAU
RECEIVED

**LONDON & WORTH, LLP**
ATTORNEYS AND COUNSELORS AT LAW
111 JOHN STREET, SUITE 640
NEW YORK, N.Y. 10038
TELEPHONE: (212) 964-8038
FACSIMILE: (212) 964-8164

2012 FEB 17  PM 1: 17

February 13, 2012

CERTIFIED MAIL R/R/R

Ms. Teresa Pinckney
Investigator
Bureau of City Marshals
New York City Department of Investigation
80 Maiden Lane
New York, New York 10038

Re:    City Marshal George Airday

Dear Ms. Pinckney:

    This law firm is representing City Marshal George Airday with respect to any administrative proceedings at the Department of Investigation. This letter is in response to your January 30, 2012 letter to Mr. Airday requesting certain documents.

    As you are well aware, the Department of Investigation is empowered to conduct a formal hearing on administrative charges pursuant to Mayor's Executive Order 16 and New York City Civil Court Act § 1610. However, Mr. Airday has not yet been served with due notice of written charges. If the Department of Investigation does go forward with a hearing, at that time we will be willing to provide the documentation that is pertinent to this matter.

    Please do not hesitate to contact me if you have any questions.

                                    Sincerely,

                                    Stuart London

cc    George Airday

EXHIBIT H

NYCE000250

LAW OFFICES
**LONDON & WORTH, LLP**
111 JOHN STREET
SUITE 640
NEW YORK, N.Y. 10038

**CERTIFIED MAIL**



7011 1570 0003 1236 7156



UNITED STATES POSTAGE
PITNEY BOWES
02 1P      $ 005.75⁰
0001635593   FEB 15  2012
MAILED FROM ZIP CODE 10038

Ms. Teresa Pinckney
Investigator
Bureau of City Marshals
New York City Department of Investigation
80 MAiden Lane
New York, New York 10038

10038469099

EXHIBIT H

NYCE000251

LONDON & WORTH, LLP
ATTORNEYS AND COUNSELORS AT LAW
111 JOHN STREET, SUITE 640
NEW YORK, N.Y. 10038
TELEPHONE: (212) 964-8038
FACSIMILE: (212) 964-8164

February 17, 2012

Regular mail and e-mail
kschwam@doi.nyc.gov

Mr. Keith Schwam
Assistant Commissioner
New York City Department of Investigation
80 Maiden Lane
New York, New York 10038

Re:    City Marshal George Airday

Dear Assistant Commissioner Schwam:

This letter is in response to your most recent letter dated February 17, 2012 concerning City Marshal George Airday ("Airday").

As you are aware, no written disciplinary charges have yet to be filed against Airday, meaning that he has had no opportunity to be heard at a full and complete hearing as required under section 1610 of the New York City Civil Court Act. Pursuant to that statute, because written disciplinary charges have not yet been filed and no hearing scheduled, Airday has not been suspended. Accordingly, we see no current legal prohibition from Airday performing any work of a City Marshal that he is able to obtain.

In addition, as you are also aware, Airday is the defendant in a criminal case. That criminal case takes precedence over the administrative proceeding. Therefore, until resolution of that criminal matter, absent the Department of Investigation affording Airday his rights to a full and fair hearing as required under the law, Airday will not be able to provide the documents that have been requested by the Department of Investigation in the letter to him dated January 31, 2012.

Sincerely,

Stuart London

cc    George Airday

EXHIBIT I

NYCE000252



### The City of New York
### Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

February 17, 2012

By Electronic and Regular Mail
Stuart London, Esq.
London & Worth, LLP
111 John Street, Suite 640
New York, NY 10038

Re: <u>City Marshal George Airday</u>

Dear Mr. London:

I am writing in response to your letter dated February 15, 2012.

The Department of Investigation's ("DOI's") position with respect to Marshal Airday is stated in my letter to you dated February 10, 2012. Apart from the facts and concerns recited in that letter, Marshal Airday has breached his responsibility to refrain from preventing, seeking to prevent, interfering with, obstructing, or otherwise hindering any DOI investigation and to afford full cooperation to DOI, which is empowered to supervise and monitor the official acts of New York City Marshals and to take complaints, make inquiries, and conduct investigations into all aspects of marshals' activities. *See* NYC Charter § 1128; Joint Administrative Order 453; and Marshals Handbook, Chapter I, § 1-9. Marshal Airday, among other things, has failed to produce the records that DOI directed him to produce by January 31, 2012. Any suggestion that Marshal Airday may lawfully elect to obtain and perform work of his choosing while failing to cooperate with DOI and disregarding DOI's direction is incorrect.

Sincerely,

Keith Schwam
Assistant Commissioner

**EXHIBIT J**

NYCE000253



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

February 23, 2012

By Electronic and Regular Mail
Stuart London, Esq.
London & Worth, LLP
111 John Street, Suite 640
New York, NY 10038

Re: <u>City Marshal George Airday</u>

Dear Mr. London:

    I am writing in response to your letters dated February 13 and February 17, 2012, both of which were received at this department on the afternoon of February 17, 2012, after my letter of that date was sent to you by email and regular mail.  DOI's position with respect to Marshal Airday is set forth in my letters to you dated February 10 and 17, 2012.

    On January 30, 2012, the Department of Investigation ("DOI") directed Marshal Airday to produce by 5 p.m. the next day certain records that relate to his official activities and obligations as a City marshal. Marshal Airday has failed to produce those records, disregarding DOI's direction and obstructing its investigation. Nothing in your letters of February 13 and 17, 2012 excuses that failure as far as DOI is concerned.

    DOI's supervisory and investigative authority with respect to City marshals is longstanding and well established by statute, Appellate Division orders, and rules approved by the Appellate Division, some of which are mentioned in my letter to you dated February 17, 2012.  The marshal has elected to disregard DOI's direction and withhold documents he was directed to produce, apart from the facts and concerns mentioned in DOI's previous letters that surround the criminal charges filed in the Bronx court. The marshal is therefore subject to all lawful measures that DOI may take in response.

                    Sincerely,

                    Keith Schwam
                    Assistant Commissioner

**EXHIBIT K**

NYCE000254

**LONDON & WORTH, LLP**
ATTORNEYS AND COUNSELORS AT LAW
111 JOHN STREET, SUITE 640
NEW YORK, N.Y. 10038
TELEPHONE: (212) 964-8038
FACSIMILE: (212) 964-8164

February 15, 2012

Regular mail and e-mail
kschwam@doi.nyc.gov

Mr. Keith Schwam
Assistant Commissioner
New York City Department of Investigation
80 Maiden Lane
New York, New York 10038

Re:     City Marshal George Airday

Dear Assistant Commissioner Schwam:

This letter is in response to your most recent letter dated February 10, 2012 concerning City Marshal George Airday ("Airday").

Based on your letter, it appears that if Airday does not voluntarily step down as a City Marshal, the Department of Investigation may then serve him with due notice of written charges and afford him an opportunity to be heard at a full and complete hearing, as required under section 1610 of the New York City Civil Court Act.   If that occurs, Airday looks forward to the opportunity to vindicate himself.

However, based on your most recent letter, the remainder of what was in my February 10 letter to you appears accurate.   Specifically, nothing in your most recent letter contradicts either of the following:

(1)     the sole limitation upon Airday from performing the work of a City Marshal is his ability to obtain work; and

(2)     there is no legal prohibition against Airday from performing any work of a City Marshal that he does obtain.

If either of those are not correct, please contact me immediately.

Sincerely,

Stuart London

cc     George Airday

EXHIBIT L

NYCE000255

JOINT ADMINISTRATIVE ORDER NO. ___

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in them by law and by Section 1610 of the New York City Civil Court Act, the provisions of Joint Administrative Orders Nos. 453 and 456 of the Appellate Division for the First and Second Departments, and in recognition of the Charges and Specifications against City Marshal George Airday, Badge No. 7, dated May 30, 2012, filed in their respective Departments of the Appellate Division by the Commissioner of the Department of Investigation ("DOI") of the City of New York, do hereby jointly order as follows:

(1) The Commissioner of DOI shall institute disciplinary proceedings against Marshal Airday based upon the Charges and Specifications filed with the Appellate Division, First and Second Judicial Departments.

(2) Marshal Airday shall be suspended from his office of New York City Marshal forthwith upon service upon him of this Order, the Charges and Specifications and DOI's letter to the Appellate Division dated May 30, 2012, and shall remain suspended until further Joint Order of the Appellate Division, First and Second Judicial Departments.

(3) The Commissioner of DOI shall designate the New York City Office of Administrative Trials and Hearings ("OATH") to hold a hearing on the Charges and Specifications against Marshal Airday.  Such hearing shall be held within sixty days from the date of service of this Order upon Marshal Airday, except that the period of time prescribed herein may be extended for good cause shown upon application.  New York City Civil Court Act § 1610.  OATH shall make a written record of such hearing and submit the same together with the administrative law judge's recommended findings of fact to the Commissioner of DOI.

(4) To the extent that the Charges and Specifications allege that Marshal Airday was arrested on criminal charges, the issues to be determined by the Commissioner of DOI after the hearing shall be (i) whether criminal charges against Marshal Airday have been filed with and remain pending in court at the time of the hearing; and (ii) whether the criminal charges pending in court warrant and constitute cause for Marshal Airday's continued suspension from office pending their resolution. For purposes of the Commissioner's determination and the hearing to be held by OATH, nothing in this Order shall require the Commissioner or OATH to make or recommend findings of fact as to the truth of the allegations contained in the criminal charges or as to the probable guilt or innocence of the marshal regarding the underlying charges. Although for the purposes of this hearing, the criminal charges pending against Marshal Airday shall be deemed true, Marshal Airday will be permitted to present evidence that these charges do not constitute cause to suspend him pending their resolution.

(5) The Commissioner of DOI shall review the written record of the hearing and OATH's recommendations and take such action thereon as she finds to be warranted.  Should the Commissioner conclude that a penalty in excess of a suspension of six months is warranted, or that a continuing suspension pending resolution of criminal charges pending in court is warranted, she may impose up to

1 of 4

NYCE000256

six months' suspension, and shall refer the entire matter, including her written recommendations, to the Appellate Division, First and Second Judicial Departments, for their joint consideration and disposition.

(6) During the period of suspension, Marshal Airday shall cooperate fully with the Commissioner of DOI and her designee(s) and shall provide to DOI upon demand immediate access to any and all records of his official activities as a City marshal, including but not limited to a complete accounting of all open matters pending in his office as of the date of his suspension and all sums he and his office have received and disbursed, and any sums he is owed or owes to others in relation to his official activities as a City marshal.

(7) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not perform any official act or function, apply for any court mandate, cause or permit another person to perform any official act or function for him, or refer any work or any person seeking a marshal's services to another person.

(8) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall immediately return to the sender each and every new request for his services that may come to him or his office; advise the sender that, by virtue of a court order, Marshal Airday cannot, until further notice, perform the requested services, and that the sender should seek the services of another enforcement officer; and return to the sender any advance payment of a fee or expense tendered in connection with such a request.

(9) During the period of suspension, Marshal Airday shall return any and all unexecuted court mandates that he has received or may receive, including all unexecuted warrants of eviction or ejectment, orders of seizure, property executions, and income executions, to the issuers thereof, and immediately return any and all executed court mandates to the appropriate courts.

(10) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not execute or cause or permit to be executed any transaction involving any of his official trust and operating accounts, including, but not limited to, deposits, transfers, disbursements, or withdrawals of money by any means whatsoever, including but not limited to the drafting or signing of checks, the use of debit or credit cards, the use of an ATM, telephone transfers, debit memos, and payments to third parties pursuant to any authorization or agreement by Marshal Airday whereby any such payment is made from any of the Marshal's official accounts.

(11) During the period of suspension, the office of Marshal Airday shall be closed to the public. Any and all signs designating him as a City Marshal and any and all indicia that his office remains open to the public shall be removed from his office location by Marshal Airday immediately.

(12) Nothing in this Order shall relieve Marshal Airday of any responsibility or liability he may have for any debt or obligation that he may incur or may have incurred in either his official or personal capacity, including but not limited to his responsibility to maintain a bond pursuant to the New York City Civil Court Act, § 1604, and to file any tax return or other document or statement involving his official acts.

NYCE000257

3 of 4

NYCE000258

(13) Marshal Airday shall surrender his official identification card and his Marshal's badge to the Commissioner of DOI or her designated representative forthwith upon service of this Order on him.

Dated: New York, New York and
       Brooklyn, New York
                , 2012

FOR THE FIRST DEPARTMENT          FOR THE SECOND DEPARTMENT


_____    _____
LUIS A. GONZALEZ                 WILLIAM F. MASTRO
Presiding Justice                   Acting Presiding Justice

NYCE000259

# EXHIBIT M

**From:** KEITH SCHWAM [MS029@doi.nyc.gov]
**Sent:** Thursday, December 22, 2011 5:39 PM
**To:** ROSE GILL HEARN
**CC:** John Kantor; JOHN WALSH
**Subject:** Arrest of a City marshal

Commissioner, we were just notified by Ken Litwack that a City marshal, George Airday, was arrested last night (12/21/2011 at about 10 p.m.) at his home in the 50th pct (Bronx) on a domestic violence complaint by his fiancee. His licensed firearm, which Litwack reported was in a lock-box, was removed by the NYPD. He was ROR'd, do not Will ask Squad assistance to get arrest charged, details, and will follow up.
KS

NYCE000005

# EXHIBIT N

**From:** TERESA PINCKNEY
**Sent:** Tuesday, January 10, 2012 12:15 PM
**To:** KEITH SCHWAM
**Subject:** City Marshal George Airday

Received a telephone call from ADA Dylan Gordon, Bronx District Attorney's Office.  He is currently investigating the case against CM Airday.  Questions he had were 1) whether the marshal is carrying a weapon? 2) whether the marshal is permitted to take a plea to a criminal charge and keep his job. He stated that the injuries to the complainant a more severe than originally believed and that she had some broken ribs.  He may be adding additional charges including a strangulation.  He has requested hospital records for the complainant and he has been given photos of the alleged injuries by her.  His number is (718)

# EXHIBIT O

**From:** KEITH SCHWAM [MS029@doi.nyc.gov]
**Sent:** Thursday, January 19, 2012 4:35 PM
**To:** ROSE GILL HEARN
**CC:** JOHN KANTOR; JOHN WALSH; MICHAEL VITIELLO
**Subject:** Re: City Marshal Arrested

Yes.

>>> ROSE GILL HEARN 1/19/2012 4:34 PM >>>
Okay. We knew about the arrest on 12/21, right?

>>> KEITH SCHWAM 1/19/2012 3:14 PM >>>
Commissioner- yesterday evening City marshal George Airday, age 65, was arrested and charged with 2 counts of Criminal Possession of a Weapon (firearm) and Criminal Contempt, both class A misdemeanors. These are arrest charges. He was taken to a hospital with complaint of chest pain and has not been arraigned. The contempt charge and one weapon charge is based on his possession yesterday of a handgun, in his residence, in violation of an Order of Protection issued on December 22, 2012, which in turn was a result of his arrest the previous day on an assault charge in a domestic incident involving his fiancee. Yesterday, the police from the 50th Pct. went to Airday's Bronx residence in response to the NYPD Licensing Division's report that one of the firearms on his license was not turned in on 12/22/2011. I have told Ken Litwack that under these circumstances, Airday cannot be permitted to perform the duties of a marshal and that he should resign. Litwack does not disagree, although Airday has not reached that conclusion as of this time. I am sending both of them a letter that says the same and that unless Airday resigns we will be compelled to seek his immediate suspension and removal. I am also directing him pending further instructions to cease performing duties other than redeeming cars already in his custody (a function that his office staff handles). Will keep you posted.
Keith


Keith Schwam
Assistant Commissioner
NYC Department of Investigation
212 825-5958
kschwam@doi.nyc.gov

NYCE000019

# EXHIBIT P

**From:** KEITH SCHWAM [MS029@doi.nyc.gov]
**Sent:** Tuesday, January 24, 2012 7:51 PM
**To:** TERESA PINCKNEY
**CC:** RAYMOND CASABLANCA
**Subject:** Fwd: George Airday
**Attachment(s):** "George Airday.txt.msg", "email to Ken Litwack.01.20.2012.docx"

T - FYI and file: letter from Ken Litwack (attached to his email) and my email to him in response, both dated January 20, 2012. If we have not done so yet, let's upgrade the intake to an investigation. Pls assign it to yourself. Let's then do an investigative plan. It will be straightforward - obtain the criminal court complaint from Airday, direct him to forward any correspondence he may have received from NYPD license division and any relevant records to us, and request from NYPD license div records re his guns and any report re the January 18, 2012 arrest that can be shared with us. Ken Litwack told me today that he has a meeting with the ADA on Monday afternoon (January 30). By the end of that week, if Airday has not resigned, we'll have to draft charges. That will be based on Airday's failure to comply with applicable regulations and the order of protection with respect to firearms in his possession. Pls upload the pertinent documents to CMS and to paper case file, including the attached correspondence. Thanks.
KS

NYCE000026

From:   KEITH SCHWAM

To:   Esq. Kenneth D. Litwack

Date:   1/20/2012 9:05 PM

Subject:      Re: George Airday

Ken,

The letter that was attached to your email below asserts certain facts and arguments on behalf of the marshal but omits other important facts, particularly relating to the issues presented by the marshal's possession of a gun on January 18, 2012 and another gun on December 22, 2011. The omitted facts include the order of protection of December 22, 2011 that required the marshal to surrender all guns and the voucher that listed the five guns collected from his residence by the police on December 22, 2011, which did not include the gun that remained in the marshal's possession until his arrest of January 18, 2012. DOI received both of those documents from you as the marshal's representative. Their content was known or should have been known to the marshal, a public official with a background in law enforcement.

None of marshal's obligations and responsibilities, as an individual, a licensee, and a public official sworn to uphold the law, are transferable to anyone else, including police officers who secured and listed, for him among others, the guns they found in his residence.

The necessity or perceived necessity of responding to factual assertions and arguments at this moment is exactly what I had hoped to avoid. (I am not addressing at all the issues involving the assault charge.)

As I originally understood it from our discussion, the purpose of your letter today, and any ensuing response from me, was not going to be to rehash, proffer, argue, or assert facts relating to the issues involving the marshal's guns but instead merely to propose an interim agreement, for a very brief duration, under which the marshal would perform certain functions in his office, consistent with my letter to him of January 19, 2012, and to raise, subject to the approval of the Department of Finance, the possibility that another marshal would be permitted to tow vehicles on a very temporary basis in his place. That time period in my view would have been no longer than necessary for the marshal to produce any relevant records and make what I recognize would be a very difficult but unavoidable decision with respect to his office.

Therefore, I want to make clear that by declining to engage in a further exchange or correspondence I am not indicating agreement with any factual assertion or argument advanced on marshal Airday's behalf in your letter. It appears undisputed that the marshal was in possession of an unlicensed gun on and for an unspecified period before December 22, 2011, regardless of who its previous owner was, and was in possession of another gun contrary to his obligations under the order of protection. Any additional inferences, positive or negative, that could be drawn or imagined are beside the point.

NYCE000027

The outcome of these matters, as expressed in your letter, is not one that can be put off while a criminal proceeding runs its course. There are facts on record that simply cannot be reconciled with the marshal's legal obligations.

Let me know how the marshal wishes to proceed.

Sincerely,

Keith Schwam

Assistant Commissioner

NYC Department of Investigation

212 825-5958

****************************************************************

 kschwam@doi.nyc.gov >>> "Kenneth D. Litwack, Esq." < klitwack@aol.com > 1/20/2012 4:51 PM >>>


Dear Mr. Schwam:


Please see attached letter.  Thank you.




Kenneth D. Litwack, Esq.

Counselor at Law, P.C.

38-08 Bell Blvd, 2nd Floor

Bayside, NY 11361


Tel:  (718) 428-4806

Fax: (718) 947-2794

NYCE000028

**From:** Kenneth D. Litwack, Esq. [klitwack@aol.com]
**Sent:** Friday, January 20, 2012 4:52 PM
**To:** KEITH SCHWAM
**Subject:** George Airday
**Attachment(s):** "Scan letter to Schwam 1-20-12.pdf"

Dear Mr. Schwam:

Please see attached letter.  Thank you.

*Kenneth D. Litwack, Esq.*
*Counselor at Law, P.C.*
*38-08 Bell Blvd, 2nd Floor*
*Bayside, NY 11361*


***Tel:*** *(718) 428-4806*
***Fax:*** *(718) 947-2794*

NYCE000029

# KENNETH D. LITWACK, COUNSELOR AT LAW, P.C.

38-08 BELL BLVD., 2nd FLOOR
BAYSIDE, NY 11361
TEL: (718) 428-4806
FAX: (718) 947-2794
KLITWACK@AOL.COM

KENNETH D. LITWACK
————————————

TARA A. CHERRICK

PARALEGAL
DALUZA VILLA

**VIA E-MAIL**
Kschwam@doi.ny.gov

January 20, 2012

Mr. Keith Schwam
Assistant Commissioner
New York City Department of Investigations
80 Maiden Lane
New York, NY 10038

**Re:**    City Marshal George Airday

Dear Mr. Schwam:

I am following up on our conversation of earlier this morning in which I proposed that Marshal Airday be allowed to maintain his office with his duties severely circumscribed until the matters before the Criminal Court are sorted out. Under my proposal Marshal Airday will not be allowed to do any work whatsoever in the field. This can be accomplished by Stipulation. I have spoken to the Marshal and he will be willing to agree to this.

In speaking to the Marshal he indicated to me that the only work he does is property execution work, which includes car seizures on behalf of Parking Violations. He often has an Associate Marshal do Scofflaw seizures for him and the additional property executions that come into his office can be done in a similar fashion. I am very concerned that he would loose his badge, resulting in the loss of employment for about 45 people, based upon what to appears to be fictitious charges brought about by his former fiancé and based upon issues concerning his firearms that can easily be explained. As I indicated to you in our telephone conversation I believe that the charges brought by Ms. Schaefer are without foundation. There were two other individuals in George's apartment that evening who would have been able to observe any physical dispute between Ms. Shaffer and Marshal Airday but saw nothing.

Ms. Schaefer and Marshal Airday were involved in an automobile accident on December 3, 2011. Ms. Schaefer was taken to a hospital by ambulance complaining of head injuries and injuries to her body including her chest area. I believe that if there was any breaking of ribs that such damage occurred during this accident. The accident took place in Oklahoma. The Marshal was driving and Ms. Schaefer was taken to the Unity Health Center in Shawnee Oklahoma, where she refused to get X-rays and I am told gave the staff a very difficult time. When she returned to New York with Marshal Airday she was seen by a Dr. Bolton in White Plains complaining of head injuries as a result of the car accident. Clearly, I need time to investigate, to get a hold of her medical records and to review any current medical records that she has which indicate that she has fractured ribs.

NYCE000030

Ms. Schaefer has posted some pretty outrageous statements on her Facebook page complaining about the New York City Police Department and its treatment of her. She was intoxicated on the evening of the alleged incident between herself and my client and I believe that the EMS workers that responded that evening would be able to substantiate that she was intoxicated, uncooperative and hostile on that day.

I know that the issues surrounding the guns are disturbing to you. I can understand your concern but I believe that they can be easily explained. The additional gun that he was recently recovered is a licensed firearm which was recovered from the very same safe that the police previously recovered other firearms from on the day of the "Schaefer arrest". The District Attorney's complaint acknowledges that, and it appears that the Police overlooked this firearm when they initially searched the safe, having been directed there by Marshal Airday on the day of the initial arrest. The safe was cluttered with items and it is obvious that this one firearm was not observed by the officers who retrieved the other guns. The Marshal was not present when the officers recovered the other guns.

There is a question regarding an additional firearm that you believe may yet be unaccounted for. Marshal Airday states that he had informed the Police Department many years ago that that gun had been stolen. I have asked Marshal Airday to search his records to see if he can find any documentation of his report to the Police Department. He had stated that he would look for it but his version of the facts on this firearm can be independently verified. Hopefully the Police Department has its own record of this report. Marshal Airday's recollection regarding this gun must be correct and it is the only logical conclusion that can be drawn from just examining his carry permit. As you know, a business owner is only allowed two guns on a carry permit. Yet, the Police Department has continually listed this third gun as a "phantom gun" because it has never been found." Since the permit only allows for two guns and in fact three are listed it is clear that the Police Department continues to list this gun and will continue to list it until it is recovered. The Marshal says that he has been told this repeatedly when renewing the permit and there can be no other explanation for the Police Department listing three guns. This does not mean however that this gun was still in the Marshal's possession. It appears that this is just a record keeping procedure of the New York City Police Department.

Lastly, there was one unlicensed gun that was recovered from Marshal Airday's safe. That gun belong to his father and when his father passed away the Marshal put it in his safe for safe keeping. He has never fired that gun nor taken it out of his safe.

I know that there are some troubling facts here and I know that if any of the negative inferences that can be drawn from these facts are established it would not bode well for the Marshal. However, none of those negative inferences have been established. In all fairness to the Marshal, I am requesting that the Marshal be put on limited duty, pending the outcome of these matters. It would be a shame and wrong if the Marshal was penalized prior to our knowing what the truth is here.

Sincerely,

Kehneth D. Litwack

KDL/dv

**cc:**    City Marshal Airday

# EXHIBIT Q

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**       **John Kantor,**
              **Assistant Deputy Commissioner**

**FROM:**     **Keith Schwam,**
              **Assistant Commissioner**

**DATE:**     **January 23, 2012**

**SUBJ:**     **Weekly Status Report – Bureau of City Marshals**

I.

II.



III.

IV.

V.

VI.

VII.

VIII.   **Significant New Complaints or Matters:** City Marshal George Airday was arrested on charges relating to possession of handguns either not on his license or in his possession after an Order of Protection required his surrender of all guns. Discussions with his attorney re possible resignation are underway.

IX.

NYCE000023

Weekly update Marshals Bureau 01/23/2012
Page 2

X.    **Significant Meetings:**

XI.   **Other:**

2

NYCE000024

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**        **John Kantor,**
              **Assistant Deputy Commissioner**

**FROM:**      **Keith Schwam,**
              **Assistant Commissioner**

**DATE:**      **February 13, 2012**

**SUBJ:**      **Weekly Status Report – Bureau of City Marshals**

I.



II.

III.

IV.

V.

VI.   <u>**COIB/Disciplinary/Administrative Referrals**</u>:  Letters were exchanged with Stuart London's law firm with respect to City Marshal George Airday.  DOI's position is that Airday must resign.

VII.

VIII.

IX.

X.

XI.

NYCE000071

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**      **Victor Olds**
            **First Deputy Commissioner**

**CC:**      **John Kantor,**
            **Chief of Investigations**

**FROM:**    **Keith Schwam,**
            **Assistant Commissioner**

**DATE:**    **April 5, 2013**

**SUBJ:**    **Weekly Status Report – Bureau of City Marshals**



I.

**Year**

II.

III.

IV.

V.

VI.  **COIB/Disciplinary/Administrative Referrals**: Discussions are being held with counsel, Stuart London, Esq., for suspended City Marshal George Airday with respect to a possible fine as an outcome of his disciplinary proceeding, with Airday to be replaced at the end of his term in December 2013. Proceedings at OATH are adjourned for those discussions.   Airday remains suspended.

VII.

VIII.

IX.

X.

**XI.**

**XII.**

NYCE000748

Weekly update Marshals Bureau 04/05/2013
Page 2

XIII.

XIV.

XV.

XVI.

2

NYCE000749

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**      **Victor Olds**
             **First Deputy Commissioner**

**CC:**      **John Kantor,**
             **Chief of Investigations**

**FROM:**    **Keith Schwam,**
             **Assistant Commissioner**

**DATE:**    **April 12, 2013**

**SUBJ:**    **Weekly Status Report – Bureau of City Marshals**

I.    

II.

III.

IV.

V.

VI.   **COIB/Disciplinary/Administrative Referrals**:  Discussions are proceeding with counsel, Stuart London, Esq., for suspended City Marshal George Airday with respect to a stipulation to include a fine, with Airday to be replaced at the end of his term in December 2013. Proceedings at OATH are adjourned for those discussions. Airday remains suspended.

VII.  

VIII.

IX.

X.

**XI.**

Weekly update Marshals Bureau 04/12/2013
Page 2

**XII.**

XIII.

XIV.

XV.

XVI.

**NYCE000766**

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**         Victor Olds
                First Deputy Commissioner

**CC:**         John Kantor,
                Chief of Investigations

**FROM:**       Keith Schwam,
                Assistant Commissioner

**DATE:**       April 19, 2013

**SUBJ:**       Weekly Status Report – Bureau of City Marshals



I.

II.

III.

IV.

V.

VI.    **COIB/Disciplinary/Administrative Referrals**:  Discussions are proceeding with counsel, Stuart London, Esq., for suspended City Marshal George Airday with respect to a stipulation to include a fine, with Airday to be replaced at the end of his term in December 2013. Draft stipulations have been exchanged; Mr. London's draft in response to ours was received yesterday. We are reviewing and will respond within the next few days. Proceedings at OATH are adjourned for those discussions.   Airday remains suspended.

VII.

VIII.

IX.

X.

XI.

XII.

XIII.

Weekly update Marshals Bureau 04/19/2013
Page 2

XIV.

XV.



XVI.

2

NYCE000780

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

**TO:**        **Victor Olds**
              **First Deputy Commissioner**

**CC:**        **John Kantor,**
              **Chief of Investigations**

**FROM:**      **Keith Schwam,**
              **Assistant Commissioner**

**DATE:**      **May 3, 2013**

**SUBJ:**      **Weekly Status Report – Bureau of City Marshals**

---

I. 

II.

III.

IV.

V.

VI.   **COIB/Disciplinary/Administrative Referrals**:   Discussions continued with Stuart London, Esq., counsel for suspended City Marshal George Airday with respect to a possible stipulation to include a fine, with Airday to be replaced at the end of his term in December 2013. Proceedings at OATH are adjourned for those discussions. Airday remains suspended.

VII. 

VIII.

IX.

X.

**XI.**

**XII.**

XIII.

Weekly update Marshals Bureau 05/03/2013
Page 2

XIV.

XV.



XVI.

2

NYCE000807

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

| | |
|---|---|
| **TO:** | **Victor Olds**<br>**First Deputy Commissioner** |
| **CC:** | **John Kantor,**<br>**Chief of Investigations** |
| **FROM:** | **Keith Schwam,**<br>**Assistant Commissioner** |
| **DATE:** | **December 6, 2013** |
| **SUBJ:** | **Weekly Status Report – Bureau of City Marshals** |

I.
   Y
II.
III.
IV.
V.

VI.
VII.
VIII.
IX.
X.

XI.
XII.



NYCE000937

Weekly update Marshals Bureau 12/06/2013
Page 2

**XIII.**

**XIV.**

**XV.**

**XVI.**

**City Marshal Appointments:** Update: We expect that a new marshal, already approved and qualified, will be appointed to succeed City Marshal George Airday upon expiration of Airday's term on December 20. Special Investigator Caroline Tang-Alejandro is coordinating the prospective marshal's completion of the necessary statutory steps (bond, oath, badge, etc.).

**XVII.**

2

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

| | |
|---|---|
| **TO:** | **Victor Olds** |
| | **First Deputy Commissioner** |
| **CC:** | **John Kantor,** |
| | **Chief of Investigations** |
| **FROM:** | **Keith Schwam,** |
| | **Assistant Commissioner** |
| **DATE:** | **December 13, 2013** |
| **SUBJ:** | **Weekly Status Report – Bureau of City Marshals** |



Weekly update Marshals Bureau 12/13/2013
Page 2

**XIV.** 

**XV.**

**XVI.**

**City Marshal Appointments:** Update: We expect that a new marshal, already approved and qualified, will be appointed to succeed City Marshal George Airday upon expiration of Airday's term on December 20. Special Investigator Caroline Tang-Alejandro is coordinating the prospective marshal's completion of the necessary statutory steps (bond, oath, badge, etc.) (no change).

**XVII.** 

2

NYCE000944

**CITY OF NEW YORK**
**DEPARTMENT OF INVESTIGATION**

| | |
|---|---|
| **TO:** | **Victor Olds**<br>**First Deputy Commissioner** |
| **CC:** | **John Kantor,**<br>**Chief of Investigations** |
| **FROM:** | **Keith Schwam,**<br>**Assistant Commissioner** |
| **DATE:** | **December 20, 2013** |
| **SUBJ:** | **Weekly Status Report – Bureau of City Marshals** |

**I.**

**II.**

**III.**

**IV.**

**V.**

**VI.**

**VII.**

**VIII**

**IX.**

**X.**

**XI.**

**XII.**

**XIII**



NYCE000949

Weekly update Marshals Bureau 12/20/2013
Page 2

**XIV.**

**XV.**

**XVI.**



    **City Marshal Appointments:** Update: A letter of appointment for new City Marshal Frankie Alvarez signed by the Mayor will be issued on December 23, appointing Alvarez to the office that will be vacant upon the expiration of City Marshal George Airday's term on December 20. Alvarez will file his oath of office bond with the City Clerk on December 23, following approval of the bond by the Civil Court, as coordinated with those offices by Caroline Tang-Alejandro.  Airday will be informed on December 23 that his successor has been appointed.

**XVII.**

2

NYCE000950

# EXHIBIT R

**From:** KEITH SCHWAM [MS029@doi.nyc.gov]
**Sent:** Wednesday, February 08, 2012 6:59 PM
**To:** slondon@wll-law.com
**Subject:** Marshal Airday
**Attachment(s):** "Airday letter_1.pdf"

Stu - per our conversation, attached is a copy of DOI's letter to Marshal Airday dated January 30, 2012, which directed the marshal to provide certain records, specified in the letter, to DOI by 5 p.m. January 31. With the exception of the filed criminal complaint from the second arrest, which you provided on Feb. 2, the records have not been received. I would appreciate your providing or the marshal's providing the remaining records and your confirming your receipt of this email. Thanks for your courtesy.
Keith


Keith Schwam
Assistant Commissioner
NYC Department of Investigation
212 825-5958
kschwam@doi.nyc.gov

NYCE000060



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

January 30, 2012

Confidential

City Marshal George Airday
5720 Mosholu Avenue
Bronx, NY   10471

Dear Marshal Airday:

As indicated in previous correspondence, including Keith Schwam's letter to you dated January 19, 2012 (copy attached) it has come to the attention of the Department of Investigation (DOI) that you were arrested on January 18, 2012 and charged by the arresting officer with two counts of Criminal Possession of a Weapon (firearm) in the Fourth Degree and Criminal Contempt in the Second Degree, both class A misdemeanors.

By 5:00 p.m. on January 31, 2012, please provide DOI with a copy of the complaint filed in Criminal Court in relation to that arrest, along with any correspondence/notices you received from the New York City Police Department (NYPD) on or after December 22, 2011 regarding your handgun license(s), and any and all relevant records in your custody or control, including but not limited to (1) copies of all applications for handgun license(s) and renewals; (2) records reflecting the loss, theft, or transfer of any handgun and any notifications to the NYPD of such loss, theft or transfer; and (3) any and all records reflecting or related to (a) a Derringer .22 caliber handgun, and (b) your acquisition of the .25 caliber Hawes handgun referenced in NYPD Property Claims Invoice #200053659, a copy of which you provided to this office.

Thank you for your cooperation.

Sincerely,

Teresa Pinckney, Investigator
Bureau of City Marshals

c:  Kenneth Litwack, Esq

NYCE000061

# EXHIBIT S

**From:** TERESA PINCKNEY
**Sent:** Tuesday, January 31, 2012 12:34 PM
**To:** KEITH SCHWAM
**Subject:** Telephone conversation with Stuart London

London called to introduce himself as City Marshal Airday's attorney and he had several questions.  1)  Can Marshal Airday resume his tow operation using an Associate Marshal; 2) If he refuses to resign do we bring departmental charges against him and his trial goes to OATH.

London can be reached at (212) 964-8038  or cell: (917) 575-9879

NYCE000036

# EXHIBIT T

From: Domenech, Edgar
Sent: Thursday, February 09, 2012 5:34 PM
To: Jordan, Louis
Cc: Sammarco, Peter
Subject: Re: FW: Marshal Airday

Louis I support your decision not to reinstate him.

----- Original Message -----
From: Jordan, Louis
Sent: Thursday, February 09, 2012 04:06 PM
To: Domenech, Edgar
Subject: FW: FW: Marshal Airday

FYI
-----Original Message-----
From: KEITH SCHWAM [mailto:kschwam@doi.nyc.gov]
Sent: Thursday, February 09, 2012 2:20 PM
To: Jordan, Louis
Subject: Re: FW: Marshal Airday

Louis,
DOI did not approve Marshal Airday to resume towing for the City. In
fact, I told his attorney the opposite yesterday. There are two criminal
complaints filed in Supreme Court, Bronx, against Marshal Airday: one
arising from his arrest on December 21, 2011 for assault, menacing, and
harassment in a charged domestic violence incident, and the other arising
from his arrest on January 18, 2012, in which he is charged with criminal
contempt in the second degree, based on a NYC police officer's recovery
of a handgun from Airday's custody and control in his residence, in
violation of the Court's order of protection issued on December 22, 2012,
according to the filed criminal complaint. That order of protection was
issued in relation to the charged domestic violence incident. The order
of protection, among other things, required Airday to surrender all
handguns and firearms to the police.

I note that Airday's pistol licenses from the NYPD, which remain
suspended as a result of his December 21 arrest, were based on his work
as a City marshal.

Furthermore, I believe the DA and police investigation is continuing, and
the next court date on the criminal complaints is not until April 9,
2012.

My understanding is that it is DOF's discretionary decision to choose
which marshal or marshals to enforce the City's judgments, including the
decision not to have Airday towing for the City. I believe that is an
entirely appropriate decision, given the pending criminal charges,
including that of violating the Court's order of protection, particularly
when the work of a City marshal, for DOF and others, is to enforce court
orders. I also understand that you have additional operational concerns,
including, among others, Airday's failure to notify you or provide
information to DOF regarding his status in the weeks since his January 18
arrest, during which he was not towing.

DEF000945

I am available if you want to discuss. Thanks for your attention.
Keith


Keith Schwam
Assistant Commissioner
NYC Department of Investigation
212 825-5958
kschwam@doi.nyc.gov>>> "Jordan, Louis" <JordanL@finance.nyc.gov> 2/8/2012
5:35 PM >>> Hi Keith, I sent the Sheriff the email below. He responded by
requesting I get an official position from DOI.

_____

From: Jordan, Louis
Sent: Wednesday, February 08, 2012 5:26 PM
To: Domenech, Edgar; Sammarco, Peter
Subject: Marshal Airday


Received a call from Marshal Airday asking to be reinstated into the
scofflaw program while his process is being adjudicated. I told Marshal
Airday that he is not being reinstated due to lack of notification to DOF
of the incident and not hearing from him until I asked for the inventory,
which was yesterday February 7, 2012. He said his lawyer had spoke with
DOI and DOI was approving him to go back to work. My conversation with
DOI was different. I spoke with Keith and he felt that Marshal Airday
should not be reinstated to the program as well as I. My feeling is that
the case(s) are still going on and nothing has happened that I know of
that cleared him of charges. He will most likely try and challenge
everything but they serve in this program at our discretion. I am
forwarding a copy of page three of the SOP FYI, look at paragraph "H."


Confidentiality Notice: This e-mail communication, and any attachments,
contains confidential and privileged information for the exclusive use of
the recipient(s) named above. If you are not an intended recipient, or
the employee or agent responsible to deliver it to an intended recipient,
you are hereby notified that you have received this communication in
error and that any review, disclosure, dissemination, distribution or
copying of it or its contents is prohibited. If you have received this
communication in error, please notify me immediately by replying to this
message and delete this communication from your computer. Thank you.

DEF000946

# EXHIBIT U



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

February 10, 2012

By Electronic and Regular Mail
Stuart London, Esq.
London & Worth, LLP
111 John Street, Suite 640
New York, NY 10038

Re: City Marshal George Airday

Dear Mr. London:

I am writing to respond to your firm's letter dated February 10, 2012, which I received by electronic mail earlier today. That letter does not correctly state the position of the Department of Investigation ("DOI") with regard to Marshal Airday stemming from the facts and circumstances surrounding his recent arrests and the multiple criminal charges pending against him.

It is this Department's position that under the circumstances set forth below, Marshal Airday needs to step down, following a brief wind-down period. It is our hope that rather than attempting to prolong the process, the marshal will avail himself of the opportunity he is being offered to bring his business as a City marshal to an orderly and responsible conclusion, deal with the criminal charges he faces, and put this matter behind him. However, in the event Marshal Airday refuses to step down voluntarily, DOI will take appropriate action to curtail his functions as a City marshal.

As you know, Marshal Airday was arrested and is charged in Bronx Supreme Court, Criminal Division, with assault, menacing, and harassment in a domestic violence incident of December 21, 2011, and, in a separate complaint and arrest of January 18, 2012, with criminal contempt of a criminal court order of protection issued on December 22, 2011. The latter complaint charges that on January 18, 2012, a New York City Police detective observed Marshal Airday in custody and control of a handgun in a safe in his residence, in violation of the order of protection, which, among other things, required him to surrender all guns to the police. Furthermore, the police report of Marshal Airday's January 18, 2012 arrest states that on December 22, 2011 Marshal Airday was in possession of an unregistered gun, not on his license. Marshal Airday's previous attorney acknowledged to DOI that Marshal Airday was indeed in possession of the unlicensed gun that was found by the police in his safe.

NYCE000689

Stuart London, Esq.
Page 2

The charges pending against Marshal Airday are serious, and the facts on record are inconsistent with the obligation of every City marshal, Mayoral appointees, to maintain uncompromised standards of integrity in office and to obey the law in all their activities, both official and personal. *See* Marshals Handbook, Chapter I, section 1-1. Furthermore, the basis for Marshal Airday's pistol license, now suspended, was his occupation as a City marshal. Thus, the charges are directly related to his office. Furthermore a City marshal's central responsibility, and the reason for the existence of his office, is to provide trustworthy enforcement of the laws by independent officers who can be relied upon to execute sensitive court orders, such as evictions and the seizure of property from individuals, with strict adherence to rules and with sound judgment at all times, and particularly in volatile situations. Leaving aside the domestic violence allegations, Marshal Airday's failure to comply with a court order fully and scrupulously, while already facing criminal charges in a matter as serious as this one, demonstrates a lack of fitness for his office.

In addition, Marshal Airday has failed to provide required timely information and records to this office as required by rule. He is now 10 days overdue on producing specified records as directed by this office's letter of January 30, 2012.

Sincerely,

Keith Schwam
Assistant Commissioner

c:  Howard Sterinbach, Esq.

NYCE000690

# EXHIBIT V

From: KEITH SCHWAM
To: marshal.george.airday@gmail.com; slondon@wll-law.com
Date: 6/1/2012 10:28 AM
Subject: Papers Submitted to the Appellate Division

Dear Marshal Airday and Mr. London,

Attached hereto are copies of the papers that the Department of Investigation has submitted to the Appellate Division, which seek an order for the suspension of Marshal Airday pending a hearing on the attached charges and specifications.

I would appreciate confirmation that you have received this message and 3 attachments.

Thank you.


Keith Schwam
Assistant Commissioner
NYC Department of Investigation
212 825-5958
*kschwam@doi.nyc.gov*

D000383

# EXHIBIT W

**From:** Diana TORRES [ditorres@courts.state.ny.us]
**Sent:** Monday, June 11, 2012 2:39 PM
**To:** KEITH SCHWAM
**CC:** Susanna Rojas
**Subject:** Joint Administrative Order
**Attachment(s):** "JointAdministrativeOrder.pdf"

Dear Mr. Schwam:

Attached please find the Joint Administraive Order regarding Marshal Airday.  If you require a hard copy, please let me know.

Regards,

Diana Torres
Assistant to Susanna M. Rojas, Clerk of the Court
(212) 340-0406

NYCE000363

JOINT ADMINISTRATIVE ORDER 2012-1

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in them by law and by Section 1610 of the New York City Civil Court Act, and the provisions of Joint Administrative Orders Nos. 453 and 456 of the Appellate Divisions for the First and Second Departments, and in recognition of the Charges and Specifications against City Marshal George Airday, Badge No. 7, dated May 30, 2012, filed in their respective Departments of the Appellate Division by the Commissioner of the Department of Investigation ("DOI") of the City of New York, and upon the papers filed in opposition thereto, do hereby jointly order as follows:

(1) The Commissioner of DOI shall institute disciplinary proceedings against Marshal Airday based upon the Charges and Specifications filed with the Appellate Division, First and Second Judicial Departments. The disciplinary proceeding shall be conducted in accordance with Article 16 of the New York City Civil Court Act and Joint Administrative Orders 453 and 456.

(2) Marshal Airday shall be suspended from his office of New York City Marshal forthwith upon service upon him of this Order, the Charges and Specifications and DOI's letter to the Appellate Division dated May 30, 2012, and shall remain suspended until further Joint Order of the Appellate Divisions, First and Second Judicial Departments.

(3) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not perform any official act or function, apply for any court mandate except in relation to this proceeding, cause or permit another person to perform any official act or function for him, or refer any work or any person seeking a marshal's services to another person.

(4) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall immediately return to the sender each and every new request for his services that may come to him or his office; advise the sender that, by virtue of a court order, Marshal Airday cannot, until further notice, perform the requested services, and that the sender should seek the services of another enforcement officer; and return to the sender any advance payment of a fee or expense tendered in connection with such a request.

(5) During the period of suspension, Marshal Airday shall return any and all unexecuted court mandates that he has received or may receive, including all unexecuted warrants of eviction or ejectment, orders of seizure, property executions, and income executions, to the issuers thereof, and immediately return any and all executed court mandates to the appropriate courts.

(6) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not execute or cause or permit to be executed any transaction involving any of his official trust and operating accounts, including, but not limited to, deposits, transfers, disbursements, or withdrawals of money by any means whatsoever, including but not limited to the drafting or signing of checks, the use of debit or credit cards, the use of an ATM, telephone transfers, debit memos, and payments to third parties pursuant to any authorization or agreement by Marshal Airday whereby any such payment is made from any of the Marshal's official accounts.

NYCE000364

(7) During the period of suspension, the office of Marshal Airday shall be closed to the public. Any and all signs designating him as a City Marshal and any and all indicia that his office remains open to the public shall be removed from his office location by Marshal Airday immediately.

(8) Nothing in this Order shall relieve Marshal Airday of any responsibility or liability he may have for any debt or obligation that he may incur or may have incurred in either his official or personal capacity, including but not limited to his responsibility to maintain a bond pursuant to the New York City Civil Court Act, § 1604, and to file any tax return or other document or statement involving his official acts.

(9) Marshal Airday shall surrender his official identification card and his Marshal's badge to the Commissioner of DOI or her designated representative forthwith upon service of this Order on him.

Dated: New York, New York and
      Brooklyn, New York
      June 11, 2012

FOR THE FIRST DEPARTMENT

LUIS A. GONZALEZ
Presiding Justice

FOR THE SECOND DEPARTMENT

WILLIAM F. MASTRO
Acting Presiding Justice

2 of 2

NYCE000365

# EXHIBIT X



The City of New York
Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900
212-825-2404

June 13, 2012

City of New York
Office of Administrative Trials and Hearings
40 Rector Street, 6th Floor
New York, NY 10006-1705

Attention: Calendar Unit

**RE: City Marshal George Airday**

Dear Sir or Madam:

Pursuant to Joint Administrative Order 2012-1 ("JAO 2012-1"), issued by the Appellate Division First and Second Departments on June 11, 2012, the Commissioner of the Department of Investigation ("DOI") hereby designates the Office of Administrative Trials and Hearings ("OATH") to hear the enclosed Charges and Specifications against temporarily-suspended City Marshal George Airday. Enclosed are (1) a completed OATH intake sheet and copies of (2) the Charges and Specifications, (3) JAO 2012-1, (4) JAO 453, and (5) JAO 456.

JAO 2012-1, among other things, suspends City Marshal George Airday from office and orders the Commissioner of Investigation institute disciplinary proceedings against Marshal Airday in accordance with Article 16 of the New York City Civil Court Act ("CCA"), JAO 453, and JAO 456 on the enclosed Charges and Specifications, which DOI filed with the Appellate Division on May 30, 2012. Accordingly, the Commissioner of Investigation has instructed me to file the enclosed Charges and Specifications at OATH and to designate OATH to:

(1) hold a hearing on the Charges and Specification against Marshal Airday within sixty days from the date of service of JAO 2012-1 upon Marshal Airday;[1]

---

[1] Marshal Airday and his attorney were served with JAO 2012-1 and the Charges and Specifications on June 12, 2012. That is therefore the effective date of his summary suspension. Affidavits of service are attached.

NYCE000378

June 13, 2012
Page 2 of 2

(2) make a written record of such hearing and submit the same together with the administrative law judge's ("ALJ's") recommended findings of fact to the Commissioner of DOI;

(3) refer the entire hearing record, along with recommended findings of fact, to the Commissioner of Investigation.

To the extent that the Charges and Specifications allege that Marshal Airday was arrested on criminal charges (Charges Two and Three), the issues to be considered by the ALJ shall be (i) whether criminal charges against Marshal Airday have been filed with and remain pending in court at the time of the hearing, and (ii) whether the criminal charges pending in court warrant and constitute cause for Marshal Airday's continued suspension from office until their resolution. For purposes of this proceeding and designation, OATH should not make findings of fact as to the truth of the allegations contained in the criminal charges or as to the probable guilt or innocence of the marshal regarding the underlying charges. Rather, the factual issues to be determined are (1) whether each charge, if true, would warrant the imposition of a penalty on Marshal Airday up to and including removal; and (2) whether the pendency of each charge therefore constitutes cause to suspend Marshal Airday pending their resolution. This procedure comports with CCA § 1610, JAOs 453, 456, and 2012-1, and the relevant case law. *See Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011).

I respectfully request a conference be scheduled the week of June 18, 2012 for purposes of discussing a schedule and procedure for the hearing and any pre-hearing matters and that a hearing be scheduled for a day during the week of July 9, 2012. I will represent DOI in this matter. Stuart London, Esq. has informed DOI that he is representing Marshal Airday in this matter. I am available at (212) 825-2404 should you require additional information.

Respectfully submitted,

Marjorie Landa
Deputy Commissioner/General Counsel

cc:    George Airday
       Stuart London, Esq.

NYCE000379

## OATH INTAKE SHEET

*PLEASE COMPLETE ALL SECTIONS AND SUBMIT THIS FORM TO THE CALENDAR UNIT WITH THE PETITION*
*E.MAIL TO: OATHCAL@OATH.NYC.GOV OR (FAX 212-442-4910). CALENDAR DATES WILL BE CONFIRMED*
*AFTER THIS FORM IS FILED.*

### CASE INFORMATION

**Civil Serv. Law:** ☐ § 71 ☐ § 72 ☐ § 73 ☐ § 75 ☐ § 210  **Contract:** ☐ § 324 ☐ CDRB  **Conflicts of Interest** ☐
**Labor Law** ☐  **Loft Law** ☐  **Padlock Law** ☐  **License/Regulatory** (specify rule or law):
Other (specify): JOINT ADMINISTRATIVE ORDER 2012-1 (attached)

**Parties:** *If more than one party on either side, please provide additional identifying information for each on separate sheet.*
Petitioner: NEW YORK CITY DEPARTMENT OF INVESTIGATION
Appearing by: MARJORIE B. LANDA, DEPUTY COMMISSIONER / GENERAL COUNSEL
Address: 80 MAIDEN LANE, NEW YORK, NY 10038
Phone: 212 825 2404    Fax: 212 825 2505
E Mail Address: Mlanda @ doi.nyc.gov
Respondent: GEORGE AIRDAY
Address: 5720 MOSHOLU AVENUE, BRONX, NY
Phone: 718 601 7320    Fax: 718 601 7396
Date petition or initiating papers served: 06/12/12    Service was by: ☑ personal ☐ mail ☐ both
Was a pre-trial suspension or similar pre-trial action imposed? ☑ Yes ☐ No  If so, date: 06/12/12

### CALENDAR INFORMATION

*OATH'S RULES ENCOURAGE SELECTION OF TRIAL AND CONFERENCE DATES BY ALL PARTIES JOINTLY. IN THE EVENT*
*OF EX PARTE SCHEDULING, OATH'S RULES REQUIRE SERVICE OF THE NOTICE ON ALL OTHER PARTIES WITHIN ONE*
*BUSINESS DAY (48 RCNY § 1-26(D)).*

Have you identified opposing counsel or representative? ☑ Yes ☐ No  If so, please provide:
Name: STUART LONDON, LONDON & WORTH, LLP
Address: 111 JOHN STREET, SUITE 640, NEW YORK, NY 10038
Phone: 212 964 8038    Fax: 212 964 3144
E Mail Address: slondon@ll-law.com

Have you consulted with opposing counsel, representatives or unrepresented parties about available dates? ☐ Yes ☑ No
If so, list mutually available dates:
Select calendar options: ☑ Conference Calendar ☑ Trial Calendar ☐ Open Status - please attach statement why Open Status is
requested. *If you require expedited calendar dates, please complete Calendar Preference Application on other side.*
Has this case been filed at OATH before?  ☐ Yes ☑ No  If yes, so, please attach statement of reasons for refiling.
Please estimate the number of witnesses for each side: Pet'r. : 1    Resp. : ___ Number of days for trial: 1
Intake sheet filed by: M LANDA    Phone: 212 825 2404 Fax: 212 825 2505 Date: 06/13/12

*DO NOT WRITE BELOW THIS LINE*

### OATH CALENDAR ACTION

*THE FOLLOWING CALENDAR ACTIONS ARE CONFIRMED BY _____ :*
Assigned Calendar Date(s): _____ Index No.: _____ ALJ: _____
Comments: _____

Revised 04/11

NYCE000380

## APPLICATION FOR OATH CALENDAR PREFERENCE

*THIS FORM IS TO BE COMPLETED AND FILED WITH THE OATH INTAKE SHEET WHEN REQUESTING CALENDAR DATES ON AN EXPEDITED BASIS. EXPEDITED CALENDAR DATES ARE USUALLY SET ON LESS THAN TWO WEEKS' NOTICE. PLEASE COMPLETE ALL SECTIONS AND SUBMIT TO THE CALENDAR UNIT (FAX 212-442-4910).*

**Parties:**

Petitioner: NYC DEPT OF INVESTIGATION Respondent: GEORGE AIRDAY

Calendar date(s) requested: Wk of 6/18/12    Wk of 7/9/12

Reasons for calendar preference: ☑ Suspension or other pre-trial action noted on Intake Sheet    ☑ Legally required (specify provision): Civil Court Act §1610    ☐ Other, specify: _____

If this application is filed more than two business days after pre-trial action, please state reasons for delay in filing: N/A

Will expedited treatment of other phases of the case be requested? ☑ Yes  ☐ No

Name of applicant for calendar preference: MARJORIE LANDA    Date: 06/13/12

Phone: 212 825 2404    Fax: 212 825 2505

---

### DO NOT WRITE BELOW THIS LINE

First dates offered: _____    _____    _____

Dates accepted: _____    _____    _____

Reasons for declining first offered dates: _____

Action on Application:    ☐ Grant    ☐ Deny    ☐ More Information Needed

Reason: _____

Application Reviewed by: _____    Date: _____

Comments: _____

Revised 04/11

NYCE000381

CITY OF NEW YORK
DEPARTMENT OF INVESTIGATION

In the Matter of the
Charges and Specifications
- against -
GEORGE AIRDAY
New York City Marshal - Badge #7

Pursuant to §1610 of the New York City Civil Court Act and Joint Administrative Orders #453 and #456 of the Appellate Division for the First and Second Departments, dated November 12, 1975, and February 27, 1976, respectively, you are hereby charged as follows:

| Charge number | Rules Violated and Specifications |
|---|---|
| Charge One | New York City Marshals Handbook of Regulations, Chapter I, § 1-9 (a), (b) |

From on or about January 31, 2012 continuing through the present, you interfered and failed to cooperate fully with an investigation by the Department of Investigation ("DOI") concerning (1) handguns that may have been in your possession or custody at various times and (2) one or more handgun licenses you obtained from the New York City Police Department ("NYPD") based in whole or part on your occupation as a New York City Marshal. Specifically, on January 30, 2012, DOI directed that you provide to DOI by the next day copies of any correspondence and notices you received from the NYPD on or after December 22, 2011 regarding your handgun license(s), and any and all relevant records in your custody or control, including but not limited to (1) copies of all applications for handgun license(s) and renewals, (2) records reflecting the loss, theft, or transfer of any handgun and any notifications to the NYPD of such loss, theft or transfer, and (3) any and all records reflecting or related to (a) a Derringer .22 caliber handgun, and (b) your acquisition of a .25 caliber Hawes handgun listed in an NYPD Property Claims Invoice as having been recovered from your residence. You have failed and refused to provide the above-described documents and records to DOI and have indicated that it is your intention not to produce those documents and records unless and until formal disciplinary charges are filed.

NYCE000382

Charge Two            Civil Court Act § 1610; New York City Marshals Handbook of Regulations, Chapter I, § 1-1

On or about December 21, 2011, you were arrested, and you were subsequently charged with (1) assault in the third degree (Penal Law § 120.00(1)), (2) menacing in the third degree (Penal Law § 120.15), and (3) harassment in the second degree (Penal Law § 240.26(1)). The allegations contained in the accusatory instrument, if true, warrant your removal or other penalty. The pendency of these charges therefore warrants your suspension pending their resolution.

Charge Three           Civil Court Act § 1610; New York City Marshals Handbook of Regulations, Chapter I, § 1-1

On or about January 18, 2012, you were arrested, and you were subsequently charged with criminal contempt in the second degree (Penal Law § 215.50(3)), in that, according to the accusatory instrument filed and pending in the Bronx Supreme Court, Criminal Division, you engaged in intentional disobedience or resistance to the lawful process or other mandate of a court in a case not involving or growing out of a labor dispute. The allegations contained in the accusatory instrument, if true, warrant your removal or other penalty. The pendency of these charges therefore warrants your suspension pending their resolution.

Dated:       New York, New York
              May 30, 2012

                               ROSE GILL HEARN, Commissioner
                               New York City Dept. of Investigation

                               By _____
                                 Keith Schwam
                                 Assistant Commissioner
                                 Director of the Bureau of Marshals

Date Served: _____

By: _____

Page 2

NYCE000383

JOINT ADMINISTRATIVE ORDER 2012-1

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in them by law and by Section 1610 of the New York City Civil Court Act, and the provisions of Joint Administrative Orders Nos. 453 and 456 of the Appellate Divisions for the First and Second Departments, and in recognition of the Charges and Specifications against City Marshal George Airday, Badge No. 7, dated May 30, 2012, filed in their respective Departments of the Appellate Division by the Commissioner of the Department of Investigation ("DOI") of the City of New York, and upon the papers filed in opposition thereto, do hereby jointly order as follows:

(1) The Commissioner of DOI shall institute disciplinary proceedings against Marshal Airday based upon the Charges and Specifications filed with the Appellate Division, First and Second Judicial Departments. The disciplinary proceeding shall be conducted in accordance with Article 16 of the New York City Civil Court Act and Joint Administrative Orders 453 and 456.

(2) Marshal Airday shall be suspended from his office of New York City Marshal forthwith upon service upon him of this Order, the Charges and Specifications and DOI's letter to the Appellate Division dated May 30, 2012, and shall remain suspended until further Joint Order of the Appellate Divisions, First and Second Judicial Departments.

(3) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not perform any official act or function, apply for any court mandate except in relation to this proceeding, cause or permit another person to perform any official act or function for him, or refer any work or any person seeking a marshal's services to another person.

(4) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall immediately return to the sender each and every new request for his services that may come to him or his office; advise the sender that, by virtue of a court order, Marshal Airday cannot, until further notice, perform the requested services, and that the sender should seek the services of another enforcement officer; and return to the sender any advance payment of a fee or expense tendered in connection with such a request.

(5) During the period of suspension, Marshal Airday shall return any and all unexecuted court mandates that he has received or may receive, including all unexecuted warrants of eviction or ejectment, orders of seizure, property executions, and income executions, to the issuers thereof, and immediately return any and all executed court mandates to the appropriate courts.

(6) During the period of suspension, except as expressly authorized by the Commissioner of DOI or her designee, Marshal Airday shall not execute or cause or permit to be executed any transaction involving any of his official trust and operating accounts, including, but not limited to, deposits, transfers, disbursements, or withdrawals of money by any means whatsoever, including but not limited to the drafting or signing of checks, the use of debit or credit cards, the use of an ATM, telephone transfers, debit memos, and payments to third parties pursuant to any authorization or agreement by Marshal Airday whereby any such payment is made from any of the Marshal's official accounts.

NYCE000384

(7) During the period of suspension, the office of Marshal Airday shall be closed to the public. Any and all signs designating him as a City Marshal and any and all indicia that his office remains open to the public shall be removed from his office location by Marshal Airday immediately.

(8) Nothing in this Order shall relieve Marshal Airday of any responsibility or liability he may have for any debt or obligation that he may incur or may have incurred in either his official or personal capacity, including but not limited to his responsibility to maintain a bond pursuant to the New York City Civil Court Act, § 1604, and to file any tax return or other document or statement involving his official acts.

(9) Marshal Airday shall surrender his official identification card and his Marshal's badge to the Commissioner of DOI or her designated representative forthwith upon service of this Order on him.

Dated: New York, New York and
        Brooklyn, New York
        June 11, 2012

FOR THE FIRST DEPARTMENT                FOR THE SECOND DEPARTMENT

LUIS A. GONZALEZ                        WILLIAM F. MASTRO
Presiding Justice                       Acting Presiding Justice

2 of 2

NYCE000385

## Joint Administrative Order 453

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in each of them, and for the purpose of providing controls and close supervision of City Marshals, do hereby jointly order as follows:

(1) The Commissioner of Investigation of the City of New York or his designee, is empowered to supervise and monitor the official acts of New York City Marshals and to take complaints, make inquiries and conduct investigations into all aspects of marshals' activities.

(2) The Commissioner of Investigation or his designee, in order to investigate and monitor the activities of city marshals, may hold hearings, compel the attendance of and examine under oath a marshal and his employees regarding the official acts of any marshal.

(3)(a) Each city marshal shall keep detailed books and records and maintain bank accounts as prescribed by the Appellate Divisions or the Department of Investigation.

(b) A city marshal's official books, records and bank accounts are public records and as such are subject to unannounced inspections by the Department of Investigation or anyone designated for that purpose by the Commissioner of Investigation or the Appellate Divisions.

(c) Should the Commissioner of Investigation deem it proper, the Department of Investigation may take into its custody any or all of the official records of a city marshal for the purpose of inspecting them.

(d) Each city marshal shall surrender all official books and records including, but not limited to, cash books, docket books, check books, bank statements, and cancelled checks to the Department of Investigation upon termination of office. Should it become necessary, access to such official books and record for the purpose of examination shall be accorded to the city marshal surrendering the same. Upon termination of office, each city marshal shall further prepare a final report of his official acts, as prescribed by the Department of Investigation, which shall include a final statement of monies held in trust, expenses incurred, and fees earned.

(e) A city marshal is entitled to only those fees for those services which are prescribed by law and set forth in an official schedule of fees issued by the Commissioner of Investigation. A city marshal shall perform all other services required of him by law without any other fees or charges, except as otherwise expressly prescribed by law. No fee to which a city marshal is entitled may be waived without specific written authorization of the Commissioner of Investigation.

(f) Each city marshal shall henceforth, in accordance with the procednres prescribed by the Department of Investigation, provide for a fiduciary who shall, upon the death or incapacity of said marshal, assume complete responsibility for the marshal's bank accounts and official records, and shall distribute any monies held in trust or otherwise collected by the marshal to the proper judgment creditors or to any other individual(s) to whom such monies are due and owing. Such a fiduciary shall be compensated at the marshal's own expense.

1

NYCE000386

(4)  (a)The Commissioner of Investigation is empowered to continue to issue directives regarding marshals' official day to day activities including, but not limited to, the official records to be kept by city marshals, the procedures for performing their duties, and the conduct of marshals and their employees. Copies of all directives shall be forwarded to the Appellate Divisions, and each directive shall remain in full force and effect unless and until nullified by joint order of both Appellate Divisions.

(b)Any handbook of regulations for city marshals which may be promulgated by the Department of Investigation shall become effective upon the approval of both Appellate Divisions.  Any substantial policy changes therein shall require similar approval.  However, copies of any other changes therein by directive or otherwise shall be forwarded to the Appellate Divisions and such changes shall remain in full force and effect unless and until nullified by joint order of both Appellate Divisions.

(5)The Director of the Bureau of Marshals at the Department of Investigation or any other person or persons designated by the Commissioner of Investigation may, after an investigation, present evidence of incompetency, misconduct, or other wrongdoing as set forth in Section (6) herein to the Commissioner of Investigation. The Commissioner may accordingly designate a deputy commissioner, assistant commissioner, or other qualified person to hear charges as provided herein or, in the alternative, at the option of the Commissioner, refer these charges and this evidence to the Appellate Divisions for disciplinary action or removal proceedings.

(6)  (a)The Commissioner of Investigation may, after a hearing on charges preferred against a city marshal, impose penalties upon him including, but not limited to, suspension from the performance of his official duties for a period not to exceed six months for violation of the civil laws, the rules of the Appellate Divisions of the First and Second Departments, the rules of the Civil Court of the City of New York, the directives of the Department of Investigation, or for incompetency or misconduct.

(b)A city marshal against whom such disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him, and shall be allowed at least eight days for answering the same in writing. The marshal shall be entitled to a full and complete hearing with the assistance and presence of counsel.

(c)The hearing upon such charges shall be held by such deputy commissioner, assistant commissioner, or other person designated by the Commissioner of Investigation for that purpose.

(d)The deputy commissioner or assistant commissioner holding such hearing shall, upon the request of the city marshal against whom charges are preferred, permit him to be represented by counsel, and shall allow him to summon witnesses on his behalf.  The burden of proving incompetency, misconduct or other wrongdoing shall be upon the Director of the Bureau of Marshals or other person designated by the Commissioner of Investigation for the purpose of preferring charges and shall be by a fair preponderance of evidence.  The deputy or assistant commissioner holding such hearing shall receive evidence in the same manner as if this hearing were held pursuant to section 75 of the Civil Service Law, in that compliance with technical rules of evidence shall not be required.

2

(e)If the city marshal is found guilty, a transcript of the hearing, and a written statement of the determination and the reason therefor, shall be filed in the office of the Department of Investigation. A copy of the transcript shall, upon request of the city marshal affected, be furnished to him without charge.

(f)If desired, the city marshal may appeal any decision by the Commissioner of Investigation to the appellate divisions. The marshal shall file such appeal in writing within 20 days after service of written notice of the determination to be reviewed, such written notice to be delivered personally or by registered mail to the last known office address of such city marshal. When notice is given by registered mail, such city marshal shall be allowed an additional three days in which to file an appeal.

(7)A marshal, after being furnished with a copy of the charges preferred against him, may knowingly waive a hearing as provided in subdivision (6) of this section, and agree to a penalty prescribed by the Commissioner of Investigation.

(8)Perjury by a city marshal or his failure to testify concerning his official duties at an investigative or administrative hearing held at the Department of Investigation after being granted immunity from the use of the testimony in a criminal prosecution shall be ground for removal.

(9)Failure to comply with penalties imposed by the Commissioner of Investigation shall be ground for removal.

This Order is effective immediately and shall remain in full force and effect unless and until modified or nullified by Joint Order of both Appellate Divisions.

Dated:   New York, N.Y. and
Brooklyn, New York
November 12, 1975

FOR THE FIRST DEPARTMENT        FOR THE SECOND DEPARTMENT

/S/                             /S/
HAROLD A. STEVENS               FRANK A. GULOTTA
Presiding Justice               Presiding Justice

22 NYCRR § 635.9

3

NYCE000388

# Joint Administrative Order 456

The Appellate Division of the Supreme Court, First Judicial Department, and the Appellate Division of the Supreme Court, Second Judicial Department, pursuant to the authority vested in each of them, and for the purpose of supplementing and amending their joint administrative order (J.ADM 453 dated November 12, 1975), with respect to providing controls and close supervision of City Marshals, do hereby, effective immediately, jointly order as follows:

(1) Any and all charges preferred by the Commissioner of Investigation shall be in writing and filed with both Appellate Divisions pursuant to Section 1610 of the Civil Court Act.

(2) The Commissioner of Investigation or his designee, as provided in paragraph (5) of Joint Administrative Order #453, may thereupon conduct hearings on the charges filed with both Appellate Divisions, except with respect to such charges warranting immediate suspension of a city marshal pending a hearing as hereinafter provided.

(3) Should the Commissioner of Investigation, following a hearing, conclude that a penalty in excess of a suspension of six months is warranted, he may impose such six months' suspension, and shall thereupon refer the entire matter together with the minutes of all proceedings had therein and his report and recommendations to both Appellate Divisions for their joint consideration and disposition.

(4) Should the Commissioner of Investigation deem the charges to be of such a nature as to warrant the immediate suspension of a city marshal pending a hearing on removal proceedings, he shall not conduct such hearings or proceedings but shall file such charges in writing with both Appellate Divisions pursuant to Section 1610 of the Civil Court Act, together with his request for the immediate suspension of such city marshal and for such removal proceedings as the Appellate Divisions may be advised to pursue under the circumstances.

(5) In all other respects the provisions of Joint Administrative Order #453 dated November 12, 1975, shall remain in full force and effect.

Dated:   New York, N.Y. and
Brooklyn, New York
February 27, 1976

FOR THE FIRST DEPARTMENT
DEPARTMENT

FOR THE SECOND

/S/

HAROLD A. STEVENS
Presiding Justice

/S/

FRANK A. GULOTTA
Presiding Justice

NYCE000389

## AFFIDAVIT OF SERVICE ON INDIVIDUAL

STATE OF NEW YORK   )

                                 ss.:

COUNTY OF NEW YORK)

Caroline Tang-Alejandro, being duly sworn, deposes and says:

1. I am over the age of 18 years, and am not a party to this action.

2. On the 12th day of June, 2012 at 9:35 o'clock in the morning, at 5720 Mosholu Avenue, Bronx, New York, I served the within (a) Joint Administrative Order 2012-1 of the Appellate Division, First and Second Departments, dated June 11, 2012, (b) charges and specifications against City Marshal George Airday, dated May 30, 2012, and (c) letter dated May 30, 2012, addressed to the Presiding Justices of the Appellate Division, First and Second Departments, upon City Marshal George Airday by delivering to and leaving personally with City Marshal George Airday, a true copy thereof.

3. The description of the person who I served is as follows: sex: male; skin color: white; hair color: white; approximate age: 65; approximate weight: 195 lbs.

4. The person I served identified himself as George Airday.

*[signature]*

Sworn to before me this ...........12................................

day of ....June..........................., 20 12..........

.............................................................
.....*[signature]*..........................................

DAVID R. VOGEL
NOTARY PUBLIC, STATE OF NEW YORK
No. 01VO6243881
Qualified in Westchester County
Commission Expires June 27, 2015

NYCE000390

## AFFIDAVIT OF SERVICE ON INDIVIDUAL

STATE OF NEW YORK   )

                         ss.:

COUNTY OF NEW YORK)

Caroline Tang-Alejandro, being duly sworn, deposes and says:

    1. I am over the age of 18 years, and am not a party to this action.

    2. On the 12th day of June, 2012 at 12:10 o'clock in the afternoon, at 111 John Street, New York, New York, I served the within (a) *Joint Administrative Order 2012-1* of the Appellate Division, First and Second Departments, dated June 11, 2012, (b) charges and specifications against City Marshal George Airday, dated May 30, 2012, and (c) letter dated May 30, 2012, addressed to the Presiding Justices of the Appellate Division, First and Second Departments, on London & Worth, LLP, attorneys for City Marshal George Airday, by delivering to and leaving with a person of suitable age and discretion who identified herself as Elaine Sadik a true copy thereof.

    3. The description of the person who I served is as follows: sex: female; skin color: white; hair color: black; approximate age: 55; approximate weight: 165 lbs.

*Caroline Tang-Alejandro*

Sworn to before me this .....12.....................................

day of ....June....................................., 20 ..12.......

......................................................................... 06-12-2012

DAVID R. VOGEL
NOTARY PUBLIC, STATE OF NEW YORK
No. 01VO6243881
Qualified in Westchester County
Commission Expires June 27, 2015

NYCE000391

# EXHIBIT Y

```
                    THE CITY OF NEW YORK
                  OFFICE OF ADMINISTRATIVE
                   TRIALS AND HEARINGS


P R E S E N T:        FAYE LEWIS
                      Administrative Law Judge




_____


In the matter of:

     DEPARTMENT OF INVESTIGATION,

                         Petitioner,

                                     Index No.
                                     12-2038
          - against -


     GEORGE AIRDAY,

                      Respondent.
_____



          July 2, 2012

          Office of Administrative Trials and Hearings
          40 Rector Street
          New York, New York 10006
```

A P P E A R A N C E S:


MARJORIE LANDA, ESQ.
BENET KEARNEY, ESQ.
Attorney for the Petitioner
Department of Investigation
80 Maiden Lane
New York, NY 10038

STUART LONDON, ESQ.
HOWARD STERNBACH, ESQ.
Attorneys for the Respondent
London and Worth
111 John St., Suite 640
New York, NY 10038

NYCE000464

I N D E X                                          3

PETITIONER'S                                            VOIR
WITNESS        <u>DIRECT</u>  <u>CROSS</u>  <u>REDIR</u>  <u>RECROSS</u>  <u>DIRE</u>


RESPONDENT'S                                            VOIR
WITNESS        <u>DIRECT</u>  <u>CROSS</u>  <u>REDIR</u>  <u>RECROSS</u>  <u>DIRE</u>


E X H I B I T S


<u>ALJ</u>                <u>DESCRIPTION</u>            <u>I.D.</u>  <u>IN EV.</u>


<u>PETITIONER</u>         <u>DESCRIPTION</u>            <u>I.D.</u>  <u>IN EV.</u>


<u>RESPONDENT</u>         <u>DESCRIPTION</u>            <u>I.D.</u>  <u>IN EV.</u>

NYCE000465

1           ALJ LEWIS:  All right, we are on the record.

2     This is a matter of the Department of Investigation

3     against George Airday, OATH Index number 2038 of 2012.

4     Today's date is July 2nd, 2012, and the time is

5     approximately 2:30 in the afternoon.  This is Judge

6     Lewis presiding over a conference.  Before I do

7     anything else, let me ask the attorneys to please

8     state your appearances for the record.

9           MS. MARJORIE LANDA:  Marjorie Landa, for the

10    Department of Investigation.

11          ALJ LEWIS:  Okay.

12          MS. BENET KEARNEY:  Benet Kearney, that's K-

13    E-A-R-N-E-Y, also with the Department of

14    Investigation.

15          ALJ LEWIS:  Okay.

16          MS. LANDA:  And with us as an observer is

17    John Margiada [phonetic]--

18          ALJ LEWIS:  Okay.

19          MS. LANDA:  --who's not a Department of

20    Investigation employee, but she's working with us--

21          ALJ LEWIS:  Okay.

22          MS. LANDA:  --on marshal matters.

23          ALJ LEWIS:  Okay.

24          MR. STUART LONDON:  Stuart London, for

25    George Airday, the Respondent.

NYCE000466

1                MR. HOWARD STERNBACH:  Howard Sternbach,

2        also for George Airday.

3                ALJ LEWIS:  Okay, thank you.  And both of

4        you with London and Worth?

5                MR. LONDON:  Yes.

6                ALJ LEWIS:  Okay, very good.  All right,

7        well it's my understanding that a resolution of this

8        matter has been reached, which would permit a

9        withdrawal of this case without prejudice.  So, I'm

10        going to invite one of you, Ms. Landa--

11                MR. LONDON:  Judge, I have spoken to my

12        client, George Airday, who was a marshal.  Although

13        he's been stripped of his duties, he's still

14        technically a marshal under suspension.  He

15        voluntarily and unequivocally consents to a voluntary

16        suspension of all his duties connected with being a

17        marshal until there has been a resolution of the

18        criminal matter, which is pending.  It's currently

19        pending August 7th for trial in Bronx criminal court,

20        and when that matter is disposed of, then the

21        Department of Investigation has the right to re-

22        calendar all three charges and proceed and go forward.

23                Just so the court is aware, he has two cases

24        pending.  One is the assault in the third degree, the

25        second is a contempt charge.  And so the record is

NYCE000467

1           clear, I think it would be important that both matters

2           have been resolved criminally before we go forward in

3           an OATH proceeding because both directly affect his

4           ability to serve competently as a marshal.

5                   ALJ LEWIS:  All right, so the voluntary

6           suspension is really until there's a resolution of his

7           criminal matters, plural.

8                   MR. LONDON:  Correct.

9                   ALJ LEWIS:  Correct, okay.  Ms. Landa?

10                  MS. LANDA:  Yes, that reflects the agreement

11          that we've reached.  It's without prejudice too, going

12          forward at the end of the criminal matter that is

13          pending in criminal court in the Bronx.

14                  ALJ LEWIS:  Okay.  If that is the case,

15          then, I will mark this as case settled.

16                  MS. LANDA:  Just one--

17                  ALJ LEWIS:  Yes?

18                  MS. LANDA:  --one further point is that

19          under the Civil Court Act, it says that the hearing

20          after we file the charges has to take place within 60

21          days, and I just want to note that there should be a

22          waiver of that 60 days.  We filed the charges, but it

23          says for good cause, that can be waived, the

24          stipulation, I believe, to be good cause.

25                  ALJ LEWIS:  Are you waiving--

NYCE000468

```
 1              MR. LONDON:  And we waive the 60-day

 2         requirement, of course.

 3              ALJ LEWIS:  Okay.  All right, then.  We are

 4         concluded.  I am going to have the trial date vacated.

 5         I will get you both a transcript of this as soon as it

 6         comes back, which should be a couple of weeks.  If you

 7         need it sooner, I can get you a disc, I think, okay?

 8         Thank you very much.

 9              MR. LONDON:  Thank you.

10              MS. LANDA:  Yeah, thank you very much.

11              [END OF HEARING]
```

NYCE000469

8

## C E R T I F I C A T E

I, Adrienne Kendrick certify that the foregoing transcript

of proceedings in the New York City Office of

Administrative Trials and Hearings, Department of

Investigations v. George Airday, Index No. 12-2038 was

prepared using standard electronic transcription equipment

and is a true and accurate record of the proceedings.


Signature  _Adrienne Kendrick_

Date  __July 16, 2012_____

Pages  __1 - 8_____

NYCE000470

# EXHIBIT Z



## The City of New York
### Department of Investigation

ROSE GILL HEARN
COMMISSIONER

80 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

March 7, 2013

City of New York
Office of Administrative Trials and Hearings
40 Rector Street, 6th Floor
New York, NY 10006-1705

Attention: Calendar Unit

**RE: Department of Investigation v. George Airday, Index No. 12-2038**

Dear Sir or Madam:

At a July 2, 2012 conference in front of ALJ Lewis, the New York City Department of Investigation ("DOI") withdrew without prejudice three administrative charges it had filed against City Marshal George Airday pending the resolution of two criminal matters in which Marshal Airday was a defendant in Bronx Criminal Court. It is my understanding that those matters have now been resolved. DOI therefore seeks to re-instate Charge One of the enclosed charges and specifications, which were served on Marshal Airday on June 12, 2012. DOI withdraws Charges Two and Three.

I respectfully suggest that a conference be scheduled during the week of April 8, 2013 for purposes of discussing a schedule and procedure for the hearing and any pre-hearing matters. Deputy Commissioner for Legal Affairs and General Counsel Marjorie Landa will represent DOI in this matter. Stuart London, Esq. and Howard Sterinbach, Esq. of London & Worth LLP have appeared on behalf of Marshal Airday in this matter and have also requested that it be put back onto OATH's calendar. I am available at (212) 825-0662 should you require additional information.

Respectfully submitted,

Benet J. Kearney
Deputy General Counsel

cc:    George Airday
       Stuart London, Esq.

Encl.