UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
GEORGE AIRDAY,

                Plaintiff,

  -against-

THE CITY OF NEW YORK, KEITH SCHWAM,
and DAVID M. FRANKEL,

                Defendants.
------------------------------------X

14 Civ. 8065
OPINION

A P P E A R A N C E S:

Attorneys for George Airday

LAW OFFICE OF NATHANIEL B. SMITH
100 Wall Street, 23rd Floor
New York, NY 10005
By: Nathaniel B. Smith, Esq.

Attorneys for Defendants

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
100 Church Street, Room 2-117
New York, NY 10007
By: Garrett S. Kamen
    William A. Grey
    Christopher A. Seacord
    Don H. Nguyen
    Jeremy L. Jorgensen

**Sweet, D.J.**

Plaintiff George Airday ("Airday") has moved *in limine* to exclude the facts underlying his December 11, 2011 arrest.

Defendants the City of New York ("the City"), Keith Schwam ("Schwam"), and David Frankel ("Frankel") (collectively, the "Defendants") have moved *in limine* (1) to exclude testimony that Plaintiff's damages exceed a nominal amount; (2) to exclude evidence about misconduct by comparators that allegedly occurred before January 1, 2002; and (3) to exclude evidence that Defendants violated Plaintiff's due process rights under the Fourteenth Amendment by removing him from office without notice in December 2013.

Based on the facts and conclusions set forth below, the Plaintiff's motion is granted, and the Defendants' motions are denied.

## I. Prior Proceedings

On October 7, 2014, Plaintiff filed a complaint against Defendants, alleging violations of 42 U.S.C. §§ 1983 and 1988, as well as the First, Fifth and Fourteenth Amendments of

1

the United States Constitution. Specifically, Plaintiff alleged that Defendants (1) retaliated against him in violation of his First Amendment right of free speech; (2) violated his Fourteenth Amendment procedural and substantive due process rights; and (3) violated his Fourteenth Amendment right to equal protection. Plaintiff filed an amended complaint on October 8, 2015. ECF No. 34. On January 10, 2018, Defendants filed their motion for summary judgment, ECF No. 74, which this Court granted in part and denied in part, ECF No. 92.

The present motions *in limine* were filed by Plaintiff on August 28, 2018, and by Defendants on August 27, 2018. All motions *in limine* were heard and marked fully submitted on September 26, 2018.

Trial is scheduled to begin on December 17, 2018.

## II. The Facts

On January 24, 1984, Plaintiff was appointed to a five-year term as a New York City Marshal ("City Marshal"). *See* Airday Dep. Tr. at 17:04-05, 20:22-25. On January 22, 2009, Plaintiff was re-appointed by Mayor Michael Bloomberg for a

five-year term expiring on December 20, 2013. *See* Kamen Decl. Ex. A, ECF No. 97.

In December 2011, Plaintiff was arrested and charged with assault in the third degree, menacing in the third degree, and harassment in the second degree following an incident with his girlfriend. *See* Kamen Decl. Ex. L., ECF No. 77-2, at 121. Schwam was informed of this arrest, but took no disciplinary action against Airday at that time. *See* Schwam Dep. Tr. at 71:12-85:10. Then, in January 2012, Plaintiff was arrested for unlawful possession of a firearm and violation of a temporary order of protection that was put in place after his December 2011 arrest. *See* Kamen Decl. Ex. L, ECF No. 77-2, at 122. Citing this arrest, Schwam informed Airday that the Department of Investigation would seek his removal and immediate suspension unless he first offered to resign. *See* Pl.'s Br. Ex. 1, ECF No. 100-1. On June 11, 2012, Plaintiff was suspended from serving as a City Marshal. *See* Kamen Decl. Ex. W., ECF No. 77-2, at 195-97. On June 11, 2013, Plaintiff's suspension was lifted. *See* Tang-Alejandro Dep. Tr. at 61:23-62:10.

Later that year, Schwam recommended to the Office of the Mayor that Airday be replaced by a new City Marshal upon expiration of Airday's term on December 20, 2013. *See* Schwam

3

Dep. Tr. at 65:03-67:17. Schwam testified that this decision was based on information revealed by Airday's January 2012 arrest, namely, (1) Airday's possession of an unregistered firearm; and (2) Airday's possession of firearms in violation of the court order that resulted from the December 2011 arrest. *See id.* at 69:11-70:11. Schwam further testified that the City Marshal position involves "very serious responsibilities" that "call for uncompromised integrity [and] mature judgment," as well as "scrupulous adherence to rules, laws and court orders." *Id.* at 70:13-70:24.

On December 23, 2013, Plaintiff was notified that his term of office had expired, and that his successor had been appointed to that office pursuant to Section 1601 of the New York City Civil Court Act. *See* Defs.' Reply Br. Ex. C, ECF No. 111. Airday contends that this action violated his procedural due process rights because Defendants departed from the long-established practice of continuing the offices of City Marshals after the expiration of their five-year terms. AC ¶¶ 89, 108-10. In addition, Plaintiff claims that Defendants violated his equal protection rights because other City Marshals, who were accused of more serious misconduct, were not similarly disciplined. *See* AC ¶¶ 53-57, 120-22.

## III. Plaintiff's Motion to Exclude Evidence Regarding the Facts Underlying His December 21, 2011 Arrest

Pursuant to Rules 401(b), 403 and 608 of the Federal Rules of Evidence, Plaintiff has moved to exclude evidence pertaining to the facts giving rise to his arrest on December 21, 2011 arrest.

Specifically, Plaintiff seeks to exclude the following facts:

1. That the criminal complaint relating to Airday's December 21, 2011 arrest charged that Airday "'shoved' his fiancée to the ground, 'struck her several times in the face with an open hand,' [] threatened to 'kill' her, and . . . that [P]laintiff's actions caused his fiancée to sustain 'bruising and swelling to her lower back and face and experienced annoyance, alarm and fear for her physical safety.'" *See* Pl.'s Br., ECF No. 100, at 2-3.
2. That on "January 10, 2012, the Bronx District Attorney's Office notified the Department of Investigations that the 'injuries [allegedly caused by Plaintiff to the complainant [were] more severe than originally believed and that she had some broken ribs.'" *See id.* at 3.

Evidence is relevant if it has "any tendency to make a [material] fact more or less probable than it would be without the evidence." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (quoting Fed. R. Evid.

5

401). "A material fact is one that would affect the outcome of the suit under the governing law." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (citation omitted). Unless an exception applies, all relevant evidence is admissible. Fed. R. Evid. 402. One such exception is the rule that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Further, while the standard for relevance is "very low," *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008), courts have "broad discretion to balance probative value against possible prejudice," *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Here, the details of the domestic violence incident meet the relevance standard. Schwam testified that he recommended appointing a new City Marshal upon termination of Airday's term in 2013 because of the "conduct and judgment that was exposed in the aftermath of [Airday's] two arrests in December 2011 and January 2012." *See* Schwam Dep. Tr. at 69:06-69:10. This consideration could have included the facts underlying the arrests. The details of the domestic violence incident, as described above, are thus relevant in light of

6

Plaintiff's claim that Schwam did not take comparable action with respect to other City Marshals who engaged in similar conduct.

Still, the probative value of these facts is limited. Schwam testified that he did not take disciplinary action against Airday immediately after learning of the December 2011 arrest, but rather waited until after the January 2012 arrest. *Id.* at 85:04-10. To be sure, Schwam's testimony referenced Airday's December 2011 arrest in explaining his decisionmaking. *See id.* at 70:25-71:07 ("[T]he fact that the [M]arshal having been arrested once failed to do the things that were required of him . . . and that he had not done those things . . . said to me that we need to replace Marshal Airday."). But Plaintiff does not seek to exclude the ultimate fact of the December 2011 arrest -- merely the specific details, described above, underlying that arrest. Schwam never testified that these details had any impact on his recommendation as to Plaintiff's reappointment. *See id.* at 68:24-71:11.

Accordingly, Plaintiff's motion to exclude evidence regarding the facts underlying his December 2011 arrest is granted.

7

## IV. Defendants' Motion to Exclude Testimony About Alleged Comparators

Defendants have moved to exclude evidence about acts of misconduct by comparators that allegedly occurred before January 1, 2002, the day on which former Mayor Bloomberg assumed office.

Plaintiff has raised a selective treatment claim based on allegations that he was treated differently than similarly situated City Marshals who also engaged in misconduct. A selective treatment claim requires that comparators and the Plaintiff be "similarly situated in all material aspects," including that the Plaintiff and those he maintains were similarly situated "were subject to the same workplace standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Defendants contend that limiting the scope of comparator evidence to Mayor Bloomberg's administration is reasonable because "compar[ing] workplace standards across administrations would be akin to comparing apples and oranges." Defs.' Br., ECF No. 95, at 4. However, the crux of Plaintiff's

8

selective treatment claim is that Schwam--not Mayor Bloomberg--was the effective decisionmaker and thus the relevant actor.

Accordingly, Defendants' motion to limit evidence of comparators before January 1, 2002 is denied. Plaintiff may present evidence of comparators during Schwam's tenure as Director of the Marshal's Bureau.

V. **Defendants' Motion to Exclude Testimony Regarding A Violation of Plaintiff's Due Process Rights**

Defendants have moved to preclude Plaintiff from offering evidence that Defendants violated his due process rights by removing him from office without notice in December 2013.

Defendants contend that the availability of an adequate post-deprivation procedure for reviewing the propriety of the dismissal, namely an Article 78 proceeding, forecloses any viable due process claim.

However, the law in this Circuit makes clear that a state or local government satisfies procedural due process requirements by providing a meaningful post-deprivation remedy

9

only when the conduct in question is "random and unauthorized" such that a pre-deprivation procedure would be impracticable. *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006); *G.I. Home Developing Corp. v. Weis*, 499 F. App'x 87, 88 (2d Cir. 2012) (summary order) ("In assessing a state or local government's compliance with procedural due process, we distinguish between (1) claims based on established governmental procedures, and (2) claims based on random or unauthorized acts by public employees."). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell*, 470 F.3d at 465 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996)). Ultimately, whether an official's actions were random and unauthorized or taken pursuant to established state procedures is a fact-specific inquiry. *See id.* at 466.

Because it has not been conclusively established that the allegedly unlawful actions were random or unauthorized, Defendants' motion to preclude Plaintiff from presenting evidence of his due process claim is denied.

## VI. **Defendants' Motion to Exclude Evidence of Compensatory Damages**

Defendants have moved to exclude testimony from Plaintiff showing that his damages exceed a nominal amount.

According to Defendants, Plaintiff cannot prove that he suffered actual injury from his termination because Plaintiff's term as the City Marshal had a known expiration date of December 20, 2013, and Mayor Bloomberg exercised his legal authority to appoint a new City Marshal to that position once Plaintiff's term expired. Defs.' Br., ECF No. 95, at 2-3. Plaintiff, however, alleges that there was an established practice of holding over City Marshals for reappointment following the expiration of their statutory term, and that he suffered actual harm in the form of lost income as a result of Schwam's unilateral removal of Airday from office without notice or an opportunity to be heard. Pl.'s Opp. Br., ECF No. 108, at 1-2, n.1.

If Plaintiff is able to establish at trial that Defendants deprived him of his property interest in his employment without due process of law, he would be entitled to nominal damages based on the deprivation itself, and may, in

11

addition, be entitled to collect compensatory damages if he can prove that he suffered actual injury as a result of the denial of due process. *Patterson v. City of Utica*, 370 F.3d 322, 337 (2d Cir. 2004) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

In light of this, Defendants' motion to exclude evidence of compensatory damages is denied.

VII. **Conclusion**

For the foregoing reasons, Plaintiff's motion *in limine* is granted; Defendant's motions *in limine* are denied.

It is so ordered.

**New York, NY**
**November 30, 2018**

_____
ROBERT W. SWEET
U.S.D.J.