```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
-------------------------------------------- X  ELECTRONICALLY FILED
GEORGE AIRDAY,                               :  DOC #:_____
                                             :  DATE FILED: 9/13/2019
                    Plaintiff,               :
                                             :       14-CV-8065 (VEC)
            -against-                        :
                                             :       OPINION AND ORDER
                                             :
THE CITY OF NEW YORK and KEITH               :
SCHWAM,                                      :
                                             :
                    Defendants.              :
-------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff George Airday brought this action under 42 U.S.C. § 1983 against the City of New York and Keith Schwam, a former assistant commissioner for the New York City Department of Investigations and former director of the Department's Marshal's Bureau, for a variety of alleged constitutional violations relating to the termination of Plaintiff's tenure as a New York City Marshal. *See* Dkt. 34 (Am. Compl.). Following Judge Sweet's resolution of a motion to dismiss and a motion for summary judgment, *see* Dkts. 31, 92, and after the case's reassignment to the undersigned, only two of Plaintiff's claims remained: one for deprivation of property without due process of law in violation of the Fourteenth Amendment's Due Process Clause, and the other for selective enforcement in violation of the Fourteenth Amendment's Equal Protection Clause. *See* Dkt. 92 (Order & Op. on MSJ) at 46-68. The Court assumes familiarity with the facts and history of this case but recounts details pertinent to these motions.

The Court separated Plaintiff's claims for trial under Fed. R. Civ. P. 42(b), *see* Dkt. 132, and, beginning on May 6, 2019, Plaintiff's due-process claim was tried to a jury. The jury returned a verdict on May 10, 2019, finding (1) that Plaintiff had proven that he had a

constitutionally protected property right[1] to continue in his position as a city marshal after his term expired in December 2013, either in holdover status or as a formally reappointed marshal; (2) that Plaintiff had proven that the City of New York deprived Plaintiff of that constitutionally protected property right without due process of law; (3) that Plaintiff had failed to prove that Defendant Schwam deprived him of his constitutionally protected property right without due process of law; and (4) that Plaintiff had failed to prove any entitlement to compensatory damages for the deprivation. *See* Dkt. 153 (verdict sheet). The jury awarded Plaintiff $1.00 in nominal damages. *Id.*

Both sides have made post-trial motions. Defendants have renewed their mid-trial motion for judgment as a matter of law, arguing that, as a matter of law: (a) Plaintiff failed to prove the existence of an implied contract with the City of New York; (b) any such contract would be barred by New York's statute of frauds; (c) Plaintiff failed to prove the City's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (d) Plaintiff's due-process claim fails because Plaintiff could have brought a proceeding under Article 78 of the New York Civil Practice Law and Rules. *See* Dkts. 174-76. Plaintiff has also renewed his own mid-trial motion for judgment as a matter of law, arguing that, as a matter of law: (a) Defendant Schwam deprived him of his property right; and (b) he is entitled to compensatory damages. *See* Dkts. 169-70. Plaintiff further requests an order reinstating him to his position as a New York City Marshal and a new trial to determine the amount of his compensatory damages. *See* Dkt.

---

[1] Although both the Due Process Clause and the case law interpreting it speak of "property" rights, *see, e.g.*, *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782-83 (2d Cir. 1991), at Plaintiff's request, the Court substituted the term "contract right" for "property right" in the final jury charge and on the verdict sheet to minimize the possibility of jury confusion. *See* Dkt. 161 (5/8/19 tr.) at 421-24, 441-42. In keeping with the case law, the Court uses the term "property right" throughout this opinion, but it means to refer to the "contract right" that the jury found Plaintiff had—specifically, a right found in an implied contract with the City of New York to continue in his position as a city marshal after his term expired in December 2013, either in holdover status or as a formally reappointed marshal.

170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 1-2. In the alternative to judgment as a matter of law, Plaintiff requests a new trial on Defendant Schwam's liability. *Id.* at 2.

For the following reasons, Defendants' renewed motion for judgment as a matter of law is GRANTED, and Plaintiff's motions are DENIED.

**STANDARD**

Fed. R. Civ. P. 50(b) permits a court to set aside a jury verdict and "direct the entry of judgment as a matter of law" in a movant's favor where, "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached.'" *Lewis v. Am. Sugar Refining, Inc.*, 325 F. Supp. 3d 321, 347-48 (S.D.N.Y. 2018) (brackets omitted) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 13 (2d Cir. 1993)). A Rule 50(b) motion can be granted "only when there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against him." *Id.* (brackets omitted) (quoting *Mattivi v. S. African Marine Corp.*, 618 F.2d 163, 168 (2d Cir. 1980)). "The court will credit evidence favorable to the moving party 'that is uncontradicted and unimpeached,'" but it must "'disregard' evidence that the jury is not required to believe, but which is favorable to the moving party." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)).

Fed. R. Civ. P. 59(a)(1) permits a Court to "grant a new trial on all or some of the issues" to any party. Unlike a Rule 50 motion for judgment as a matter of law, "a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Lewis*, 325 F. Supp.

3d at 332 (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)). "Although the trial judge possesses large authority to grant or deny Rule 59(a) motions, . . . the 'court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Id.* at 332-33 (some internal quotation marks omitted) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).

## DISCUSSION

**I.     Defendants' Renewed Motion for Judgment as a Matter of Law**

To prevail on a Section 1983 claim for deprivation of property without due process, a plaintiff must prove that he had "a property interest, created by state law, in the employment or the benefit that was removed." *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996); *see also, e.g.*, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993) ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest."). In "determining which interests are afforded . . . protection" under the Fourteenth Amendment's Due Process Clause, "a court must look to whether the interest involved would be protected under state law." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 783 (2d Cir. 1991). If it would not be protected under state law, then the plaintiff's due-process claim fails as a matter of law. *Perry v. Sindermann*, 408 U.S. 593, 602 n.7 (1972).[2]

---

[2]     These principles foreclosed Plaintiff's insistence at the final charge conference that the jury did not "need[] to hear all of the elements of a traditional contract claim and the elements of a contract" and that the elements of an implied contract under New York law were "misleading and not necessarily applicable" to the jury's determination of the existence of a property right. Dkt. 161 (5/8/19 tr.) at 416-18, 421-25. To determine whether Plaintiff's alleged implied contract with the City of New York "would be protected under state law," *Ezekwo*, 940 F.2d at 783, the jury needed to be instructed in and then apply New York law governing the formation of implied contracts.

The Court notes that when asked directly by the Court, Plaintiff could not identify any case in which a court has found a Fourteenth Amendment Due Process Clause-protected property interest that sprung from a source

In denying summary judgment on Plaintiff's due-process claim, Judge Sweet held—and this Court proceeded to trial on the basis—that "a factual issue exist[ed] as to whether an implied contract" between Plaintiff and the City of New York "was created as a result of the past practices of holding over City Marshals for reappointment following the expiration of their statutory term." Dkt. 92 at 53.  It was Plaintiff's burden, therefore, to prove at trial that he had an implied contract with the City of New York and that one of the terms of that contract was that he would remain in his office after his term expired in December 2013, either in holdover status or as a formally reappointed marshal.  If Plaintiff failed to prove that such a contract existed, then his due-process claim fails as a matter of law.

Although the jury found that Plaintiff had proven the existence of such an implied contract, it is apparent that there was no legally sufficient basis for the jury to find for Plaintiff on that issue, Fed. R. Civ. P. 50(a)(1), and that the jury's finding "could only have been the result of sheer surmise and conjecture," *Lewis*, 325 F. Supp. 3d at 347-48; *see also id.* at 348 ("The standard of review is the same whether the motion for judgment as a matter of law is submitted prior to the verdict being issued [under Rule 50(a)(1)], or post-trial [under Rule 50(b)].").

To make a long story short, Plaintiff failed to marshal *any* evidence that any official with whom he allegedly contracted was authorized by New York State or City law to bind the City to an implied contract.  Beyond the ordinary common-law elements of an implied contract, New York law "impose[s] additional requirements on municipal contracting 'to protect the public from corrupt or ill-considered actions by municipal officials.'" *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 200 (2d Cir. 2019) (brackets omitted) (quoting *Henry Modell & Co. v.*

---

other than state positive or common law.  *See* Dkt. 158 (5/7/19 tr.) at 273-77.  (As the Court explained, *see id.*, *Ezekwo* was not such a case: it held, as a matter of law, that the parties, through their conduct, had entered into a contract that "would be protected under state law."  *Ezekwo*, 940 F.2d at 783.)

*N.Y.C.*, 552 N.Y.S.2d 632, 634 (App. Div. 1st Dep't 1990)). "Municipal contracts which violate express statutory provisions are invalid" and unenforceable, "even if the purported contracts bear the hallmarks of mutual assent." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Casa Wales Hous. Dev. Fund Corp. v. N.Y.C.*, 11 N.Y.S.3d 31, 32 (App. Div. 1st Dep't 2015) ("It is well settled that where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed. . . . The courts of this state have long held that no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city." (citations omitted)). This principle extends to purported contracts that fail to comply with city charters*, see NRP*, 916 F.3d at 200; *Casa*, 11 N.Y.S.3d at 32, as well as to implied contracts, *see, e.g.*, *Parsa v. State of New York*, 474 N.E.2d 235, 237 (N.Y. 1984) (holding that "a contract implied in fact" is "a true contract based upon an implied promise" and therefore is subject to statutes governing governmental liability on contracts); *Infrastructure Mgmt. Sys. v. Cty. of Nassau*, 770 N.Y.S.2d 119, 121 (App. Div. 2d Dep't 2003) ("Where a statute or local law provides that a contract may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the municipality." (brackets omitted) (citing *Seif v. City of Long Beach*, 36 N.E.2d 630, 632 (N.Y. 1941)). "[I]n contracting with a municipality, a party is chargeable with knowledge of the statutes which regulate [the municipality's] contracting powers and is bound by them," and "it is solely at his peril that [he] presumes that the persons with whom he is dealing are acting within the scope of

their authority and, since the extent of that authority is a matter of public record, there is a conclusive presumption that he is aware of it." *Walentas v. N.Y.C. Dep't of Ports*, 561 N.Y.S.2d 718, 719 (App. Div. 1st Dep't 1990 (citations omitted); *see also Garrison Protective Servs, Inc. v. Office of Comptroller*, 708 N.E.2d 994, 997 (N.Y. 1999) ("This Court has long held that acceptance of services performed under an unauthorized contract does not estop a municipality from asserting the invalidity of the contract.").

As a matter of law, no New York City official could have bound the City to any implied contract with Plaintiff, and certainly not through "[f]orty years of practices and an established and consistent course of dealings," as Plaintiff contends, Dkt. 180 (Mem. in Opp. to Defs.' Post-Trial Mot.) at 4. The New York City Charter requires that "all contracts" entered into by the City be "approve[d] as to form" by the City's corporation counsel. N.Y.C. Charter § 394(b). It further provides that "[n]o contract or agreement executed pursuant to this charter or other law shall be implemented until," among other requirements, "a copy has been filed with the comptroller." *Id.* § 328(a). Any contract not approved consistent with these procedures is unenforceable as a matter of state law. *JFK Holdings Co. v. N.Y.C.*, 891 N.Y.S.2d 32, 33-34 (App. Div. 1st Dep't 2009) ("[E]ven if such agreement had been made it would have been invalid and unenforceable since, pursuant to N.Y. City Charter §§ 394(b) and 328(a), any enforceable agreement with the City must be in writing, approved as to form by the Corporation Counsel, and registered with the Comptroller."). At trial, Plaintiff failed to introduce any evidence that any agreement between him and the City of New York regarding any right to continue in his office after the expiration of his term was ever approved by the City's corporation counsel or filed with the City's comptroller. And it was his burden to do so. *See, e.g.*, *Henry Modell & Co.*, 552 N.Y.S.2d at 634 (placing burden on plaintiff to plead and prove that contract

with City of New York was authorized consistent with City Charter and Administrative Code). Given this evidentiary failure, no reasonable jury could have had "a legally sufficient basis to find for [Plaintiff] on th[is] issue," Fed. R. Civ. P. 50(a)(1): any implied contract between him and the City of New York was unenforceable as a matter of state law and therefore was not a property interest protected by the Fourteenth Amendment's Due Process Clause. *See Perry*, 408 U.S. at 602 n.7; *Ezekwo*, 940 F.2d at 782; *A.F.C. Enters. v. N.Y.C. Sch. Constr. Auth.*, No. 98-CV-4534, 1999 WL 1417210, at *8-9 (E.D.N.Y. June 29, 1999) (holding that general contractor could not "show a protected property interest" in New York City construction contracts "[b]ecause these contracts were not registered and not binding upon the city" and thus were unenforceable under state law); *see also, e.g.*, *NRP*, 916 F.3d at 200 ("Even though a promise . . . may be spelled out from the parties' conduct, a contract between them may not be implied to provide 'rough justice' and fasten liability on the [City] when applicable statutes expressly prohibit it." (quoting *Parsa*, 474 N.E.2d at 237)).[3]

Setting aside lack of compliance with the City Charter, Plaintiff also failed to introduce sufficient evidence for the jury to have reasonably concluded—without engaging in rank speculation or conjecture—that any City official mutually assented to an implied contract that bound the City to permit Plaintiff to continue in his office indefinitely after his term expired. There is no doubt that a substantial bureaucratic infrastructure—a Mayor's Committee on City

---

[3]  Indeed, given the "implicit" nature of the agreement Plaintiff alleges, Dkt. 180 (Mem. in Opp. to Defs.' Post-Trial Br.) at 4, Plaintiff could *never* have proved that he entered into any enforceable implied contract with the City: implicit in Sections 328(a) and 394(b)'s registration and approval requirements is a requirement that the purported contract be in writing. *See JFK Holdings Co.*, 891 N.Y.S.2d at 33-34; *cf. NRP*, 916 F.3d at 200 (holding, with respect to City of Buffalo charter, that although the "Charter does not expressly direct that municipal contracts be in writing," "that expectation is unmistakably conveyed through the concurrent requirements that city contracts be 'executed' and 'signed' by certain officials.").

   In this vein, the Court notes that there was no evidence at trial that any of the authorities that Plaintiff identifies in his opposition to Defendants' motions, *see* Dkt. 180 (Mem. in Opp. to Defs.' Post-Trial Br.) at 4, 11, permitted any City official to enter into a contract binding on the City without complying with the City Charter.

Marshals, a procedure for the suspension or removal of marshals during their appointed terms of office, and so on—has built up around the New York City Marshals program. *See* Dkt. 180 (Mem. in Opp. to Defs.' Post-Trial Br.) at 5-7. Nor is there any serious dispute that Plaintiff remained in his position as a marshal for many years across several mayoral administrations in both regular and holdover status; that the removal of city marshals was rare (if not unheard of) during that period; that Plaintiff invested significant resources into maintaining his office throughout that time; and that he genuinely, subjectively expected to continue in his office after his term expired in December 2013. *See id.* at 7-9. But Plaintiff introduced no evidence that any New York City official (or officials), through words or conduct, specifically agreed that Plaintiff would be allowed to continue in his office *indefinitely* until he unilaterally elected to retire or was removed from office consistent with City Civil Court Act § 1610—the critical purported contractual term upon which Plaintiff based his demand at trial for damages equivalent to five years' income following his December 2013 termination.[4] *See* Dkt. 158 (5/7/19 tr.) at 179-80. Because "definiteness as to material matters is of the very essence of [New York] contract law," *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999) (citation omitted), New York law would not recognize any contract, let alone an implied one, on these facts. The jury's finding to the contrary "could only have been the result of sheer surmise and conjecture." *Lewis*, 325 F. Supp. 3d at 347-48. Because Plaintiff bore the burden of proving a property right enforceable under state law, *White Plains Towing Corp.*, 991 F.2d at 1061-62, this evidentiary failure is independently fatal to his due-process claim.

---

[4] Indeed, the only two City officials who testified at trial—Defendant Schwam and Caroline Tang-Alejandro, the current director of the Marshal's Bureau—both testified that they neither took any actions signaling any agreement to allow Plaintiff to continue in his position indefinitely nor had any subjective intention of doing so. *See* Dkt. 161 (5/8/19 tr.) at 359; Dkt. 158 (5/7/19 tr.) at 125-26. Although the Court would grant judgment as a matter of law even in the absence of this testimony, the Court notes that Plaintiff never introduced a shred of evidence to the contrary. *See Lewis*, 325 F. Supp. 3d at 347-48 ("The court will credit evidence favorable to the moving party that is uncontradicted and unimpeached . . . ." (citation omitted)).

For these reasons, Defendants' renewed motion for judgment as a matter of law is granted; the Court enters judgment as a matter of law in the City's favor on Plaintiff's due-process claim. And because the Court has entered judgment in the City's favor on other grounds, it need not address Defendants' arguments that Plaintiff failed to prove that any purported implied contract was supported by consideration; that any such contract would be barred as a matter of law by New York's statute of frauds or New York Public Officers Law § 5; that Plaintiff failed to prove the City's liability under *Monell*, 436 U.S. 658; and that Plaintiff's due-process claim fails as a matter of law because Plaintiff could have brought a proceeding under Article 78.[5] *See* Dkt. 176 (Mem. in Supp. of Defs.' Post-Trial Br.) at 5, 7-12.

## II. Plaintiff's Renewed Motions for Judgment as a Matter of Law and Motions for a New Trial and for Reinstatement

Because the Court has granted judgment as a matter of law to the City on the issue of whether Plaintiff had a due-process-protected property right to continue in his office after his term expired, Plaintiffs' post-trial motions are moot and are denied on that basis. To supply the parties with as complete a record as possible for appeal, however, the Court makes several observations regarding Plaintiff's motions.

### A. Plaintiff's Renewed Motion and Motion for a New Trial Regarding Defendant Schwam's Liability

Even if the Court had not granted Defendants' renewed motion for judgment as a matter of law, and even if its election to do so is later vacated or reversed, several insuperable defects

---

[5] Defendants did not accompany their renewed motion for judgment as a matter of law with a joint or alternative motion for a new trial. To the extent that Rule 50(b)(2) permits the Court to state whether it would grant a new trial in the alternative to entering judgment as a matter of law, and to the extent Rule 50(c) requires the Court to so state, the Court notes that, for the same reasons that it grants the City judgment as a matter of law, the Court is "convinced that the jury . . . reached a seriously erroneous result" with respect to whether Plaintiff had a protected property right to continue in his office after the expiration of his term. *Lewis*, 325 F. Supp. 3d at 332 (internal quotation marks omitted). The Court would therefore grant a new trial on that question if its judgment in the City's favor is later vacated or reversed.

would bar the Court from granting Plaintiff's motion for a judgment as a matter of law that Defendant Schwam deprived Plaintiff of a protected property right without due process. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 9-11.

First, the Court is not persuaded that Plaintiff introduced any evidence upon which the jury could reasonably have found Defendant Schwam liable for any due-process violation, let alone that Plaintiff introduced such overwhelming evidence favoring liability that he is entitled to judgment as a matter of law on that issue. Accepting that Defendant Schwam wanted Plaintiff terminated, even Plaintiff acknowledges that it was then-Mayor Mike Bloomberg—not Defendant Schwam—who undertook the purportedly property-depriving act in this case: Mayor Bloomberg "signed the letter that reassigned [Plaintiff's] office and badge to another person," thereby terminating Plaintiff from his office. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 9. Furthermore, as Plaintiff puts it, "Schwam did not discuss the subject of [Plaintiff's] removal or replacement with Mayor Bloomberg, with the Mayor's Committee, or with the DOI Commissioner . . . and he had no knowledge about whether his sole contact at the Mayor's Office, John Baxter, was involved in the decision to reassign [Plaintiff's] badge." *Id.* at 10. Given these facts, it was wholly reasonable for the jury to conclude that Defendant Schwam was not personally involved in the alleged constitutional violation at issue: although there was undoubtedly evidence that Defendant Schwam believed Plaintiff was not fit to be a City Marshal and therefore wanted him out of his position and that Schwam took steps toward facilitating an end to Plaintiff's tenure, there was absolutely no evidence—and certainly no *incontrovertible* evidence—that Schwam's conduct had any effect or influence on Mayor Bloomberg's decision to reassign Plaintiff's badge. And *that* was the municipal decision that (a) deprived Plaintiff of

his alleged property right and (b) supplies the basis for *Monell* liability in this case.[6] Given this profound evidentiary gap, the jury would have been hard-pressed to find that Defendant Schwam was "personally involved" in the particular alleged constitutional violation about which Plaintiff complains, *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016), let alone required by the evidence to make such a finding.

In light of Plaintiff's admissions that Mayor Bloomberg "signed the letter that reassigned [Plaintiff's] office and badge to another person"; that Defendant "Schwam did not discuss the subject of [Plaintiff's] removal or replacement with Mayor Bloomberg, with the Mayor's Committee, or with the DOI Commissioner"; and that Schwam "had no knowledge about whether his sole contact at the Mayor's Office, John Baxter, was involved in the decision to reassign [Plaintiff's] badge," Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 9-10, the Court is inclined to conclude that the jury could only reasonably have found that Schwam was either speculating or factually incorrect when he said at trial that he "made sure" that Plaintiff's badge was reassigned, *id.* at 10 (quoting Schwam's trial testimony). There is no evidence in the record that Schwam's machinations (such as they were) had any influence on Mayor Bloomberg's decision to terminate Plaintiff's office, and any finding that they did would have

---

[6] The basis for *Monell* liability in this case has been a mystery throughout. *See* Dkt. 154 (tr. of final pretrial conference) at 21-22, 42-50, 144-47; Dkt. 132 (Apr. 10, 2019 order) at 7-9 (directing parties to submit briefs on "whether Defendant New York City is entitled to judgment as a matter of law on either or both of Plaintiff's claims because . . . Defendant Schwam could not have been a 'final policymaker' for *Monell* purposes"); Dkt. 137 (Pl.'s Mem. re: *Monell*); Dkt. 138 (Defs.' Mem. re: *Monell*); Dkt. 161 (5/8/19 tr.) at 307, 383-85, 401-05; 454-61. As the Court held at the final-charge conference, Dkt. 161 (5/8/19 tr.) at 454-61, Mayor Bloomberg was the only possible "final policymaking authority" whose conduct could have rendered the City liable to Plaintiff for any due-process violation, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (plurality opinion) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability. . . . [T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." (internal quotation marks and citations omitted)). Furthermore, as the Court also held at the charge conference, Dkt. 161 (5/8/19 tr.) at 454-61, and as Plaintiff's post-trial admissions confirm, there was no evidence at trial supporting Plaintiff's alternative argument that the City could be liable for Defendant Schwam's conduct under a "cat's paw" theory of *Monell* liability, to the extent such a theory is even cognizable, *see, e.g.*, *Kregler v. N.Y.C.*, 987 F. Supp. 2d 357, 365-67 (S.D.N.Y. 2013) ("The development of Second Circuit case law concerning the cat's paw theory is relatively new and evolving.").

required rank speculation on the jury's part.[7] In any event, however, there was ample evidence to support the jury's verdict that Defendant Schwam was not liable, meaning that judgment as a matter of law under Rule 50(b) would be inappropriate. And because the Court is not convinced that the jury reached a seriously erroneous result or that its verdict constituted a miscarriage of justice, *Lewis*, 325 F. Supp. 3d at 332-33, it would not grant Plaintiff's alternative motion for a new trial on this issue even if its grant of judgment as a matter of law to Defendants on the property-right issue, *see supra* Pt. I, is later reversed. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 11.

Finally, even were the Court inclined to conclude as a matter of law that Defendant Schwam violated Plaintiff's due-process rights, it would not grant judgment against Schwam because he would have qualified immunity. Qualified immunity shields a government official from money damages when his conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)); *see also, e.g.*, *Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."). While a plaintiff need not identify "a case directly on point" to demonstrate that an asserted federal right was clearly established at the time a defendant acted, the Supreme Court has instructed time and again that "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis added) (citation omitted); *see also, e.g.*, *Emmons*, 139 S.

---

[7] It appears that Plaintiff elected not to pursue discovery from either former-Mayor Bloomberg or from John Baxter to fill in this evidentiary void.

Ct. at 504; *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) ("The rule must be settled law, . . . which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." (internal quotation marks and citations omitted)); *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (per curiam) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, . . . but in the light of pre-existing law the unlawfulness must be apparent . . . ." (internal quotation marks omitted)). To that end, the Supreme Court has described qualified immunity as a "demanding" doctrine protecting "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A defendant has qualified immunity from a due-process claim when it was not clearly established at the time of the alleged deprivation that the purported property or liberty interest of which the plaintiff was deprived was, in fact, protected by the Due Process Clause. *See, e.g.*, *Greenwood v. N.Y. Office of Mental Health*, 163 F.3d 119, 123-24 (2d Cir. 1998) (affirming grant of qualified immunity where liberty interest underlying due-process claim was not clearly established when defendant acted).[8]

---

[8] In light of these principles, Plaintiff's assertion during trial that "based on longstanding Supreme Court decisions like the *Perry* case . . . notice and opportunity to be heard before an interest in a livelihood is cut short is an established principle of law for which qualified immunity does not apply," Dkt. 161 (5/8/19 tr.) at 406-11, is inadequate. *See Pauly*, 137 S. Ct. at 552 ("[I]t is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality. . . . As this Court explained decades ago, the clearly established law must be particularized to the facts of the case. . . . Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." (internal quotation marks and alterations omitted)). In any event, although the general right against deprivation of property without due process was clearly established long ago, a defendant is still qualifiedly immune from a due-process claim unless at the time of the deprivation it was clearly established that the purported property interest was, in fact, a property interest protected by the due-process clause—that is, one protected under state law. *See, e.g.*, *Greenwood*, 163 F.3d at 123-24; *see also, e.g.*, *Perry*, 408 U.S. at 602 n.7; *Ezekwo*, 940 F.2d at 782.

Furthermore, contrary to Plaintiff's contention at trial, *see* Dkt. 161 (5/8/19 tr.) at 406, an officer's entitlement to qualified immunity may be evaluated at any stage of the proceeding, including during and after trial. *See, e.g.*, *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily. The plea remains available to the defending officials at trial; but at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court.").

Because Plaintiff's alleged protected property interest—an implied contract with the City of New York obligating the City to allow a city marshal to remain in his office after his term expires, either in holdover status or as a formally reappointed marshal—was purportedly based on "[f]orty years of practices and an established and consistent course of dealings," to borrow Plaintiff's phrasing, Dkt. 180 (Mem. in Opp. to Defs.' Post-Trial Mot.) at 4, Plaintiff's legal entitlement to keep that property interest—and thus the alleged unlawfulness of Defendant Schwam's conduct vis-à-vis that interest—was not "beyond debate" when Schwam acted. *Mullenix*, 136 S. Ct. at 308 (citation omitted). Besides resting on an amorphous amalgamation of unspoken signals implicit in the conduct of many people over many years: the purported contract failed to comply with the New York City Charter, *see supra* Pt. I; Section 5 of the New York Public Officers Law treated Plaintiff's office as "vacant for the purpose of choosing his successor," N.Y. Pub. Off. § 5; and no statute, case, or other authority would have indicated to a reasonable official in Defendant Schwam's position (or even to Plaintiff himself) that Plaintiff had an implied contract with the City of New York entitling him to remain in his office indefinitely. Under these circumstances, Schwam would be entitled to qualified immunity—and judgment against him or a new trial on his liability would thus be inappropriate—even if the Court's grant of judgment in the City's favor is reversed.

### B. Plaintiff's Renewed Motion Regarding Compensatory Damages and Motion for a New Trial to Determine Such Damages

Even if the Court had not granted Defendants' renewed motion for judgment as a matter of law, the Court would not grant Plaintiff's motion for a judgment that he is entitled to compensatory damages as a matter of law. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 11-16.

As an initial matter, the Court rejects Plaintiff's renewed argument that he did not bear the burden of proving his entitlement to compensatory damages. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 12. The cases supporting the Court's view and contradicting Plaintiff's from and within the Second Circuit are legion. *See, e.g.*, *Kassim v. City of Schenectady*, 415 F.3d 246, 250 (2d Cir. 2005) ("Having shown no harm or loss attributable to the failure to give him a pre-deprivation hearing, [plaintiff] has shown no reason why the court's restriction on compensatory damages deprived him of any entitlement.").[9] In light of these authorities, the Court cannot accept Plaintiff's contention that the Court "should have shifted the burden to the Defendants to prove that [Plaintiff] would not have continued in his office after the

---

[9] *See also, e.g.*, *Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004) ("We have held that the plaintiff has the burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed. . . . [I]n order to award plaintiff compensatory damages, the jury must determine that the injuries plaintiff claims he suffered as a result of the deprivation of his liberty interest would not have occurred if [the defendant] had provided plaintiff with a sufficient name-clearing hearing. . . . If the jury determines that the plaintiff would not have been reinstated or would have been terminated from subsequent employment regardless of whether or not he received a name-clearing hearing, it cannot award him lost wages.") (internal quotation marks omitted); *Robinson v. Cattaraugus Cty.*, 147 F.3d 153, 162 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law."); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 431 (2d Cir. 1995) ("A plaintiff who has proven a civil rights violation but has not proven actual compensable injury, is entitled to an award of nominal damages."); *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir.1993) ("Absent a showing of causation and actual injury, a plaintiff is entitled only to nominal damages. . . . In this Circuit, the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages. . . . It was therefore [plaintiff's] burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed."); *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir. 1983) ("It is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury. . . . When a plaintiff is unable to prove causation, he may collect only nominal damages."); *Oladokun v. Ryan*, No. 06-CV-2330, 2012 WL 1071228, at *2 (S.D.N.Y. Mar. 30, 2012) ("Compensatory damage awards under § 1983 are ordinarily determined according to common-law tort principles, which require a showing of causation and actual injury. . . . Although a victim of a due process violation is always entitled to nominal damages, a victim may recover compensatory damages only if there was an actual deprivation of liberty or property caused by the violation. . . . Contrary to the rule adopted in the majority of circuits, the Second Circuit has consistently held that the plaintiff has the burden of showing that the challenged disciplinary action would not have been taken if he had been afforded procedural due process."); *Razzano v. Cty. of Nassau*, No. 07-CV-3983, 2012 WL 1004900, at *4 (E.D.N.Y. Feb. 27, 2012) ("It is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury." (internal quotation marks omitted)); *Burka v. N.Y.C. Transit Auth.*, 747 F. Supp. 214, 221 (S.D.N.Y. 1990) ("In the Second Circuit, the burden is on the plaintiff to show that the challenged disciplinary action would not have been taken if he had been afforded procedural due process." (internal quotation marks and alteration omitted)).

constitutionally-required [*sic*] hearing." *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 12.

*Spinelli v. City of New York*, 579 F.3d 160, 175 (2d Cir. 2009), and *Ezekwo*, 940 F.2d at 786, are not to the contrary. In both cases, the Second Circuit held that a Section 1983 plaintiff had proven a due-process violation as a matter of law and remanded the case with instructions to determine compensatory damages. *Spinelli*, 579 F.3d at 175; *Ezekwo*, 940 F.2d at 786. In neither case, however, did the court cite, let alone examine, other Second Circuit precedent squarely holding that the plaintiff bears the burden of proving "that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed," *Patterson*, 370 F.3d at 338. And in neither case was there a reason to do so. In *Spinelli*, by the time the plaintiff had filed her Section 1983 lawsuit, the City of New York had given her the process she was due and had restored her license to operate a gun store— conclusively demonstrating that, had she been given pre-deprivation process, the license would not have been taken in the first place. *See* 579 F.3d at 165. And in *Ezekwo*, it appears that the court was persuaded that the plaintiff had, in fact, demonstrated that she would have been made chief resident had she been given notice and a bona fide opportunity to be heard: although not explicit, the court of appeals expressed deep skepticism of the district court's finding that the decision to deny the plaintiff the chief resident position was genuinely motivated by academic or interpersonal concerns rather than sexism, *see* 940 F.2d at 784, suggesting that, in the Circuit's view, had the plaintiff been given a fair hearing, she would not have been bypassed for promotion. In any event, to the extent *Spinelli* and *Ezekwo* can properly be read to suggest that a plaintiff asserting a due-process claim does not bear the burden of proving his entitlement to compensatory damages, those cases are contrary to the great weight of decisions by the Second

Circuit. Faced with such a lopsided choice, the Court feels compelled to follow the weight of authority cited above.[10]

The governing legal principle having been established, it follows that Plaintiff is not entitled to a judgment that he is entitled to compensatory damages as a matter of law. Plaintiff introduced no evidence, let alone conclusive evidence, that Mayor Bloomberg—the person who reassigned Plaintiff's badge and thereby removed him from office—would not have done so had Plaintiff first been given notice and an opportunity to be heard. Indeed, the jury did not even hear evidence that Mayor Bloomberg would have reached a different conclusion had Defendant Schwam not contacted John Baxter about Plaintiff: as Plaintiff acknowledges, Mayor Bloomberg "signed the letter that reassigned [Plaintiff's] office and badge to another person"; Defendant "Schwam did not discuss the subject of [Plaintiff's] removal or replacement with Mayor Bloomberg, with the Mayor's Committee, or with the DOI Commissioner"; and Schwam "had no knowledge about whether his sole contact at the Mayor's Office, John Baxter, was involved in the decision to reassign [Plaintiff's] badge," Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 9-10. Judgment as a matter of law as to entitlement to compensatory damages would, therefore, be inappropriate even if the Court's grant of judgment to the City is reversed. And

---

[10] The other cases Plaintiff cites, *see* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 13-14, come from the Sixth, Seventh, and D.C. Circuits, all of which follow a rule contrary to the Second's. *See Thompson v. District of Columbia*, 832 F.3d 339, 347 & n.3 (D.C. Cir. 2016) (collecting cases). With all respect to those courts of appeals, this Court is bound by Second Circuit precedent.

The Court rejects Plaintiff's contention that the Second Circuit's admonition in *Miner* that "the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages," 999 F.2d at 660, is "dicta." *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 14-16. In that case, the court affirmed the district court's award of lost wages and pension benefits to the plaintiff precisely because he had satisfied his burden of proving his entitlement to compensatory damages, *id.*, meaning that the court's articulation of the burden was very much ratio decidendi, not obiter dictum. In any event, neither Plaintiff's characterization of *Miner*'s language nor his efforts to distinguish that case on its facts, *see* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 15-16, gets him past the raft of other authorities confirming that Plaintiff bore the burden of proving "that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed," *Patterson*, 370 F.3d at 338.

because the Court is not convinced that the verdict on this point was seriously erroneous or a miscarriage of justice, *Lewis*, 325 F. Supp. 3d at 332-33, granting Plaintiff's alternative motion for a new trial on this issue would not be appropriate. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 16.

Finally, the Court must reject Plaintiff's peculiar analogy to *Patterson v. Coughlin*, 905 F.2d 564, 568-70 (2d Cir. 1990), in which the Second Circuit affirmed that a plaintiff ordinarily bears the burden of proving entitlement to compensatory damages but held that the burden had shifted to the defendant prison officials because, by barring the plaintiff from calling witnesses at his administrative trial and claiming ignorance of the identities and whereabouts of the inmate witnesses that the plaintiff wished to call, the defendants had made it impossible for the plaintiff to carry his burden. Airday is by no means akin to the prison-inmate plaintiff in *Patterson*. There is no indication that Defendants interfered with Plaintiff's ability to support his claim for compensatory damages with evidence from former-Mayor Bloomberg, John Baxter, or other City officials who could shed light on whether Mayor Bloomberg would have reassigned Plaintiff's badge if Plaintiff been given notice and an opportunity to be heard. If such evidence existed, it was out there for Plaintiff's taking. The absence of it at trial "must be laid squarely at the door of the [Plaintiff] and no one else." *Patterson*, 905 F.2d at 569.

\*   \*   \*

For all these reasons, the Court would deny Plaintiff's post-trial motions even if its grant of judgment as a matter of law to the City of New York is reversed.[11]

---

[11] Because the Court has granted judgment to Defendants on the due-process claim, the question of appropriate remedies for that claim is moot. The Court therefore expresses no opinion on Plaintiff's request for an order reinstating him as a marshal. *See* Dkt. 170 (Mem. in Supp. of Pl.'s Post-Trial Mots.) at 1-2, 4-7.

## CONCLUSION

For the foregoing reasons, Plaintiff's post-trial motions are DENIED, and Defendants' renewed motion for judgment as a matter of law is GRANTED. Judgment as a matter of law is granted to Defendant the City of New York on Plaintiff's due-process claim.

The parties must appear for a conference on **October 3, 2019, at 2:00 P.M.** The parties must be prepared to discuss next steps on Plaintiff's equal-protection claim. *See* Dkt. 132 at 4-6.

The Court reminds the parties that it is happy to refer them to mediation or to Magistrate Judge Parker for settlement discussions upon a joint request.

Pursuant to Fed. R. Civ. P. 54(b), no judgment shall issue until further order of this Court.

**SO ORDERED.**

**Date: September 13, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**