```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GEORGE AIRDAY,
                                                                        14-cv-8065 (VEC)
                        Plaintiff,

          -against-                                                     MEMORANDUM OF LAW
                                                                        IN SUPPORT OF PLAINTIFF'S
                                                                        MOTION IN LIMINE

THE CITY OF NEW YORK and KEITH SCHWAM,

                        Defendants.
-------------------------------------------------------------------X
```

*Introduction*

Plaintiff, George Airday ("Airday"), respectfully submits this memorandum of law in support of his motion in limine to exclude specific evidence and arguments that the Defendants may make during the upcoming trial.

First, Airday seeks to exclude evidence and argument about Airday's personal wealth, net worth, and assets on the ground that this type of evidence has no relevance to any issue to be tried and that arguments about Airday's wealth, net worth and assets will likely confuse, mislead, and prejudice the jury.

Second, Airday seeks to exclude evidence of certain alleged "bad acts" that the Defendants elicited from Airday during the course of the prior due process trial.  More specifically, the Defendants elicited from Airday evidence that in 1986 the NYPD's Licensing Division temporarily revoked Airday's pistol license and that Airday allegedly failed to inform DOI about the theft of one of his guns that led to the revocation of Airday's pistol license. Evidence about the stolen gun or the license revocation should be excluded under Rules 401 and 403 of the Federal Rules of Evidence because the evidence is not relevant to the issues in this

action and because the evidence is likely to mislead and confuse the jury. This evidence should also be excluded under Rules 403 and 404(b) because the evidence is unduly prejudicial and constitutes alleged prior "wrong acts" that are being offered as mere bad character evidence.

Third, Airday requests that the Court exclude any reference or examination of witnesses about the results of the prior jury trial in this action. The jury's verdict is not relevant to any issue in the selective enforcement trial, and any reference to the verdict, particularly the jury's findings on damages, would be misleading and highly prejudicial.

*Standard for a Motion in Limine*

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). The motion in limine is an aid to the trial process that enables the Court to rule in advance of trial on the relevance of certain forecasted evidence without lengthy argument or interruption of the trial. *Palmieri, supra, at 141.* As such, the Court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce,* 469 U.S. at 41.

*Background*

Pursuant to the Court's Opinion and Order, dated July 16, 2020 (ECF Doc. No. 199), the parties are set to conduct a trial on Airday's selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment. Generally, under this type of selective

enforcement claim, a plaintiff needs to prove two elements: (1) that the plaintiff was treated differently than a similarly-situated person; and (2) that the defendant acted with an improper motive.   See *Hu v. City of New York*, 927 F. 3d 81, 90 (2nd Cir. 2019).   More specifically, to state a selective-enforcement claim, a plaintiff must show two things:   "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

Here, Airday contends that Schwam treated him more harshly than four other City Marshals also subject to Schwam's regulation who were also subject to the same standards under the Marshal's Handbook and committed comparable and more serious acts of undisputed misconduct during Schwam's tenure as the Director of the Marshal's Bureau of the Department of Investigation.   Airday also contends that Schwam is liable because Schwam took action against Airday out of malice and with a vindictive spite for the purpose of "getting him."   See *LeClair,* supra, at 611 ("If Saunders went after Mr. LeClair to *get him*, for any reason, then he should be liable.") (emphasis in original). Finally, Airday contends that Schwam acted to punish and inhibit Airday from asserting his rights in his office to due process and his right under the Fifth Amendment to be free from self-incrimination.

The Defendants, on the other hand, contend that Schwam took action against Airday because of Airday's failure to cooperate with a DOI investigation and because of the circumstances surrounding his arrest in January of 2012 for possession of an unregistered gun and possession of a handgun in violation of an order of protection. *See*

3

Motion Exhibit 1 (Defendants' Response No. 4 at pp. 4-5 to Plaintiff's Discovery Demands and accompanying documents, including Schwam's Memo to File (316-D318) and Schwam's Charges and Specifications (D323-D324).[1]  *See also* Motion Exhibit 2 (Schwam Deposition Tr. 69:24-72:11) (Schwam testifies as to the reasons that motivated him to take action against Airday).[2]

*Argument*

1. *Evidence of Airday's Wealth Should Be Excluded*.    During the due process trial, the Defendants elicited testimony from Airday about a building that Airday sold for $1.4 million after his removal from office and testimony about tow of Airday's "vacation homes" in Florida and New York.    Trial Tr. 181:4-183:18 & 184:4-14; Motion Exhibit

---

[1] In Defendants' Response to Demand No. 4, which sought production of documents evidencing the reasons for the reassignment of Airday's badge in December of 2013, the Defendants produced documents Bates-stamped D000316 through D000327.   Although the Defendants also refer to D000631 in there response, this appears to be a typographical or clerical error as there is no document Bates-stamped D000631 in the Defendants' production, and accordingly, that document is not included in the exhibit.

[2] Schwan's deposition testimony on his reasons for Airday's removal from office is as follows:
   Q.   And why did you make this recommendation or decision to have a successor appointed for his office?
   A.   Well, first of all, that was a – the appointment of a successor was expressly authorized by the law.   My reasons for recommending that that be done had to do with Marshal Airday's conduct and judgment that was exposed in the aftermath of his two arrests in December 2011 and January 2012.
   Q.   And what was that conduct that led you to make this recommendation?
   A.   It involved several elements. One, the marshal was in possession unlawfully of two firearms. Two, that fact became known after the marshal was arrested on a domestic violence charge, and was under an obligation to surrender all of his firearms.   The fact that he was arrested within four weeks of the domestic violence arrest with facts that indicated that he had not surrendered all his firearms as directed by the court, and that he had been in possession for some period of time before his domestic violence arrest of an unregistered firearm were the principal acts that caused me to make the recommendation. Those acts, in turn, to me reflected judgment that fell far short of the standard that I believe was warranted for someone who is, Number 1, mayoral appointee; and Number 2, holding the position that involves the scrupulous attention to rules, court orders, and adherence to the law in situations that involve actions that -- the position involves actions taken against members of the public.   So the position involves a mayoral appointment, a delegation of very serious authority to take away people's property, to remove people's vehicles, to remove people from their homes, to remove money from people's bank accounts. Those are very serious responsibilities that call for uncompromised integrity, mature judgment, adherence, scrupulous adherence to rules, laws and court orders and basic seriousness in how the person goes about conducting their affairs, both personal and official. The conduct that I described and the fact that the marshal having been arrested once failed to do the things that were required of him to stay well clear of being arrested again, and that he had not done those things and that, in fact, done the opposite, said to me that we need to replace Marshal Airday.
   Q.   Are there any other reasons for why you made the recommendation to replace Marshal Airday?
   A.   No.

4

3. These questions were based on Airday's reappointment application, which provided information about Airday's assets and net worth. Defendants used this information in their closing arguments to suggest that Airday was a wealthy person who had a source of income from the sale of the building and that he "hid" this information from the jury when explaining his lost earnings and his mitigation earnings. *See* Tr. 506:1-11.

This evidence and argument should be excluded at the selective enforcement trial because it is not relevant to any issue and was used for the purpose of arguing that a person with substantial assets is not entitled to fair consideration by the jury. The argument was also made for the purpose of suggesting that a plaintiff's wealth can be used to offset a claim for lost earnings.

These are improper and misleading arguments. "Comments on the wealth of a party have repeatedly and unequivocally been held highly prejudicial, and often alone have warranted reversal." *Whittenburg v. Werner Enterprises*, 561 F.3d 1122, 1130 n.1 (10th Cir. 2009). For this reason, "[t]he general rule is that, during trial, no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." *Amegy Bank Nat. Ass'n v. DB Private Wealth Mortgage, L*td., 2014 WL 791505 at *3 (M.D. Fla. Feb. 24, 2014) (citing *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir.2002)). *Cf.* FRE 411 (evidence of the existence of liability insurance generally inadmissible)

Although the Defendants suggested to the jury that the sale of the building generated earnings that Airday failed to mention during his direct examination, this is a misleading argument. Airday's damages are the lost earnings that he accrued as a result

---

Schwam Tr. 69:24-72:11; Motion Exhibit 2.

of the termination of his City Marshal office.   The fact that Airday sold an asset does not have any bearing on the size of the loss to his earnings and the Defendants, therefore, were making the improper suggestion to the jury that Airday was not entitled to damages merely because he owned an asset worth $1.4 million and had "vacation homes."   Since a party's wealth is not an offset for lost earnings, the jury should consider the lost earnings issue on a level playing field for all, notwithstanding a party's wealth or lack of wealth.   Accordingly, the Court should exclude evidence of Airday's assets and preclude the Defendants from making the argument or the improper suggestion that a person with a high net worth or substantial assets is entitled to lesser consideration by the jury.

    2.   *Evidence of Prior Wrongful Acts Should Be Excluded*.

During their examination of Airday at the due process trial, the Defendants elicited evidence about a handgun that was stolen from Airday's apartment in 1975. The Defendants also asked Airday about the fact that the NYPD's Licensing Division in 1986 revoked Airday's license to carry a handgun as a result of an ongoing issue about the theft of the handgun.   Tr. 207:8-210:15; Motion Exhibit 3.   Bases on Airday's answers, the Defendants suggested that Airday engaged in misconduct when he did not disclose to DOI the stolen gun or the fact that the Licensing Division revoked his license in 1986.   Tr. at 208:17-209:10.

Schwam never suggested that the theft of this handgun or the renovation of Airday's license in 1986 had anything to do with his mental process in connection with the disciplinary charges he filed 25 years later in 2012 or Airday's removal in 2013.   *See supra* page 4 n. 2; *see also* Motion Exhibit 1.   Thus, this evidence is not probative of

Schwan's motives or intent and should be excluded as not relevant to any fact "of consequence in determining the action." FRE 401(b) (defining relevant evidence).

The evidence should also be excluded because it would be unduly prejudicial, would likely confuse the jury, and would waste time on "mini-trials" about remote events from 1975 and 1986.   FRE 403 (even relevant evidence can be excluded when its probative value is substantially outweighed by the risk of undue prejudice, a waste of time or jury confusion).   As noted above, Schwam testified that he took action against Airday because of the allegation that Airday possessed an unregistered gun and because he violated the temporary order of protection.   (Schwam Dep. Tr. 68:13-72:25; Motion Exhibit 2).   Importantly, Schwam specifically testified that there were no other reasons for his actions in 2013 against Airday (*id*. at 71:8-11) and that Schwam took no disciplinary steps against Airday after his arrest in December of 2011 on the assault charge. (*Id.* at 85:4-10.)

Under these circumstances, evidence about the 1986 license revocation or the stolen gun should be excluded as irrelevant under FRE 401, unduly prejudicial under FRE 403, and impermissible wrongful-act evidence under FRE 404(b).   The evidence is also inadmissible character evidence under FRE 608(b) because it does not constitute evidence of specific conduct relevant to a trait of truthfulness or untruthfulness.

3.   *Evidence About the Due Process Trial Should Be Excluded*.   As the Court knows, the jury awarded Airday nominal damages on the due process claim.   That determination, however, has no relevance to Airday's damages on the selective enforcement claim, which is an entirely different theory of liability.   Since any reference to the jury's verdict in the prior trial would mislead the jury about the proper measure of

damages, we request that the Court exclude from trial any reference to the jury's verdict in the due process trial.

*Conclusion*

For these reasons, Airday respectfully requests that this motion in limine be granted.

Dated: October 16, 2020

>
> *s/Nathaniel B. Smith*
> _____
> Nathaniel B. Smith
> 225 Broadway – Suite 1901
> New York, New York 10007
> 212-227-7062
> natbsmith@gmail.com