UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

ESTATE OF GEORGE AIRDAY,                          :
                                                  :
                                    Plaintiff,    :
                                                  :
                  -against-                       :
                                                  :
THE CITY OF NEW YORK and KEITH                    :
SCHWAM,                                           :
                                                  :
                                    Defendants.   :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   4/28/22

14-CV-8065 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

George Airday was a former City Marshal who sued the City of New York and its officer

Keith Schwam pursuant to 42 U.S.C. § 1983 after then-Mayor Michael Bloomberg did not renew

his appointment as a City Marshal.[1]  After the originally-assigned judge died, Mr. Airday's case

was reassigned to the Undersigned; it proceeded to trial in two parts.  First, in 2019, there was a

jury trial on Mr. Airday's procedural due process claim.  The jury returned a verdict in Mr.

Airday's favor, awarding him $1.00 in damages; the Court granted Defendants' post-trial motion

for judgment as a matter of law.  Post-Trial Op. & Order, Dkt. 183 at 5–10.  There was then a

second jury trial in 2020 on Mr. Airday's selective enforcement equal protection claim.  Op. &

Order, Dkt. 199 at 1–2.  The jury returned a verdict in Mr. Airday's favor, awarding him

$1,385,160 in damages.  *See* Verdict Sheet, Dkt. 235 at 3.  Defendants now move for judgment

as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  *See* Not. of Mot., Dkt. 260.

Plaintiff opposes the motion.  *See generally* Pl. Opp., Dkt. 263.  For the following reasons,

Defendants' motion is GRANTED.

---

[1]      Mr. Airday died on June 20, 2021.  *See* Suggestion of Death, Dkt. 259.  His estate was substituted as
Plaintiff on August 21, 2021.  *See* Order, Dkt. 258.

## BACKGROUND[2]

In 1984, Mr. Airday was appointed City Marshal by then-Mayor Edward Koch.  Trial Tr.

at 308.[3]  Although by statute City Marshals are appointed for a term of five years, during Mr.

Airday's tenure it was common practice for City Marshals to continue in "holdover" status at the

expiration of their terms and then be reappointed at some point for another five-year term.  *Id.* at

147–48.  After his initial appointment, Mr. Airday was reappointed several times, generally after

a substantial period of time during which he served in holdover status.  His final reappointment

was by Mayor Michael Bloomberg on January 22, 2009, with a stated expiration date of

December 20, 2013.  *Id.* at 467.  Unlike the earlier reappointments, the City neither  reappointed

Mr. Airday at the expiration of his term nor allowed him to continue in holdover status; instead,

it reassigned his badge to a different appointee, effectively terminating him as a City Marshal.

*Id.* at 467–68.

The facts that underlie this lawsuit occurred during Mr. Airday's final term as a City

Marshal.  On December 21, 2011, Mr. Airday was arrested for assault based on a complaint of

domestic violence.  *Id.* at 404–06.  The night that he was arrested, an order of protection was

entered that required him to surrender all guns in his possession.  *Id.* at 406–08.  Mr. Airday

provided the combination to his safe to a police officer, who removed five guns from the safe,

consistent with Mr. Airday's representation to the police that night that he owned five guns.  *Id.*

at 408, 411.  Several days later, the Police Department notified the New York City Department

---

[2]     The facts are presented in the light most favorable to Plaintiff.

[3]     All references to the trial transcript are to the 2020 trial unless otherwise specified.  *See* Dkt. 243 for Trial
Tr. 1–109; Dkt. 245 for Trial Tr. 110–370; Dkt. 247 for Trial Tr. 371–585; and Dkt. 249 for Trial Tr. 585–628.  The
Court notes that the first page of the transcript for the final day of trial is numbered 585; the last page of the
transcript for the preceding day is also numbered 585.

of Investigations ("DOI")[4] that one of the guns that had been retrieved from Mr. Airday's safe, a

Hawes .25 caliber pistol, was unregistered and unlicensed.  *Id.* at 410, 468.  DOI subsequently

confirmed that the Hawes pistol, in addition to being unregistered, had never been disclosed in

required police department filings.  *Id.* at 217.  Contrary to his representation to the police on the

night of his arrest that he owned five guns, Mr. Airday in fact owned six guns, one of which had

not been surrendered as required by the protective order.  *Id.* at 217, 408.  The failure to

surrender all of his guns as ordered led to an additional criminal charge of violation of the

protective order.  *Id.* at 411.  Those events[5] led Keith Schwam, then-director of the Marshals

Bureau: (a) to ask Mr. Airday to resign as a City Marshal and (b) to direct Mr. Airday to cease

performing City Marshal duties other than redeeming cars already in his possession.  *Id.* at 49–

51.

Mr. Airday was eventually found not guilty of the domestic violence charges, and the

charge for violation of the order of protection was ultimately dropped.  *Id.* at 129, 464–65.

While the criminal charges were pending, however, in addition to suspending Mr. Airday from

conducting any new business as a City Marshal, Defendants asked the New York State Appellate

Division to suspend him as a City Marshal.  *Id.* at 264.  The basis for Defendants' request to the

Appellate Division was that Mr. Airday (i) had failed to cooperate in DOI's investigation of the

events surrounding his possession of an unregistered, undisclosed firearm and (ii) was involved

in a domestic violence assault.  *Id.* at 100–02, 264, 226, 448.  Mr. Airday waived his right to a

hearing before the Appellate Division and instead entered a stipulation in which he admitted to

---

[4]     The Bureau of City Marshals, a unit of the New York City Department of Investigations ("DOI"), is
responsible for oversight of New York City Marshals.  *See*, *e.g.*, Compl., Dkt. 1 ¶¶ 28, 30; Trial Tr. at 50.

[5]     Put succinctly by Mr. Schwam, in the wake of the arrest for assault and the entry of an order of protection,
DOI learned that "Marshal Airday was in possession of a gun that he had never registered, and he remained in
possession of a gun that he had registered and failed to surrender."  Trial Tr. 219.

violating rules in the City Marshals' Handbook of Regulations. *Id.* at 451–52. He paid a $7,500 fine as a penalty for the violation and was allowed to recommence work as City Marshal. *Id.* at 267, 452. Ultimately, Mr. Airday's term expired, he was not reappointed, and his badge was reassigned to a newly-appointed City Marshal. *Id.* at 397, 608–09.

At the trial on his equal protection claim,[6] Mr. Airday contended that, starting in January 2012 when the City suspended him and ending in December 2013 when the Mayor reassigned his badge, the City and Mr. Schwam treated him more harshly than they treated other City Marshals who engaged in, or were accused of engaging in, similar or worse misconduct than that in which Mr. Airday was accused of engaging. *Id.* at 17. At trial, to prove that he was treated more harshly than similarly situated City Marshals, Mr. Airday presented evidence regarding four other City Marshals whom, he argued, the jury could properly treat as comparators. *Id.* at 17–18, 130–32, 186–88, 192–200, 213. He contended that Defendants treated him more harshly for three reasons: as punishment for his insistence on due process related to his suspension or termination; as punishment for invoking his constitutional right not to be compelled to incriminate himself[7]; and out of malice and in a bad-faith attempt to injure him. *Id.* at 17–18.[8]

---

[6]     After the trial on Mr. Airday's due process claim, the Court permitted Defendants to move again for summary judgment. *See Airday v. City of New York*, No. 14-CV-8065, 2020 WL 4015770, at *1 (S.D.N.Y. July 16, 2020). After extensive discussion of Defendants' argument that Plaintiff was attempting to bring a "class-of-one" equal protection claim that is precluded by *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), this Court denied summary judgment. *Airday*, 2020 WL 4015770, at *2–*6. The Court did so finding that questions of fact existed (at least partially because Defendants did a poor job of marshalling the evidence, *id.* at *2) with regard to whether the persons to whom Mr. Airday wished to compare himself were similarly situated and whether the decision not to re-appoint him (whether by then-Mayor Bloomberg or Mr. Schwam) was motivated by ill will, malice, or some other improper consideration. *Id.* at *6–*7.

[7]     No evidence was introduced at trial that Mr. Airday ever invoked his constitutional right not to incriminate himself. The uncontroverted evidence was that Mr. Airday conditioned his agreement to produce documents (which may or may not have been incriminating) on DOI's commencement of formal disciplinary proceedings against him. Trial Tr. 251–54; Def. Exs. M, O, Dkts. 262-13, 265-1.

[8]     Prior to trial, it was unclear exactly what Plaintiff was alleging constituted an equal protection violation. Only with painstaking effort from the Court did it become possible to tease out the contours of Plaintiff's claims. *See, e.g.*, Final Pre-Trial Conf., Dkt. 252 at 8, 10–14, 16–18 (May 20, 2021).

The jury found that both Defendants violated Mr. Airday's equal protection rights when Mr. Schwam ordered Mr. Airday to suspend his practice as a City Marshal in January 2012 and that Mr. Schwam violated his equal protection rights by terminating Mr. Airday as a City Marshal in December 2013.  Verdict Sheet at 2.  Defendants now move for judgment as a matter of law, arguing that Plaintiff failed to prove by a preponderance of the evidence that either Defendant violated his equal protection rights.  Defs. Mem., Dkt. 261 at 2.

## DISCUSSION

### I.      Legal Standard

Federal Rule of Civil Procedure 50(b) permits a court to set aside a jury verdict and "direct the entry of judgment as a matter of law" in a movant's favor where, "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached.'" *Lewis v. Am. Sugar Refining, Inc.*, 325 F. Supp. 3d 321, 347–48 (S.D.N.Y. 2018) (brackets omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 13 (2d Cir. 1993)).  A Rule 50(b) motion can be granted "only when there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against him." *Id.* (brackets omitted) (quoting *Mattivi v. S. African Marine Corp.*, 618 F.2d 163, 168 (2d Cir. 1980)).  "The court will credit evidence favorable to the moving party 'that is uncontradicted and unimpeached,'" but it must "'disregard' evidence that the jury is not required to believe, but which is favorable to the moving party."  *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)).  Rule 50(b) motions are

limited to the renewal of a prior, pre-verdict motion for judgment as a matter of law.  Fed. R.

Civ. P. 50(b).

II.     **Plaintiff Failed to Prove Malice or Provide Proper Comparators at Trial to Sustain the Jury Verdict**

In order to prove a selective enforcement equal protection claim, Plaintiff was required to

prove, *inter alia*, that Mr. Schwam, acting under color of law, treated Plaintiff differently than he

treated other similarly situated City Marshals and that the differential treatment was based on an

improper purpose (namely, malice or bad faith).[9] *Zahra v. Town of Southold*, 48 F.3d 674, 683

(2d Cir. 1995) (citations omitted); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980).

Defendants argue that the Court should grant their motion because Plaintiff failed: (i) to prove

Mr. Schwam was the proximate cause of his alleged damages; (ii) to prove malice on the part of

Mr. Schwam (or then-Mayor Bloomberg); (iii) to prove that he was treated differently than

similarly situated comparators; and (iv) to prove that Mr. Schwam was a policymaker.

Additionally, Defendants argue that their motion should be granted because Mr. Schwam is

entitled to qualified immunity.[10]  Defs. Mem. at 12–14.  Plaintiff responds that Defendants

waived their arguments regarding proximate cause, comparators, and qualified immunity by

failing to raise them in their pre-verdict motion, and that Plaintiff provided ample evidence at

---

[9]      Although the Court allowed Plaintiff to proceed to trial on the additional theories that Defendants punished him for invoking his constitutional rights against compelled self-incrimination and for insisting on his due process rights, there was no evidence that Plaintiff ever invoked his right not to incriminate himself.  Although there was evidence that Plaintiff insisted on his due process rights relative to suspension, Plaintiff essentially abandoned that as a theory of liability, other than a passing mention of the issue in summations.  *See* Tr. Transcript at 558. Similarly, apart from another passing mention of the additional theories, *see* Pl. Opp. at 6, Plaintiff does not contest Defendants' motion for judgment as a matter of law by pointing to alternative theories of liability on which the verdict must be upheld.  In short, Plaintiff presented the case to the jury and is defending the verdict in post-trial briefing entirely on the theory that Defendants acted out of malice and in bad faith.

[10]      Defendants also argue that the proposed form of judgment submitted by Plaintiff is not correct.  Defs. Mem., Dkt. 261 at 15–16.  The Court need not address that issue because Defendants' arguments regarding the sufficiency of the evidence are dispositive.

trial on all fronts.  Pl. Opp. at 9–26.  The Court's decision turns only on the issues of malice and

whether Plaintiff proved he was treated differently from similarly situated comparators.

### A.  Plaintiff Failed to Prove Malice at Trial

In order to prove that Mr. Schwam's actions in suspending Plaintiff in January 2012 or

recommending his termination in 2013 violated Plaintiff's equal protection rights, Plaintiff was

required to prove that Mr. Schwam was motivated "by a malicious or bad faith intent to injure"

Mr. Airday.  *Zahra*, 48 F.3d at 683.  The uncontroverted evidence at trial was that Mr. Schwam

suspended Plaintiff and recommended that Plaintiff resign because Mr. Airday had been arrested

for serious crimes and because there was uncontroverted evidence that he had, for years, failed to

disclose (let alone license) all of the guns in his possession.  Although Plaintiff provides a list of

ways in which the evidence at trial proved Mr. Schwam acted with malice, *see* Pl. Opp. at 19–20,

Plaintiff's argument essentially boils down to: because Mr. Schwam suspended, investigated, and

recommended termination of Mr. Airday, he therefore acted with malice.  But speculative and

circular arguments do not prove anything, much less that Mr. Schwam acted with malice or with

a bad faith intent to injure Plaintiff.

In the Second Circuit, if a defendant's motivation to punish stems from the desire or

attempt to comply with agency objectives, that motivation is, as a matter of law, not malicious.

*Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (citation omitted).  The unrebutted evidence

from Mr. Schwam's testimony at trial with respect to Plaintiff's suspension was that, upon

learning that Plaintiff had failed to comply with a court order (to wit: that he surrender all guns in

his possession),[11] Mr. Schwam suspended him in compliance with agency objectives; and then,

---

[11]     This was not the first time that Mr. Airday had demonstrated a lack of care with respect to his possession of
and safeguarding guns.  His gun permit had been suspended for some period prior to the events on which this trial
focused when he tried to register a gun without accounting for another gun "that had gone missing."  Trial Tr. at
219.

with six months remaining on Plaintiff's term as a City Marshal, Mr. Schwam recommended that

Plaintiff's term end without reappointment.  Trial Tr. at 219-20.  Certainly, the underlying

offenses were serious enough to merit investigation and discipline by Plaintiff's employer.[12]

Plaintiff neither introduced nor elicited any evidence of any pre-existing bad blood between Mr.

Schwam and Mr. Airday that would have allowed a reasonable jury to find that he acted out of

malice.

On the question of whether Mr. Airday's equal protection rights were violated when he

was not reappointed as a City Marshal at the end of his term, the parties dispute whether Plaintiff

was obligated to prove that Mr. Schwam acted with malice or instead that then-Mayor

Bloomberg, who was indisputably the policymaker responsible for the non-renewal of Plaintiff's

term, acted with malice.  *See* Defs. Mem. at 6–7; Pl. Opp. at 21.  The parties' in-fighting is more

or less irrelevant, as Plaintiff failed to prove that either individual had a malicious intent to injure

him.  Certainly, Plaintiff provided *no* evidence of the mayor's state of mind or intent at the time

of the various actions taken against Plaintiff; Plaintiff does not attempt to argue otherwise.  Pl.

Opp. at 21.  But if the relevant individual is Mr. Schwam, as with the evidence discussed with

respect to Mr. Airday's suspension as a City Marshal, there was no evidence introduced at trial

regarding Mr. Schwam's motivations that could reasonably be construed as malicious or as

stemming from a bad faith intent to injure Plaintiff by not renewing his appointment as a City

Marshal.  Put differently, there is no evidence in the record to support the jury's determination

---

[12]     As Mr. Schwam testified, at the time of the arrest, "[Mr. Airday] had multiple reminders that it's incumbent upon him to be very careful with his guns, to safeguard them, to store them properly, to account to the police department for their whereabouts and to know their whereabouts at all times.  Now, in January 2012, I found out that he has not done that and he has, as a result, failed to comply both with the law and with the Court order that required him . . . to surrender all his guns."  *Id.* at 220.

that Mr. Schwam violated Mr. Airday's equal protection rights by recommending that he not be reappointed.  Trial Tr. at 220.

Because the Court must credit evidence favorable to the moving party that is uncontradicted and unimpeached, *see Lewis*, 325 F. Supp. 3d at 347–48 — and because the evidence at trial from Mr. Schwam regarding the reasons he took the actions he took is precisely that type of evidence — no reasonable jury could have found that Plaintiff proved the requisite malicious intent needed to find in his favor.  As a result, the Court grants Defendants' motion on the basis of that argument alone.

**B. Plaintiff Failed To Prove that Any Similarly Situated City Marshal Was Treated Less Harshly Than He Was**

Defendants also argue that Plaintiff failed to prove that he was treated more harshly than similarly situated comparators, evidence necessary to prove a violation of his equal protection rights.  *See* Defs. Mem. at 8–11.  In order to prove an equal protection violation, Plaintiff was required to prove that other City Marshals who received less harsh treatment than he did: (1) were subject to the same performance evaluation and discipline standards and (2) engaged in comparable misconduct.  *Ruiz v. County of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010).

As a threshold matter, Plaintiff argues first that Defendants waived this argument by failing to raise it in their pre-verdict motion.  Pl. Opp. at 22–23; *see Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) (citation omitted); Fed. R. Civ. P. 50(b).  Because Defendants clearly stated in their pre-verdict motion: "Mr. Airday's conduct was entirely different from all of the comparators which evidence about whom came in", *see* Trial Tr. at 522, the Court finds that the argument was adequately raised in Defendants' pre-verdict motion and therefore may be considered on a Rule 50(b) motion.

Turning to the merits, Mr. Schwam testified that Plaintiff's conduct was "unheard of for a

City Marshal." *Id.* at 218.  To rebut that testimony, Plaintiff provided evidence regarding four

comparators.  The Court agrees with Defendants that none of those comparators was similarly

situated to Mr. Airday.  Defs. Mem. at 8–11.  As the Court noted in its decision denying

Defendants' second motion for summary judgment on this claim, to prevail, Plaintiff was

required to prove "that the persons he seeks to compare himself to were similarly situated in all

material respects."  *Airday v. City of New York*, No. 14-CV-8065, 2020 WL 4015770, at *6

(S.D.N.Y. July 16, 2020) (citing *Hu v. City of New York*, 927 F. 3d 81, 96 (2d Cir. 2019)).  While

each comparator engaged in conduct that warranted discipline, none engaged in misconduct that

was comparable in all material respects to Mr. Airday's.

The first comparator, Howard Schain, paid a fine because his subcontractor, without his

knowledge, towed vehicles improperly, including allegedly towing a vehicle with a child inside.

Unlike Plaintiff, he was never arrested, he was not accused of having violated a court order, and

he did not possess any unlicensed handguns, the possession of which had never been disclosed to

DOI.  Defs. Mem. at 9; Trial Tr. at 186–88.  Mr. Schain simply did not engage in misconduct

that was similar to Mr. Airday's.[13]  *Ruiz*, 609 F.3d at 493–94.

The second comparator, Charles Marschisotto, was arrested once for harassment and

stalking, and an order of protection was entered against him.  Mr. Marschisotto surrendered his

gun, and there was no evidence that he continued to possess a gun in violation of the Order of

Protection or that he was ever in possession of an unlicensed gun, the ownership of which had

---

[13]      Both Mr. Schain and Mr. Airday were charged with failure to cooperate with DOI.  Trial Tr. at 174–75,
187–88.  According to Mr. Schwam (and not refuted by Plaintiff), Mr. Schain's lack of cooperation was different
from Mr. Airday's.  *Id.* at 188, 216–20.

not been disclosed to DOI, and he did not fail to cooperate in DOI's investigation.[14]  Defs. Mem.

at 9–10; Trial Tr. at 130–32.  In contrast, Plaintiff failed to surrender all of his guns following a

domestic violence arrest and entry of an Order of Protection, was in possession of an unlicensed

and undisclosed gun, was charged with violating the Order of Protection, and failed to cooperate

in DOI's investigation.  Trial Tr. at 216–18.  The key details that Mr. Marschisotto surrendered

all of his firearms in compliance with the Order of Protection and did not refuse to cooperate in

DOI's investigation prevent him from being similarly situated to Mr. Airday.  *Ruiz*, 609 F.3d at

493–95 (noting that similarly situated employees must have "engaged in comparable conduct")

(internal quotation marks and citation omitted).

The third comparator, Jeffrey Rose, seized a car while it was stopped in traffic, violated

record-keeping rules, and seized a vehicle that was not tow-eligible.  Defs. Mem. at 10; Trial Tr.

at 192–98.  It would stretch the meaning of "comparable" beyond any plausible definition to

consider this conduct similar to the unlawful possession of a gun, to violating an Order of

Protection, and to refusing to cooperate in a DOI investigation.

Finally, the fourth comparator, Joel Shapiro, who allegedly used physical force during the

course of an eviction, voluntarily resigned from his position as a City Marshal.  Defs. Mem. at

10–11; Trial Tr. at 198–200, 213.  As a result, there is simply no way to evaluate whether Mr.

---

[14]     Mr. Marschitto invoked his Fifth Amendment right not to answer certain questions propounded by DOI
during its investigation.  Trial Tr. at 192.  In contrast, Mr. Airday refused to provide documents requested by DOI
during its investigation unless DOI commenced formal disciplinary proceedings against him, *see id.* 251–54; Def.
Exs. M, O; there is no evidence he explained his failure to cooperate as an invocation of his Fifth Amendment rights,
and the fact that his refusal was conditioned on DOI commencing disciplinary proceedings suggests that the
motivation was something other than an invocation of his right not to incriminate himself.

Shapiro would have been subjected to different treatment than Mr. Airday. *Ruiz*, 609 F.3d at 493–95.[15]

In light of those facts, no reasonable jury could conclude that any of the individuals to whom Mr. Airday compared himself were, in fact, comparable. With no evidence that any similarly situated person was treated less harshly than he was, there was simply no basis for the jury to conclude that Mr. Airday's equal protection rights were violated. *Lewis*, 325 F. Supp. 3d at 347–48 (noting judgment as a matter of law is appropriate where, without weighing witness credibility, only one reasonable conclusion can be reached).

## C. The Court Need Not Address the Remaining Arguments

In light of the Court's decision, it need not address the parties' arguments on: proximate cause; whether Plaintiff was required to prove that Mr. Schwam was a policymaker; whether Mr. Schwam is entitled to qualified immunity; and whether Plaintiff's proposed judgment is correct. *See* Defs. Mem. at 3–5, 11–16. The Court finds it prudent, however, to address briefly the argument regarding Mr. Schwam's status as a policymaker.[16] Although Plaintiff proved at trial that Mr. Schwam recommended that Mr. Airday not be reappointed, the actual reassignment of Plaintiff's badge number was made by Mayor Bloomberg, and Plaintiff provided zero proof at trial that Mr. Schwam's recommendation was what caused Mayor Bloomberg to let Mr. Airday's

---

[15]     Defendants also point out that this comparator was fined much more harshly than Plaintiff. Defs. Reply at 5–6. The Court agrees that this fact, at a minimum, would complicate any finding that Plaintiff was treated worse than the fourth comparator.

[16]     As the Court has noted with respect to Mr. Airday's due process claim, Mr. Schwam is also entitled to qualified immunity. *See* Post-Trial Op. & Order at 13–14. A defendant is shielded by qualified immunity either when his conduct did not violate clearly established rights of which a reasonable person would have known, or when it was objectively reasonable to believe that his conduct did not violate clearly established rights. *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999). Plaintiff cannot point to any case where a court has determined that a non-policymaker violates a person's equal protection rights by recommending to the policymaker that the person not be reappointed to an appointed office when the person violated a court order and failed to complete required disclosures to his supervising authority. Pl. Opp. at 24–26 (arguing Mr. Schwam is not entitled to qualified immunity).

term expire without renewal.  *Id.* at 11–12.  In its opinion on Defendants' first motion for judgment as a matter of law, although deciding a different claim, the Court emphasized that Plaintiff provided *no* evidence to demonstrate that Mr. Schwam's "machinations (such as they were) had any influence on Mayor Bloomberg's decision to terminate Plaintiff's office, and any finding that they did would have required rank speculation on the jury's part," Post-Trial Op. & Order at 12–13.  Despite the Court's exceedingly clear message to Plaintiff that there was a tremendous gap in evidence to connect Mr. Schwam's recommendation to the expiration without reappointment of Mr. Airday's term as City Marshal, and the lengthy period between Plaintiff's first and second trials, at no point did Plaintiff seek to reopen fact discovery to close that evidentiary gap.  Although the Court's decision turns on both the dearth of evidence of malice and Plaintiff's failure to prove that Mr. Airday was treated more harshly than any similarly situated City Marshal, the Court's opinion could easily have turned on Defendants' other arguments.

## CONCLUSION

For the foregoing reasons, Defendants' renewed motion for judgment as a matter of law is GRANTED.  The Clerk of Court is respectfully directed to close the open motion at Docket 260 and close this case.


**SO ORDERED.**

**Date:  April 28, 2022**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**